ACCEPTED
06-15-00061-cv
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/26/2015 9:54:40 PM
DEBBIE AUTREY
CLERK

## NO. 06-00061-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/27/2015 10:13:00 AM
DEBBIE AUTREY
Clerk

## IN THE SIXTH COURT OF APPEALS

## FOR THE STATE OF TEXAS

## A.J.P. OIL COMPANY, LLC, d/b/a GRAPELAND FUEL & BBQ, &

## ANDREW J. PATTON

## V.

## VELVIN OIL COMPANY, INC.

On Appeal From The Fourth Judicial District Court of Rusk County, Texas

## BRIEF OF APPELLANTS

ATTORNEY FOR APPELLANTS:
Jaclyn D. Patton
639 Heights Blvd.
Houston, TX 77007
Phone: (713) 730-9946
Fax:    (713) 583-4180
SBN:   24085521
jaclyn@txestateplanning.com

# IDENTITY OF PARTIES AND COUNSEL

**Appellants / Defendants:**

A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ,
Andrew J. Patton

**Counsel for Appellants / Defendants**

Jaclyn D. Patton
639 Heights Blvd.
Houston, TX 77007
Phone: (713) 730-9946
Fax:    (713) 583-4180
SBN:   24085521
jaclyn@txestateplanning.com

**Appellee / Plaintiff**

Velvin Oil Company, Inc.

**Counsel for Appellee / Plaintiff**

Ronnie Horsley
P. O. Box 7017
Tyler, Texas 75711
Phone: (903) 593-7314
Fax:   (903) 593-3450
SBN: 10014000

**TABLE OF CONTENTS**

**Page**

I.    STATEMENT OF THE CASE
…………………………………………………………………1

II.   ORAL ARGUMENT UNNECESSARY
……………………………………………………………...1

III.  ISSUES PRESENTED
…………………………………………………………………2

IV.   STATEMENT OF FACTS
………………………… …………………………………………...3

V.    SUMMARY OF ARGUMENT
…………………………………………………………………7

VI.   ARGUMENT
…………………………………………………………………9

ISSUE 1: THE TRIAL COURT ERRED IN GRANTING THE
MOTION FOR SUMMARY JUDGMENT……………………………...9

Issue 1A: A plaintiff's sworn account cannot be considered prima facie
evidence to support summary judgment where nonmovant timely filed an
Amended Answer and controverting affidavit satisfying Rule 185 and
93(10)...…………………………………………………………10

Issue 1B: A genuine issue of material fact exists regarding Appellants'
defense of payment because Appellants instructed Appellee that
payments made after the delivery of disputed diesel by Appellee were not
to be applied to charges for the disputed diesel………………………13

Issue 1C: A genuine issue of material fact exists regarding whether
finance charges made the basis of Appellee's sworn account are due and
owing because Appellants instructed Appellee that payments made after
the delivery of disputed diesel by Appellee were not to be applied to
charges for the disputed diesel…………………………………………13

Issue 1D: A genuine issue of material fact exists regarding the reasonableness of Velvin's attorney's fees because judicial notice of properly controverted attorney's fees under Civil Practice and Remedies Code § 38.001 and 38.004 is improper on summary judgment……..16

ISSUE 2: THE TRIAL COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL BECAUSE A SUIT INVOLVING THE SAME PARTIES AND SUBJECT MATTER WAS PENDING AT THE FILING OF THIS SUIT, THE PRIOR SUIT WAS TIMELY BROUGHT TO THE TRIAL COURT'S ATTENTION, AND ABATEMENT OF THIS SUIT WOULD BE PROPER…………………………………..21

VII.    CONCLUSION  AND PRAYER…………...…………………..27

CERTIFICATE OF COMPLIANCE……………...…………………..29

CERTIFICATE OF SERVICE……...…………….…...…………………..30

APPENDIX……………………………………...………………………..ante

Appendix Tab A:    Plaintiff's Original Petition, CR 5-15

Appendix Tab B:    Defendants' Original Answer and Motion to Transfer Venue, CR 16-45; Supp. CR 5-6

Appendix Tab C:    Plaintiff's Motion for Summary Judgment, CR 55-58

Appendix Tab D:    Defendants' First Amended Answer and Response to Motion for Summary Judgment, CR 59-75

Appendix Tab E:    Order Granting Summary Judgment, CR 76-77

Appendix Tab F:    Defendants' Motion for New Trial, CR 78-137

Appendix Tab G:    Plaintiff's Response to Motion for New Trial, CR 47-51

Appendix Tab H:    Defendants' Reply to Response to Motion for New Trial, CR 138-145

Appendix Tab I:      Order Denying Motion for New Trial, CR 146

# TABLE OF AUTHORITIES

## STATE CASES

*Arthur Andersen & Co. v. Perry Equipment Corp.,*
945 S.W.2d 812 (Tex. 1997)…………………………………………………..6,16

*Baubles & Beads v. Louis Vuitton, S.A.,*
766 S.W.2d 377, 379 (Tex.App.—Texarkana 1989, no writ)………………...…9

*Beckman v. Beckman,*
716 S.W.2d 83 (Tex. App.—Dallas 1986)…………………………………….25

*Cayton v. Moore,*
224 S.W.3d 440, 445 (Tex. App.—Dallas 2007, no pet.)………………………...21

*Champion Int'l Corp. v. Twelfth Court of Appeals,*
762 S.W.2d 898, 899 (Tex. 1988)………………………………………………...21

*Circle Ridge Production, Inc. v. Kittrell Family Minerals, LLC,*
23 WL 3781367, pg. 7 (Tex. App—Texarkana 2009, rev. denied)…………...18-20

*City of Houston v. Clear Creek Basin Auth.,*
589 S.W.2d 671 (Tex.1979)……………………………………………………..9

*City of Laredo v. Montano,*
414 S.W.3d 731 (Tex. 2013) ……………………………………………..……17

*Cleveland v. Ward,*
285 S.W. 1063 (Tex. 1926) …………………………………………...…………22-23

*Curtis v. Gibbs,*
511 S.W.2d 263 (Tex. 1974)  …………………………………………….....22

*Downer v. Aquamarine Operators, Inc.,*
701 S.W.2d 238, 241–42 (Tex. 1985)………………………………………..…21

*El Apple v. Olivas,*
370 S.W.3d 757 (Tex. 2012). …………………………………………………17

*Ex Parte Lillard,*
314 S.W.2d 800 (Tex. 1958) ……………………………………………………22, 25

*Falderbaum v. Lowe,*
964 S.W.2d 744 (Tex. App.—Austin 1998) …………………………………...26

*Goswami v. Metropolitan Savings and Loan Association*,
751 S.W.2d 487, 490 (Tex.1988)……………………………………………………11

*Grace v. Duke,*
54 S.W.3d 338 (Tex. App.—Austin 2001, pet. denied) …………………………18

*Guity v. C.C.I. Enter. Co.,*
54 S.W.3d 256 (Tex. App.—Houston [1st Dis.] 2001, no pet)……………………...18

*Limestone Prods. Distrib., Inc. v. McNamara*,
71 S.W.3d 308 (Tex.2002)……………………………………………………..…10

*Morgan v. Morgan,*
406 S.W.2d 347 (Tex. Civ. App.—San Antonio 1966, no writ) …………………14

*Nixon v. Mr. Prop. Mgmt. Co.*,
690 S.W.2d 546 (Tex.1985)……………………..…………………………………..10

*Oliver v. Carter & Co. Irr., Inc.*,
08-01-00446-CV, 2002 WL 1301568 (Tex. App.—El Paso June 13, 2002, no
pet.)………………………………………………………………………………….10-12

*Park Place Hosp. v. Estate of Milo,*
909 S.W.2d 508 (Tex. 1995) …………………………….………………………13

*Phillips v. Herndon*,
78 Tex. 378, 380, 14 S.W. 857 (1890) ……………………………………………...14

*Rizk v. Fin. Guardian Ins. Agency, Inc.,*
584 S.W.2d 860, 862-63 (Tex. 1979)……………………………………………..10

*Rosenblatt v. Freedom Life,*
240 S.W.3d 315 (Tex. App.—Houston [1st Dist.] 2007) …………………………18

*Sweezy Construction, Inc. v. Murray,*
915 S.W.2d 527 (Tex. App.—Corpus Christi 1995)……………………………...22

*Vance v. Holloway*,
689 S.W.2d 403, 403-04 (Tex. 1985)…………………………………………….10

*Walker v. Packer*,
827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)…………………………….21

*Wyatt v. Shaw Plumbing,*
760 S.W.2d 245 (Tex 1988) ……………………………………………..22-26

## FEDERAL CASE

*Hensley v. Eckerhart*,
461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)………………………17

## STATUTES AND RULES

TEX. CIV. PRAC. REM. CODE ANN. §§ 38.001, 38.004…………………..16, 20

TEX. R. CIV. P. 39……………………………………………………………..23

TEX. R. CIV. P. 63……………………………………………………………..11

TEX. R. CIV. P. 93(10) …..…………………………………………………..10-12

TEX. R. CIV. P. 97(a) …..……………………………………………………….23

TEX.R. CIV. P. 166a(c) ….…………………………………….............9

TEX. R. CIV. P. 185 …..……………………………….…………11-13

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b)…………………………16

## ADDITIONAL AUTHORITY

2 R. McDonald, Texas Civil Practice in District and County Courts § 7.10, at 165
(rev.1982)….........................................................26

NO. 06-00061-CV

IN THE SIXTH COURT OF APPEALS

FOR THE STATE OF TEXAS

A.J.P. OIL COMPANY, LLC, d/b/a GRAPELAND FUEL & BBQ, &

ANDREW J. PATTON

V.

VELVIN OIL COMPANY, INC.

On Appeal From The Fourth Judicial District Court of Rusk County, Texas
Trial Court Cause No. 2014-362

BRIEF OF APPELLANTS

TO THE HONORABLE SIXTH COURT OF APPEALS:

Appellants, A.J.P Oil Company, LLC d/b/a Grapeland Fuel and BBQ, and

Andrew J. Patton, file this, their Brief of Appellants in the above-captioned and

numbered appeal, pursuant to Texas Rule of Appellate Procedure 38.1. Appellants

would respectfully show this Honorable Court as follows:

## I.    STATEMENT OF THE CASE

This is an appeal of a Summary Judgment of $32,676.71, interest at the rate

of 18% per annum, attorney's fees, costs of court, and interest on such fees and

costs at the rate of 5% per annum, entered against Appellants on June 4, 2015, in the Fourth Judicial District Court of Rusk County, Texas.

If the Court does not find that the trial court erred in granting Summary Judgment, Appellants alternatively appeal the denial of Appellants' Motion for New Trial, entered on August 17, 2015, in the Fourth Judicial District Court of Rusk County, Texas.

## II.    ORAL ARGUMENT UNNECESSARY

The issues presented in this appeal are basic and involve well-established principles of Texas law. Summary Judgment was clearly erroneous in the lower court. Accordingly, it is the opinion of Appellants that oral argument is unnecessary.

## III.    ISSUES PRESENTED

ISSUE 1: THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT, BECAUSE:

A. A plaintiff's sworn account cannot be considered *prima facie* evidence to support summary judgment where nonmovant timely filed an amended answer and controverting affidavit satisfying Rule 185 and 93(10).

B. A genuine issue of material fact exists regarding Appellants' defense of payment because Appellants instructed Appellee that payments

2

made after the delivery of disputed diesel by Appellee were not to be applied to charges for the disputed diesel.

C. A genuine issue of material fact exists regarding whether finance charges made the basis of Appellee's sworn account are due and owing because Appellants instructed Appellee that payments made after the delivery of disputed diesel by Appellee were not to be applied to charges for the disputed diesel.

D. A genuine issue of material fact exists as a matter of law regarding the reasonableness of Appellee's attorney's fees because judicial notice of attorney's fees under Civil Practice and Remedies Code § 38.001 and 38.004 is not proper when controverted by the sworn affidavit of nonmovant's counsel asserting evidence of their unreasonableness.

ISSUE 2: THE TRIAL COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL BECAUSE A SUIT INVOLVING THE SAME PARTIES AND SUBJECT MATTER WAS PENDING AT THE FILING OF THIS SUIT, THE PRIOR SUIT WAS TIMELY BROUGHT TO THE TRIAL COURT'S ATTENTION, AND ABATEMENT OF THIS SUIT WOULD BE PROPER.

## IV.  STATEMENT OF FACTS

Appellants AJP Oil Company, LLC, and Andrew J. Patton (collectively referred to as "AJP") and Appellee Velvin Oil Company, Inc. ("Velvin") entered into a credit agreement (the "Agreement") on June 6, 2012, for the delivery of fuel

3

to Appellants' Grapeland Fuel & BBQ gas station. (CR 14-15). Appellant Andrew J. Patton executed a personal guarantee for debts incurred by AJP Oil Company, LLC, under the Agreement. (CR 14-15). Without incident, Velvin regularly sold and delivered fuel to Grapeland Fuel & BBQ pursuant to the Agreement until Velvin delivered a shipment of tainted diesel fuel to AJP on December 4, 2013. (CR 24). Following the delivery of this tainted diesel, AJP continued to do business with Velvin until April 2014, when their dispute regarding the December 4, 2013 diesel shipment could not be resolved. (CR 36-39).

On August 28, 2014, after extended correspondence with Velvin's insurance provider, AJP delivered notice of its intent to assert several claims against Velvin arising from the Agreement, including a claim under the Texas Deceptive Trade Practices Act, Texas Business & Commerce Code section 17.41 et seq., alleging that Velvin delivered tainted and mislabeled diesel on December 4, 2013. (CR 32-34). On November 7, 2014 AJP filed its Petition in the Third Judicial District Court of Houston County, Texas, Cause No. 14-0217 (the "Original Suit"), alleging economic and lost profit damages against Velvin, including damages of $31,760.45 for "worthless diesel fuel delivered." (CR 28). Velvin timely responded to the Original Suit without complaint regarding jurisdiction and continues to actively participate. (CR 49).

4

Roughly six weeks after being served with the Original Suit, Velvin filed its Petition in this suit in the Fourth Judicial District Court of Rusk County, Texas, alleging that AJP did not pay for the disputed diesel fuel under the Agreement. (CR 5-9). AJP filed its Answer and Motion to Transfer Venue, pointing out the pendency of the Original Suit and requesting that the second-filed suit be transferred to Houston County because it was in the interest of all parties and required by justice to proceed in a single suit as the subject matter of the Rusk County Suit was identical to the subject matter of the Original Suit. (2 RR 4-5, CR 22). After a hearing on March 2, 2015, the trial court denied AJP's Motion, resulting in two separate suits regarding the same disputed diesel fuel. (2 RR 1-7, CR 54).

Velvin filed its Motion for Summary Judgment on March 30, 2015, attaching an affidavit regarding attorney's fees sworn to by Ronnie Horsley, counsel for Velvin. (CR 55-57). Velvin's Motion for Summary Judgment asserts as its only grounds that "Defendant entered an appearance and filed an answer herein which is insufficient in law as provided in RULES 185 and 93, TEXAS RULES OF CIVIL PROCEDURE to constitute a defense to Plaintiff's cause of action . . ." (CR 55-57). The affidavit of Velvin's counsel stated that "In accordance with [counsel's] experience in handling numerous cases and based upon the usual

contingent fee arrangements of attorneys similarly engaged, $10,892.24 is a reasonable and customary fee…" (CR 57).

Seven days later, AJP filed its First Amended Answer and Response to Motion for Summary Judgment in the Rusk County Suit. (CR 16; Supp. CR 5). AJP's First Amended Answer was verified by Appellant Andrew J. Patton and contained a general and specific denials, including the affirmative defense that "[Appellants] have paid in full the account" forming the basis of Velvin's claim "with check number 2902, dated April 29, 2014, in the amount of [$54,480.52]." (CR 59-62, 63, 67). Appellants attached bank records showing the check deposited by Velvin. (CR 63,67). AJP's Response to Velvin's Motion for Summary Judgment, argued that: 1) "the invoices the subject of [Velvin's] petition were paid,"; and 2) the affidavit sworn by Velvin's counsel regarding attorney fees failed to set forth sufficient evidence under *Arthur Andersen & Co. v. Perry Equipment Corp.* for the award of attorney fees as a matter of law. (CR 63-65, 67-69, 72-73.). Velvin did not file a Reply to AJP's arguments nor request a hearing on the Motion for Summary Judgment. (CR 4, 55).

Two months later, on June 4, 2015, the District Court granted Velvin's Motion for Summary Judgment. (CR 76-77). The District Court did not explain its ruling. (CR 76-77). AJP filed its Motion for New Trial on July 2, 2015; it was

denied on August 20, 2015. (3 RR 1-6; CR 78-86, 146). AJP filed its Notice of Appeal on August 28, 2015. (CR 147).

## V.    SUMMARY OF ARGUMENT

### Motion for Summary Judgment

AJP's first issue challenges the trial court's granting of Velvin's Motion for Summary Judgment in four ways. Because Summary Judgment in this suit was improper, Appellants respectfully ask the Court to reverse and remand this matter for new trial.

The most blatant error in the record is addressed first: the sole basis for Velvin's Motion for Summary Judgment was that AJP's Original Answer did not meet the verification requirements to deny a sworn account under Texas Rules of Civil Procedure 185 and 93(10). AJP candidly admits that its Original Answer was not properly verified. However, AJP timely filed an Amended Answer with a controverting affidavit which satisfied the rules. Because a properly controverted sworn account cannot be considered *prima facie* evidence to support Summary Judgment, the trial court erred in granting Summary Judgment.

AJP's second and third arguments challenge the Summary Judgment because a genuine issue of material fact exists regarding AJP's defense of payment. AJP clearly communicated to Velvin that the five payments made to Velvin for fuel delivered to AJP following the disputed diesel delivery in

7

December 2013 were to be applied only to the subsequent, non-disputed deliveries. Because AJP had the right to direct application of its payments, and did so with multiple written and verbal communications to Velvin, a disputed fact issue exists regarding AJP's defense of payment of the invoices sued for and their related finances charges.

Finally, a genuine issue of material fact exists as a matter of law regarding the reasonableness of attorney's fees awarded to Velvin under the Summary Judgment. By Velvin's own admission, the Motion for Summary Judgment and attached affidavit required the trial court to take judicial notice of Velvin's attorney's fees. AJP timely contested Velvin's attorney's fees, listing deficiencies in their supporting evidence within the affidavit of AJP's counsel. Because AJP properly controverted the reasonableness of Velvin's attorney's fees by the sworn statement of AJP's counsel, judicial notice of Velvin's attorney's fees was not proper and the trial court erred in granting Summary Judgment.

## Motion for New Trial

In the alternative, AJP's second issue challenges the trial court's denial of AJP's Motion for New Trial. This suit arises from a disputed transaction between the parties in December 2013, where Velvin sold AJP tainted diesel fuel. Despite AJP's amicable attempts, the dispute over the diesel could not be resolved and resulted in AJP filing suit for damages stemming from the disputed diesel. After

being served with AJP's suit, Velvin circumvented the rules of orderly justice and filed this suit demanding payment on the disputed diesel.

The trial court was immediately alerted to the prior-pending suit in AJP's initial pleadings. Although AJP's initial pleadings request that the suit be transferred rather than abated, abatement is seasonably raised—even after judgment—when the pendency of the prior-filed suit is shown in the pleadings. Because a suit involving the same parties and subject matter was pending when Velvin filed this suit, and AJP's initial pleadings clearly brought the prior suit to the trial court's attention, Appellants respectfully ask the Court to reverse and remand this matter for new trial so that it may be properly abated.

## VI.   ARGUMENT

## ISSUE 1: THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT

### Standard of Review

To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex.App.—Texarkana 1989, no writ). In deciding whether a disputed material fact issue exists that would preclude

summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded and all doubts as to the genuine issues of material fact are resolved in favor of the nonmovant. *Id.*; *see Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex.2002). A motion for summary judgment must stand on its own merits. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979).

## Discussion

**Issue 1A: A plaintiff's sworn account cannot be considered *prima facie* evidence to support summary judgment where nonmovant timely filed an Amended Answer and controverting affidavit satisfying Rule 185 and 93(10).**

Under Texas law, a properly pled suit on a plaintiff's sworn account constitutes *prima facie* evidence of the underlying debt. *Rizk v. Fin. Guardian Ins. Agency, Inc.,* 584 S.W.2d 860, 862-63 (Tex. 1979); *Vance v. Holloway*, 689 S.W.2d 403, 403-04 (Tex. 1985); *Oliver v. Carter & Co. Irr., Inc.*, 08-01-00446-CV, 2002 WL 1301568, at *6 (Tex. App.—El Paso June 13, 2002, no pet.). However, a defendant's properly pled and verified answer and denial will destroy the *prima facie* effect of the verified claim, forcing the plaintiff to prove his claim. *Id*. If not properly pled, defendants may amend their answers, "as they may desire" and without leave of court, provided that they are filed seven days before trial and

10

there is no showing that they "will operate as a surprise to the opposite party." Tex. R. Civ. P. 63; *see Goswami v. Metropolitan Savings and Loan Association*, 751 S.W.2d 487, 490 (Tex.1988). A hearing or submission on a Motion for Summary Judgment is a "trial" for purposes of Rule 63. *Goswami* at 490.

The law in this area is so well-established that there appear to be no controlling cases on point reported in the recent past. In *Oliver v. Carter,* a similar suit on sworn account from the Eighth Court of Appeals, the plaintiff filed a verified pleading alleging that the defendant defaulted on its account with the plaintiff. *Oliver v. Carter & Co. Irr., Inc.*, 08-01-00446-CV, 2002 WL 1301568, at *6 (Tex. App.—El Paso June 13, 2002, no pet.) (not designated for publication). The defendant's responding answer failed to satisfy Rules 185 and 93(10) for controverting a suit on sworn account. *Id.* The plaintiff moved for summary judgment asserting that the answer was "defective and insufficient in law to constitute or raise a defense" to the sworn account made the basis of the suit. Correcting his error, the defendant filed an amended answer and affidavit which satisfied the requirements of Rules 185 and 93(10). *Id.* at *2. However, the trial court granted the plaintiff's motion for summary judgment. *Id.* The court of appeals reversed, holding that even if the original answer to a suit on sworn account failed to satisfy Rules 185 and 93(10), amended pleadings must also be considered when ruling on a motion for summary judgment. *Id.* at *7. The court of

appeals found that the amended answer contained both a general and specific denial, was supported by the affidavit of the defendant, and "easily satisf[ied] the requirements of Rule 185 and 93(10)." *Id.* Because the amended answer satisfied the requirements of Rule 185 and 93(10), the court held that the plaintiff's petition could not "be considered *prima facie* evidence to support summary judgment" and the trial court erred in granting summary judgment. *Id.*

Here, AJP initially filed an Original Answer that failed to meet the verification requirements of Rules 185 and 93(10). Like the plaintiff in *Oliver*, Velvin filed a Motion for Summary Judgment asserting as its only grounds that "Defendant entered an appearance and filed an answer herein which is insufficient in law as provided in RULES 185 and 93, TEXAS RULES OF CIVIL PROCEDURE to constitute a defense to Plaintiff's cause of action…" (CR 55-57). In response, AJP filed its First Amended Answer, which contained a general denial, specific denials regarding the affirmative defense of payment and whether finance charges included in the account were due and owing, and a verification by the sworn affidavit of Appellant Andrew Patton. (CR 59-75). Like the Amended Answer in *Oliver*, AJP's Amended Answer easily satisfied the requirements of Rules 185 and 93(10). Accordingly, Velvin's petition was not *prima facie* evidence to support summary judgment.

The trial court erred in granting the Motion for Summary Judgment because Velvin's sworn account cannot be considered *prima facie* evidence when AJP timely filed an Amended Answer and controverting affidavit satisfying Rule 185 and 93(10).

**Issue 1B: A genuine issue of material fact exists regarding Appellants' defense of payment because Appellants instructed Appellee that payments made after the delivery of disputed diesel by Appellee were not to be applied to charges for the disputed diesel.**

The trial court erred in granting the Motion for Summary Judgment because a disputed fact issue exists regarding whether payment was made on the invoices in question, which must be submitted to a jury. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510-11 (Tex. 1995). Because of the interrelation of Issue 1B and Issue 1C, these issues will be discussed together below.

**Issue 1C: A genuine issue of material fact exists regarding whether finance charges made the basis of Appellee's sworn account are due and owing because Appellants instructed Appellee that payments made after the delivery of disputed diesel by Appellee were not to be applied to charges for the disputed diesel.**

The trial court erred in granting the Motion for Summary Judgment because disputed fact issues exist regarding (1) AJP's defense of payment of the invoices in question, and (2) if related finance charges made the basis of Velvin's sworn account are due and owing, which must be submitted to the jury. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510-11 (Tex. 1995).

The general rule is that where a debtor makes payment to his creditor without directing the manner of application of the payment, the creditor is privileged to apply the payment to any one of the various debts owed him by the debtor. *Morgan v. Morgan*, 406 S.W.2d 347 (Tex.Civ.App.—San Antonio 1966, no writ). However, when the debtor has directed the application of payment by written or verbal communication, the "true rule seems to be, first, the debtor has the absolute right to direct appropriation at the time of payment." *Phillips v. Herndon*, 78 Tex. 378, 14 S. W. 857, 859.

Here, AJP communicated its intention for application of payment early and often. It is evident from the record that AJP intended for payments made following delivery of the worthless and tainted diesel on December 4, 2013 not to be applied to the tainted delivery. AJP made multiple written communications to Velvin instructing that subsequent payments were not to be applied to the disputed diesel. The first payment made by AJP following the delivery of the disputed diesel clearly instructed that it was to be applied toward "gasoline only," and not toward the tainted diesel. (CR 127). A subsequent payment noted that it was to be applied only to specific, non-disputed invoices. (CR 129).

AJP also made multiple verbal communications to Velvin instructing that subsequent payments were not to be applied to the disputed diesel. Following the delivery of tainted diesel by Velvin in December 2013, Appellant immediately

contacted Jim Jordan, Vice President of Velvin Oil, who assured AJP that Velvin would handle any resulting problems. (CR 103). Jim Jordan followed up on this assurance by sending two free "fix shipments" of what Jim Jordan stated was "super clean #1 diesel", and having an Velvin employee administer a "shock treatment" to the disputed diesel. (CR 103, 107). After further amicable discussions with Jim Jordan, and with the communicated understanding that Velvin would act in good faith, take responsibility for damages resulting from the tainted diesel, and not require payment on the disputed diesel, AJP continued to do business with Velvin for four months following the tainted delivery. (CR 103). Acting in good faith, AJP ultimately bought and timely paid for an additional $194,801.30 of fuel from Velvin, despite the abundance of competitive alternate fuel retailers available to AJP in East Texas. (CR 136).

AJP's written and verbal communications to Velvin clearly show AJP's intention that payments made after the December 4, 2013 disputed diesel shipment were to be applied only to subsequent, non-disputed fuel shipments. Case law establishes that AJP had the absolute right to direct appropriation of payments made to Velvin. AJP exercised that right by including language on checks paid to Velvin, and by making consistent and repeated verbal directions to Velvin.

The credit terms of Velvin's Charge Account Applicant on which this suit is based state that finance charges are due if the balance is not paid by the end of the

15

month following the statement date. (CR 59-60; 70-72). The invoices made the basis of Velvin's suit were paid by AJP with check number 2902, dated April 29, 2014, in the amount of $54,480.52. (CR 59, 67, 69). As payment was timely made on the invoices made the basis of Velvin's suit, both the underlying debt and the finance charges included in Velvin's suit were not due and owing.

The trial court erred in granting the Motion for Summary Judgment because disputed fact issues exist regarding AJP's defense of payment and whether finance charges were due and owing as AJP instructed Velvin that payments made after the delivery of disputed diesel were not to be applied to charges for the disputed diesel.

**Issue 1D: A genuine issue of material fact exists regarding the reasonableness of Velvin's attorney's fees because judicial notice of properly controverted attorney's fees under Civil Practice and Remedies Code § 38.001 and 38.004 is improper on summary judgment.**

In Velvin's Motion for Summary Judgment and affidavit attached thereto, counsel for Velvin requests attorney's fees unsupported by the proof required in the Texas Disciplinary Rules of Professional Conduct. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (quoting the eight-factor test for determining attorney's fees); (CR 55-57). That proof must include the basic facts supporting the fees, which are: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of

16

the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." *Id.*

The party applying for an award of attorney's fees bears the burden of documenting the hours expended on litigation and the value of those hours. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *El Apple v Olivas*, 370 S.W.3d 757 (Tex. 2012). When attorney's fees are claimed under fee shifting statutes, the Texas Supreme Court urges that courts be skeptical of "broad, unspecific claims" regarding fees, as "hours not properly billed to one's client are also not properly billed to one's adversary under a fee-shifting statute." *City of Lardeo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013). Rather, the attorney should provide contemporaneous billing records or other documentation recorded reasonably close to the time when the work is performed. *Id.*

The affidavit of Velvin's counsel offered as proof of attorney's fees clearly does not meet the requirements of the Texas Disciplinary Rules of Professional

17

Conduct and established case law. (CR 57). Instead, Velvin's proof fits soundly into the category of non-contemporaneous, "broad, unspecified claims" of which courts are warned to be skeptical. Further, the affidavit of Velvin's counsel includes false claims of time spent on matters such as appearing in court in support of Plaintiff's Motion for Summary Judgment—a hearing that did not occur. (CR 57).

Although Texas Civil Practice and Remedies Code §38.004 does allow judicial notice to be taken of attorney's fees in a suit on sworn account, it is well-established that judicial notice of attorney's fees cannot be taken when the summary judgment record contains evidence controverting the reasonableness of attorney's fees. *See, e.g. Guity v. C.C.I. Enter. Co.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Rosenblatt v. Freedom Life*, 240 S.W.3d 315, at 321(Tex. App.—Houston [1st Dist.] 2007, no pet.); *Grace v. Duke*, 54 S.W.3d 338, 344 (Tex. App—Austin 2001, pet. denied) (holding that attorney fee award in summary judgment proceeding not proper if amount disputed). This Court has specifically found that summary judgment is improper when the moving party's affidavit in support of attorney's fees is contested by an affidavit of opposing counsel. *Circle Ridge Production, Inc. v. Kittrell Family Minerals, LLC*, 23 WL 3781367, pg. 7 (Tex. App—Texarkana 2009, rev. denied) (holding that summary judgment award of attorney's fees is improper where the nonmovant

18

produces a controverting affidavit and asserts evidence that fees are unreasonable or unnecessary).

In *Circle Ridge*, the appellants sought relief from a summary judgment awarded in the trial court against them. *Id.* The appellants urged that attorney's fees awarded in the summary judgment were improper because they were supported by broad, conclusory evidence that did not include time records. *Id.* The attorney's fees awarded in the *Circle Ridge* summary judgment were supported solely by an affidavit of the appellee's counsel. *Id.* at 7. However, the appellants had previously been provided with time records supporting appellee's counsel's fees in discovery. (Appellee's Brief at 28, *Circle Ridge Production, Inc. v. Kittrell Family Minerals, LLC*, 23 WL 3781367 (Tex. App—Texarkana 2009, rev. denied). In addition, the appellants had not preserved error by raising this issue with the trial court. (*Id.* at 7). Finding that summary judgment is available on the testimony of an interested witness if the testimony could have been easily controverted, this Court held in *Circle Ridge* that an <u>uncontroverted</u> affidavit regarding attorney's fees constitutes sufficient evidence for summary judgment. *Id.*

The case at hand shares similar facts with *Circle Ridge*, but is distinguishable by several key facts. Here, by Velvin's own admission its proof regarding attorney's fees was inadequate under the rules and required the trial court to take judicial notice. (CR 48). Unlike the defendants in *Circle Ridge*, AJP

controverted the reasonableness of Velvin's attorney's fees multiple times, including in an affidavit of AJP's counsel. (CR 64-65; 72-73).The affidavit of AJP's counsel asserts five particular deficiencies in the evidence supporting the attorney's fees sought by Velvin, and is bolstered by the resume of AJP's counsel showing his familiarity with fee calculations in similar cases. (CR 72-75). The case at hand is further distinguished from *Circle Ridge* in that Velvin has produced no additional evidence supporting its attorney's fees at any point, wherein the plaintiff in the precedent case had already produced detailed time records to the defendant during discovery.

The trial court erred in granting the Motion for Summary Judgment because disputed fact issues exist regarding the reasonableness and supporting evidence of Velvin's attorney's fees because judicial notice of properly controverted attorney's fees under Civil Practice and Remedies Code § 38.001 and 38.004 is improper on summary judgment.

**ISSUE 2: THE TRIAL COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL BECAUSE A SUIT INVOLVING THE SAME PARTIES AND SUBJECT MATTER WAS PENDING AT THE FILING OF THIS SUIT, THE PRIOR SUIT WAS TIMELY BROUGHT TO THE TRIAL COURT'S ATTENTION, AND ABATEMENT OF THIS SUIT WOULD BE PROPER.**

**Standard of Review**

A trial court's denial of a motion for new trial is reviewed for abuse of discretion. *In re RR*, 209 S.W.3d 112, 114 (Tex. 2006); *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex. 1988). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court's clear failure to analyze or apply the law correctly constitutes an abuse of discretion. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Cayton v. Moore*, 224 S.W.3d 440, 445 (Tex. App.—Dallas 2007, no pet.).

**Discussion**

The trial court erred in denying the Motion for New Trial because a suit involving the same parties and subject-matter was pending prior to the filing of this suit. The claim brought here is a compulsory counterclaim to the claims brought in

21

the prior suit. The Motion for New Trial should have been granted so that this suit could be properly abated pending the outcome of the prior suit.

Abatement is seasonably raised, even after the rendering of judgment, when the pendency of the prior suit is shown in the pleadings. The pendency of the prior suit was timely brought to the trial court's attention within 35 days of this suit's filing.

**A suit involving the same parties and subject matter was pending at the filing of this suit and Velvin's claim brought here is a compulsory counterclaim to AJP's claims brought in the first-filed suit.**

When two pending cases are between identically the same parties, involve the same subject-matter, and relief in one suit would be *res judicata* as to the relief prayed for in the other suit, it is well settled that the first-filed suit has dominant jurisdiction. *See, e.g. Cleveland v. Ward*, 285 S.W. 1063 (Tex. 1926) (holding that when original suit regarding cancellation of loan would be *res judicata* against second suit regarding recovery on that loan, the second suit must be abated); *Wyatt v. Shaw Plumbing*, 760 S.W.2d 245, 247 (Tex. 1988). Once dominant jurisdiction has attached in a first-filed suit, the rule is elementary that it cannot be taken away by subsequent proceedings in another court. *Ex Parte Lillard*, 314 S.W.2d 800, 805 (Tex. 1958). The court where the second suit was filed must grant a motion to abate. *Wyatt* 760 S.W.2d at 247; *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974); *Sweezy Construction, Inc. v. Murray*, 915 S.W.2d 527, 531 (Tex. App.—

22

Corpus Christi 1995). Abatement does not prejudice the plaintiff of the second-filed suit, as any claims or defenses raised by the plaintiff may be asserted in the original suit if the plaintiff so chooses. *Cleveland,* 285 S.W. at 1070.

Velvin did not dispute that this suit is a second-filed, non-dominant suit and that the first-filed suit in Houston County ("Original Suit") was brought to the trial court's attention in a timely manner. Rather, Velvin asserted that this suit and the Original Suit are not substantially interrelated. (CR 49-50). "In determining whether an inherent interrelationship exists, courts should be guided by the rule governing persons to be joined if feasible and the compulsory counterclaim rule." *Wyatt v. Shaw Plumbing*, 760 S.W.2d 245, 247 (Tex. 1988); Tex.R.Civ.P. 39, 97(a).

The facts in *Wyatt v. Shaw* closely track those at hand. In *Wyatt,* Wyatt and Shaw entered into a contract regarding plumbing services. When Wyatt refused to pay for worthless and faulty services provided by Shaw, "Shaw made a written demand for payment. Following Shaw's demand letter, Wyatt filed suit against Shaw in [Wyatt's county of choice] alleging fraud and violation of the Deceptive Trade Practices Act." *Wyatt,* 760 S.W.2d 245 at 246.  Shortly thereafter Shaw filed a breach of contract suit in Shaw's county of choice to recover for the disputed services it provided. Finding that Wyatt's claim would be *res judicata* against Shaw's claim, the court held that the two suits were inherently interrelated. The

23

court further explained, "Shaw Plumbing should have brought its compulsory counterclaim on the contract in Wyatt's tort and DTPA suit in Duval County … since Wyatt filed suit first, he chose Duval County." *Id* at 248.

The facts of this case are almost identical to *Wyatt*. Here, AJP purchased goods from Velvin. Velvin's goods turned out to be worthless and faulty. AJP verbally communicated to Velvin that it would not pay for the worthless goods, and further refused to pay by directing that payments made by AJP to Velvin for subsequently delivered goods were not to be applied to the worthless goods. (CR 103, 127, 129). As is evidenced by the record and correspondence between the parties and their counsel, AJP clearly communicated to Velvin that AJP was only continuing to do business with Velvin because of Velvin's representations that AJP'Ss damages from the worthless fuel would be "made right." (CR 103). Velvin's Counsel's own letter of September 2014 shows that all parties involved understand both suits to concern the exact same subject-matter. (CR 108). Like in *Wyatt*, when Velvin did not make good on its promises, AJP sued Velvin for the worthless goods provided. AJP's Petition in the Original Suit lists as damages the exact amount in worthless diesel as is complained of by Velvin in this matter. (CR 28; 94 - *Original Petition of First-Filed Suit listing "$31,760.45 in out-of-pocket damages for the worthless diesel fuel delivered"*). The fact that the amount sued for in the matter at hand differs slightly results only from the three months of

24

interest charged on AJP's account between the time AJP's DTPA notice letter was sent to Velvin (July 30, 2014) and when Velvin filed this suit (November 19, 2014).

Rationally, this suit should be abated pending determination of whether the disputed diesel was, in fact, tainted and worthless. If the diesel is determined to be tainted and worthless, the debt complained of in the present suit is not owed. If the diesel is determined not to be tainted and worthless, the debt complained of is owed and a full adjudication of this suit is unnecessary.

**Abatement is seasonably raised, even after the rendering of summary judgment, where AJP's initial pleadings brought pendency of the prior suit to the trial court's attention.**

The pendency of a prior suit between the same parties and involving the same subject-matter must be seasonably raised by a plea in abatement. *Wyatt*, 760 S.W.2d 245 at 248. Courts have found that a plea in abatement is seasonably raised, even after the rendering of judgment, when the pendency of a prior suit is shown in the pleadings. *See, e.g. Ex Parte Lillard*, 314 S.W.2d 800, 805 (Tex. 1958); *Beckman v. Beckman*, 716 S.W.2d 83 (Tex.App.—Dallas 1986). Once the necessary facts showing the pendency of a prior suit are plead and admitted, or shown by the undisputed record, the subsequent suit must be abated. *Lillard*, 314 S.W.2d at 806. This rule holds true even when the party who filed the original suit fails to subsequently participate in that suit. *Id.* However, when parties do not

25

inform the court of the pendency of a prior suit until after judgment, courts have discretion to determine if a plea in abatement is seasonable. *Falderbaum v. Lowe*, 964 S.W.2d 744 (Tex.App.—Austin 1998).

AJP brought the Original Suit to the attention of the Court multiple times in its initial pleadings. AJP's Answer and Motion to Transfer Venue alerted the trial court to the prior suit, and included as evidence the affidavit of Appellant Andrew J. Patton stating that litigation over the same facts was already pending. (CR 21-45). Velvin has filed multiple motions, attended hearings, retained experts, and produced and requested thousands of pages of discovery in the Original Suit—at no point making any objection to the dominant jurisdiction of that suit. At the request of Velvin, trial has been set in the Original Suit for October 2016. Further, Velvin's designation of a responsible third party in the Original Suit clearly shows that Velvin considers it to be the dominant and determinative suit; thus, Velvin would not be prejudiced by abatement of the present suit. Velvin has simply "declined to do battle in the forum of the original suit" and multiplied the controversies at hand, rather than settling them in the interest of orderly justice. *See* 2 R. McDonald, Texas Civil Practice in District and County Courts § 7.10, at 165 (rev.1982); *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988).

The trial court erred in denying the Motion for New Trial because a suit involving the same parties and subject matter was pending at the filing of this suit,

26

the prior suit was timely brought to the trial court's attention, and abatement of this suit would be proper.

## VII. CONCLUSION AND PRAYER

The trial court erred in granting the Motion for Summary Judgment because (1) a sworn account cannot be considered *prima facie* evidence to support summary judgment when timely controverted by an affidavit of nonmovant's counsel, and (2) genuine disputed issues clearly exist regarding multiple material facts.

Velvin's sole basis in moving for Summary Judgment was that AJP's Original Answer did not meet the verification requirements to deny a suit on sworn account. In reply, AJP timely filed an Amended Answer and controverting affidavit, satisfying Rules 185 and 93(10) and destroying the *prima facie* evidence of Velvin's sworn account supporting Summary Judgment.

Further, genuine issues of material fact clearly exist regarding AJP's defense of payment. AJP made multiple, consistent directions to Velvin that payments made to Velvin following the disputed fuel delivery were to be applied exclusively to the subsequent, undisputed deliveries. Because AJP had the right to direct application of its payments, disputed fact issues exist regarding AJP's defense of payment of the invoices sued for and their related finances charges.

27

Lastly, a genuine issue of material fact exists as a matter of law regarding the reasonableness of attorney's fees awarded to Velvin. By Velvin's own admission, the Motion for Summary Judgment and attached affidavit required the trial court to take judicial notice of Velvin's attorney's fees. Because AJP properly controverted the reasonableness of Velvin's attorney's fees by the sworn statement of AJP's counsel, judicial notice of Velvin's attorney's fees was not proper and the trial court erred in granting Summary Judgment.

In the alternative, AJP argues that the trial court erred in denying the Motion for New Trial because a suit involving the same parties and subject matter was pending at the filing of this suit, the prior suit was timely brought to the attention of the trial court, and abatement of this suit would be proper. This suit arises from a disputed transaction between the parties in December 2013, where Velvin sold AJP tainted diesel fuel. After being served with AJP's first-filed suit concerning the disputed diesel, Velvin circumvented the rules of orderly justice and filed this suit demanding payment on the same disputed diesel.

Based on the foregoing, Appellants A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel and BBQ, and Andrew J. Patton pray that the Court reverse and remand this matter to the trial court for further proceedings consistent with this Court's Opinion.

Respectfully submitted,


  /s/  Jaclyn D. Patton
JACLYN D. PATTON
TX Bar No. 24085521
639 Heights Boulevard
Houston, Texas 77007
PH:  (713) 730-9446
FX:  (713) 583-4180
jaclyn@txestateplanning.com

ATTORNEY FOR APPELLANTS


## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 5,926 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

  /s/  Jaclyn D. Patton
JACLYN D. PATTON

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served upon the following counsel of record by first-class mail and electronic service on October 26, 2015.


 /s/ Jaclyn D. Patton
JACLYN D. PATTON


Mr. Ronnie Horsley
P.O. Box 7017
Tyler, Texas 75711
Via Email: horsleylaw@tyler.net

No: 2014-362

FILED
2014 NOV 19 AM 10: 56
RUSK COURTNEY TERRY
BY _____ DISTRICT
DEPUTY CLERK

| VELVIN OIL COMPANY, INC. | § | IN THE ~~COUNTY~~ COURT District |
| | § | 4th Judicial |
| VS. | § | AT ~~LAW~~ Judicial |
| | § | |
| A.J.P. OIL COMPANY, LLC d/b/a | § | |
| GRAPELAND FUEL & BBQ; and | § | |
| ANDREW J. PATTON | § | RUSK COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Velvin Oil Company, Inc., a corporation, P.O. Box 993

Henderson, TX 75653, hereinafter referred to as "Plaintiff", and makes and files this its

Original Petition complaining of A.J.P Oil Company, LLC, a limited liability company,

doing business as Grapeland Fuel & BBQ; Andrew J. Patton, also known as and being

the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack

Patton and Jack Patton, III, jointly, severally, individually, hereinafter referred to as

"Defendants"; A.J.P. Oil Company, LLC, may be served by serving its registered agent,

Jack Patton, or any Manager at the address of 1279 E. Loop 304, Crockett, TX 75835, and

Andrew J. Patton may be served at the same above address or 714 E. Houston Ave.,

Crockett, TX 75835 and for cause of action your Plaintiff would show unto this

Honorable Court as follows:

I.

THIS CASE IS FILED AS A LEVEL 1 PROCEEDING UNDER RULE 190.2 TEXAS

RULES OF CIVIL PROCEDURE.

5

The damages sought in this matter are within the jurisdictional limits of this court. Only monetary relief of $100,000.00 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees.

II.

Plaintiff would show that "All invoices due and payable in Rusk County, Henderson, Texas" therefore venue is proper in Rusk County, Texas.

III.

That, on the dates as shown in the itemized and verified account attached hereto as Plaintiff's Exhibit "A", and made a part hereof for all purposes as if set out herein verbatim, Plaintiff, at the special instance and request of Defendants, did deliver to Defendants the services described in said Exhibit "A", at the prices therein charged, the same being the agreed price therefor.

IV.

For valuable consideration, the Defendant, Andrew J. Patton, also known as Jack Patton, executed a Personal Guaranty, a copy of which is attached hereto as Exhibit "B" and made a part hereof for all purposes as if set out herein verbatim, wherein he guaranteed performance and payment of the indebtedness of A.J.P. Oil Company, LLC. A.J.P. Oil Company, LLC defaulted under the terms of said agreement and the Defendant, Andrew J. Patton, also known as Jack Patton, failed to perform and pay under the said Personal Guaranty.

V.

That Defendants did promise to pay Plaintiff for same, but though often

6

requested to do so, the Defendants have failed and refused, and still fail and refuse to pay the said account, all to Plaintiff's damages in the sum of $32,676.71 together with interest and attorney's fees as hereinafter alleged.

VI.

That Plaintiff has made written demand upon the Defendants for payment of said account, more than thirty (30) days prior to the filing of this Petition, and that Plaintiff would show the Court that the recovery of attorney's fees is authorized, made and provided, under and according to Chapter 38 of the CIVIL PRACTICE AND REMEDIES CODE, that this case is being handled on a contingent fee basis, and Plaintiff further sues Defendants for reasonable attorney's fees, inasmuch as Plaintiff has been required to employ the undersigned attorney to file this suit and has agreed to pay him a reasonable fee for his services, all of which Plaintiff alleges to be in at least the sum of $10,892.24. All conditions precedent to Plaintiff's recovery herein have been performed or have occurred.

WHEREFORE, premises considered, your Plaintiff prays unto this Honorable Court, that the Defendants be cited to appear and answer herein, and that upon a final hearing hereof, Plaintiff do have and recover Judgment from and against the Defendants in the sum and amount of $32,676.71 together with interest at the rate of eighteen percent (18%) per annum from the 17th day of November, 2014, until paid, costs of court, reasonable attorney's fees as hereinabove alleged, and interest on such fees and costs at the rate of five percent (5%) per annum, and for such further and other relief, general or special, in law or in equity, to which Plaintiff may be entitled.

7

Respectfully submitted,

LAW OFFICES OF RONNIE HORSLEY, P.C.
Attorney for Plaintiff

By: _____
RONNIE HORSLEY
Attorney for Plaintiff
P. O. Box 7017
Tyler, Texas 75711
Telephone: (903) 593-7314
Texas Bar Card No. 10014000

STATE OF ...Texas...

COUNTY OF ...Rusk...

BEFORE ME, the undersigned authority, on this day personally appeared ......................................

DAVID G. VELVIN

(Name of person making affidavit)

who, being by me duly sworn, states on oath that .......he is

1. An individual trading as ........................................................................................................

(Trade style if used - otherwise owner's name)

2. Agent of ..................................................................................................................................,

(Name of Firm)

a co-partnership, composed of................................................................................................

(Name of Partners)

and that, _he is duly qualified and authorized to make this affidavit.

3. Agent of ...Velvin Oil Co. Inc....................................................................................,

(Name of Corporation)

a corporation, duly incorporated and existing under and by virtue of the laws of the State of

...Texas..., with its principal office and domicile in the City of ...Henderson...,

County of ...Rusk... and State of ...Texas... and is duly qualified and

authorized to make this affidavit.

4. That the foregoing and annexed account, claim, and cause of action in favor of ......................................

...Velvin Oil Co. Inc... and

against ...AJP Oil Co. LLC...

in the sum of ...32,676.71... Dollars is within the knowledge of

affiant just and true, and that it is due and that all just and lawful offsets, payments and credits have been

allowed.

...................................................................

Affiant

SWORN TO AND SUBSCRIBED BEFORE ME, this ......10...... day of ...November..., 20..14

...Tess A. Reneaux...

NOTARY PUBLIC IN AND FOR COUNTY OF

TESS A. RENEAUX
NOTARY PUBLIC
COMMISSION EXPIRES:
10-11-2017

...Rusk..., STATE OF ...Texas...

My Commission Expires: ...10.11.2017...

NOTE: (If an Individual, omit paragraph 2 & 3; If a Co-Partnership, omit paragraph 1 & 3; If a Corporation, omit paragraph 1 & 2)

**VELVIN OIL COMPANY, INC.**
P.O. BOX 993
HENDERSON, TEXAS 75653
903-657-2108

11/10/2014

AJP Oil Company, LLC
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX  75835

00-0001998

| Date | Reference | Description | Amount | Payment | Balance |
|---|---|---|---|---|---|
| 4/2/2014 | 0170195-IN | | 27,102.96 | | |
| 5/27/2014 | | Payment Ref: 2902 | | 23,938.78 | 3,164.18 |
| 4/9/2014 | 0170342-IN | | 27,377.56 | | 27,377.56 |
| 4/30/2014 | APR0038-FC | Finance Charge | 302.45 | | 302.45 |
| 5/31/2014 | MAY0047-FC | Finance Charge | 305.42 | | 305.42 |
| 6/30/2014 | JUN0053-FC | Finance Charge | 305.42 | | 305.42 |
| 7/31/2014 | JUL0040-FC | Finance Charge | 305.42 | | 305.42 |
| 8/31/2014 | AUG0044-FC | Finance Charge | 305.42 | | 305.42 |
| 9/30/2014 | SEP0057-FC | Finance Charge | 305.42 | | 305.42 |
| 10/31/2014 | OCT0054-FC | Finance Charge | 305.42 | | 305.42 |

32,676.71

| Current | 10 Days | 30 Days | 60 Days | 90 Days | |
|---|---|---|---|---|---|
| | | | | | 32,676.71 Total: |
| 0.00 | 305.42 | 305.42 | 305.42 | 31,760.45 | |

*** THIS IS LINE ONE OF THE STANDARD MESSAGE ***
*** THIS IS LINE TWO OF THE STANDARD MESSAGE ***

Your account with us is seriously past due.

Remit today so that we may continue to serve you.



EXHIBIT A
10



# ELVIN OIL CO., INC.

**PETROLEUM PRODUCTS**

P.O. BOX 993
HENDERSON, TEXAS 75653
903/657-2108

EMERGENCY CONTACT: (512) 463-7727

| INVOICE DATE | INVOICE NO | PAGE |
|---|---|---|
| 4/2/2014 | 0170195-IN | 1 |

SOLD TO

AJP Oil Company, LLC
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX 75835

SHIPPED TO

Grapeland
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX 75835

| ACCOUNT NUMBER | SALES REP | CUSTOMER P.O NUMBER | TERMS | SHIP VIA | F.O.B |
|---|---|---|---|---|---|
| 001998 | DG | | Net 10TH | | |

| QUANTITY ORDERED | SHIPPED | BACK ORDERED | DESCRIPTION / STOCK ID | UNIT | UNIT PRICE | DISCOUNT | AMOUNT |
|---|---|---|---|---|---|---|---|
| )1.0 | 5,501.0 | 0.0 | F-N<br>No Lead Gasoline UN-1203 | EACH | 2.9650 | | 16,310.47 |
| )1.0 | 5,501.0 | 0.0 | F-TFG<br>Federal Gasoline Tax | EACH | 0.1840 | | 1,012.18 |
| )1.0 | 5,501.0 | 0.0 | F-TSG<br>State Gasoline Tax | EACH | 0.2000 | | 1,100.20 |
| 5.0 | 2,495.0 | 0.0 | F-DL<br>Diesel 15-PPM Ultra Low Sulfer | EACH | 3.0390 | | 7,582.31 |
| 5.0 | 2,495.0 | 0.0 | F-TFD<br>Federal Diesel Tax | EACH | 0.2440 | | 608.78 |
| 5.0 | 2,495.0 | 0.0 | F-TSD2<br>State Tax Biodiesel | EACH | 0.1960 | | 489.02 |

ULTRA LOW SULFER DIESEL FUEL(15-PPM SULFER MAXIMUM) REQUIRED FOR USE IN ALL 2007 MODEL
YEAR AND LATER HIGHWAY DIESEL VEHICLES AND ENGINES. RECOMMENDED FOR USE IN ALL DIESEL
VEHICLES AND ENGINES. " THIS FUEL MAY CONTAIN UP TO 5.0% BIODIESEL"

*Pd. 23,938.78  5/27 Chk # 2902*

| | |
|---|---|
| Net Invoice: | 27,102.96 |
| Less Discount: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 27,102.96 |

*Balance due 3164.18*

EXHIBIT A

Minimum Octane Rating of this fuel: (R+M) / 2 Method N / L 87, MG 89, SNL 92

are due net 10th from invoice date. Finance charge after 30 days of 1½% per month (minimum charge of 50¢) which is an annual percentage rate of 18%. Failure to pay the full is invoice within the time set forth in the first sentence shall constitute an acceptance of the terms of this invoice. In the event all or any part of the amount or amounts due pursuant sult of this invoice, and such amount or amounts is turned over to an attorney for collection, Customer agrees to pay in addition to all other sums due hereunder, all costs of collection, hout limitation court costs and reasonable subject to the provisions of the Texas Consumer Credit Law. All invoices due and payable in _____

**_____ CO., INC.**
**_____EUM PRODUCTS**
P.O. BOX 993
HENDERSON, TEXAS 75653
903/657-2108

EMERGENCY CONTACT: (512) 463-77:

| INVOICE DATE | INVOICE NO | PA( |
|---|---|---|
| 4/9/2014 | 0170342-IN | |

SOLD TO

AJP Oil Company, LLC
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX 75835

SHIPPED TO

Grapeland
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX 75835

| ACCOUNT NUMBER | SALES REP | CUSTOMER P.O. NUMBER | TERMS | SHIP VIA | F.O.B |
|---|---|---|---|---|---|
| 00-0001998 | DG | | Net 10TH | | |

| QUANTITY | | | DESCRIPTION | | | DISCOUNT | AMOUNT |
|---|---|---|---|---|---|---|---|
| ORDERED | SHIPPED | BACK ORDERED | STOCK ID | UNIT | UNIT PRICE | | |
| 4,003.0 | 4,003.0 | 0.0 | F-N<br>No Lead Gasoline UN-1203 | EACH | 2.9650 | | 11,868.90 |
| 4,003.0 | 4,003.0 | 0.0 | F-TFG<br>Federal Gasoline Tax | EACH | 0.1840 | | 736.55 |
| 4,003.0 | 4,003.0 | 0.0 | F-TSG<br>State Gasoline Tax | EACH | 0.2000 | | 800.60 |
| 3,993.0 | 3,993.0 | 0.0 | F-DL<br>Diesel 15-PPM Ultra Low Sulfer | EACH | 3.0590 | | 12,214.59 |
| 3,993.0 | 3,993.0 | 0.0 | F-TFD<br>Federal Diesel Tax | EACH | 0.2440 | | 974.29 |
| 3,993.0 | 3,993.0 | 0.0 | F-TSD2<br>State Tax Biodiesel | EACH | 0.1960 | | 782.63 |

ULTRA LOW SULFER DIESEL FUEL(15-PPM SULFER MAXIMUM) REQUIRED FOR USE IN ALL 2007 MODEL YEAR AND LATER HIGHWAY DIESEL VEHICLES AND ENGINES. RECOMMENDED FOR USE IN ALL DIESEL VEHICLES AND ENGINES. " THIS FUEL MAY CONTAIN UP TO 5.0% BIODIESEL"

| | |
|---|---|
| Net Invoice: | 27,377.56 |
| Less Discount: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 27,377.56 |

_Marlene Sanders_



Minimum Octane Rating of this fuel: (R+M) / 2 Method N / L 87, MG 89, SNL 92

All accounts are due net 10th from invoice date. Finance charge after 30 days of 1½% per month (minimum charge of 50¢) which is an annual percentage rate of 18%. Failure to pay the f( amount of this invoice within the time set forth in the first sentence shall constitute an acceptance of the terms of this invoice. In the event all or any part of the amount or amounts due pursua to or as a result of this invoice, and such amount or amounts is turned over to an attorney for collection, Customer agrees to pay in addition to all other sums due hereunder, all costs of collectio including without limitation court costs and reasonable subject to the provisions of the Texas Consumer Credit Law. All invoices due and payable in Rusk County, Henderson, Texas.

# ~IN OIL CO., INC.

*PETROLEUM PRODUCTS*

P. O. Box 993
HENDERSON, TEXAS 75653

903-657-2108

# DELIVERY TICKET

Grapeland Fuel & BBQ

DATE 4-2-14

SHIPPED TO Grapeland, Texas

| R NO. | YOUR ORDER NO. | SALES PERSON | TERMS | SHIPPED VIA "FLAMMABLE LIQUID" | | ☐ PREPAID ☐ COLLECT |
|---|---|---|---|---|---|---|

| ITY ED | QUANTITY ORDERED | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| 21 | 5501 | Gals Gasoline 87 OCT | $334.9 | $18,422.85 |
| 5 | 2495 | Gals Diesel 15ppm Ultra-low (Huy) (USC) | $347.9 | $8,680.11 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# IVERY TICKET

Marlene Sanders

:IVED BY

| | |
|---|---|
| STATE ROAD TAX | |
| FEDERAL ROAD TAX | |
| STATE SALES TAX | |
| SUB TOTAL | |
| **TOTAL AMOUNT DUE** | $29,103.06 |



EXHIBIT A

13

*6/12. Sent out approval letter*
*Called + left general msg.*

# VELVIN OIL CO.

**Charge Account Application**

403 Webster Drive
Henderson, Texas 75652
903-657-2108/Fax 903-657-8794

| Approved | Account # | Date: |
|---|---|---|
| Declined | 1999 | 6.12.12 |

Applicant: Please read the following before completing this form. Applicant represents that the information given in this Application is complete and accurate and authorizes Velvin Oil Company or its authorized credit agent to check with credit reporting agencies, credit references and other sources, including banks, Seller deems appropriate in considering this application and subsequently for any legal purposes. READ THE ATTACHED AGREEMENT AND SIGN THE "SIGNATURE" SECTION BEFORE SUBMITTING THIS APPLICATION.

| Company Name (Full Legal Name) | DBA (Doing Business As) | | |
|---|---|---|---|
| AJP Oil Company LLC | Grapeland Fuel & BBQ | | |

| Billing Address | City | State | Zip |
|---|---|---|---|
| 1277 East Loop 304 | Crockett | TX | 75835 |

| Physical Address (or Shipping Address) | City | State | Zip |
|---|---|---|---|
| 405 S market | Grapeland | TX | 75844 |

| Business Type | # of Locations | Year Established | # of Employees |
|---|---|---|---|
| Retail Sales | 2 | 2004 | 11 |

Business Structure ___Corporation (or) ✓ LLC ___LP Year incorporated___ State of Incorporation TX
___Proprietorship ___Partnership ___Government Agency

Annual Sales $ 3,200,000.00

| If a Corporation, please list three major stock-Holders and officers of the Corporation. If a Partnership or Proprietorship, please list the name, address and Social Security Number of all owners. | Name/Title | Social Security Number |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

| Inside City Limits? | County (For Shipping Address) | Have you ever filed bankruptcy? Yes___(complete below)  No ✓ |
|---|---|---|
| Yes | Houston | What Year?          What Type? |

| Avg. Monthly Purchases? | Federal ID# | Purchase Order Required? | Dun & Bradstreet # | Rating (if known) |
|---|---|---|---|---|
| $255,000.00 | 26-3399912 | No | | |

Are your purchases Tax Exempt?   Tax Exempt#

Yes ✓  No___     3-20379-2167-6

TAX WILL CONTINUE TO BE CHARGED ON ALL INVOICES UNTIL THE APPROPRIATE "TAX EXEMPT CERTIFICATE" IS RECEIVED. CUSTOMER WILL BE RESPONSIBLE FOR ALL TAX UNTIL CERTIFICATE IS RECEIVED.

| Billing Contact Name | Phone # | Fax # | Email Address |
|---|---|---|---|
| Jack Patton | (936)852-3050 | (936)687-2921 | andrewjackp5@hotmail.com |

| Purchasing Manager | Phone # | Fax # | Email Address |
|---|---|---|---|
| Jack Patton | (936)687-2921 | " | " |

Indicate all authorized purchasers(s) (other than fuel cards) (for oils, greases, etc.)

1._____  4._____
2._____  5._____
3._____  6._____

**Bank Reference (Required)**

Name Of Bank: Grapeland State Bank  Address: PO Box 117, Grapeland, TX 75844
Phone #: 936-687-2519 or 4813  contact: Norm Ormiston
(936)635-1234

Trade References (DO NOT LIST financial institutions or credit cards)
1. Olan Wilbor (BEK)  City/St: Forth Worth, Texas 76101 Phone#: 817-759-6000
2. Frank Pride (Deans Meats) City/St: Huntington Texas 75949 Phone#: 936-876-5722
3. Tyler Beverages  City/St: Tyler, TX 75712 Phone#: (903)597-3363



EXHIBIT B

# Velvin Oil Company Credit Terms and Conditions

Our terms are DUE UPON RECEIPT OF STATEMENT. On the last business day of each month a statement will be prepared and mailed to you listing all unpaid invoices as of the close of business for that month. THE ENTIRE BALANCE SHOWN ON THE STATEMENT, IS DUE UPON RECEIPT and accounts will be CUT OFF if payment is not received by the TENTH. Any part of a statement balance not paid by the end of the month following the statement date will be considered PAST DUE and will be assessed a 1.5 % late charge that will be added to the unpaid balance.

Your account will be assigned an OPEN CREDIT LIMIT, subject to review at any time and Velvin Oil Company reserves the right to discontinue any CHARGE privileges should your account become past due; if there is an ownership or name change; if there is a bankruptcy; or at any time Velvin Oil Co., for good cause, deems itself insecure.

The applicant hereby authorizes a full and complete credit investigation by Velvin Oil Co. and understands that Velvin Oil Co., will not process a "CHARGE" order until a signed and completed credit application has been submitted and approved. All Information will be VERIFIED.   The applicant further authorizes the bank listed on the application to release information to Velvin Oil Co., as necessary for Velvin Oil Co., to approve credit and subsequently for any legal purpose. Should it become necessary to place the account in the hands of an attorney or collection agency, I/we agree to pay an additional 25% of the amount due and owing. If Velvin Oil Co., finds it necessary to refer this account to an attorney for initiation of a LAWSUIT, a fee of 33 1/3% of the outstanding balance plus any and all court costs shall be added to the account balance.

This CONFIDENTIAL CREDIT APPLICATION contains all terms negotiated between the parties and may be modified only upon written agreement between Velvin Oil Co., and the Applicant.

## I/WE HAVE READ THE TERMS OF THIS AGREEMENT AND AGREE
## TO BE BOUND BY THEM IN ALL RESPECTS.

This ___5th___ day of ___June___, 20 _12_

Signature: _____
(OWNER OR OFFICER SIGNATURE REQUIRED)

Name: ___Jack Patton___    Title: ___Owner___

## PERSONAL GUARANTY

### ALL BUSINESSES ARE REQUIRED TO SIGN THIS GUARANTY....

UNDERSIGNED GUARANTY MUST BE ONE OF THE FOLLOWING (Circle One) Owner/Sole Proprietor / General Partner / Corporate Officer

PERSONAL GUARANTY:    In consideration of Seller, financing purchases by Applicant, the undersigned Guarantor hereby agrees unconditionally, absolutely and irrevocably, to personally guarantee payment of all amounts, hereafter due under, and the performance under the terms of the attached Commercial Charge Account Agreement ("Agreement"), and further agrees to pay the total balance due on the Account opened pursuant to the Agreement upon demand, without requiring Seller to make demand and/or proceed first to enforce payment against the Applicant also liable on this account, in the event of any default under the Agreement that governs the Account. The undersigned hereby waives any notices regarding the Agreement or this Guaranty, and agrees that this Guaranty shall be applicable until the Agreement has terminated and all amounts due there under shall be paid in full. The undersigned agrees that in the event the Account is not paid as agreed, Seller may report the undersigned's liability for and the status of the Account to the credit bureaus and others who may lawfully receive such information.

PERSONAL GUARANTOR MUST BE OWNER/SOLE PROPRIETOR, GENERAL PARTNER, OR CORPORATE OFFICER.

| Full name | Home Address | City | St | Zip |
|---|---|---|---|---|
| Jack Patton | 714 E. Houston | Crockett | TX | 75835 |

| Signature | Date | Title | Social Security # (REQUIRED) | Home Phone # |
|---|---|---|---|---|
|  | 6/5/12 | Owner | ▓▓▓▓▓ | (936)545-8678 |

**FOR OFFICE USE ONLY**
Number of Fueling Cards Requested_____


EXHIBIT B

4TH JUDICIAL DISTRICT

2014 DEC 29 AM 10: 45

VELVIN OIL COMPANY, INC.          *
                                  *
VS.                               *          NO. 2014-362
                                  *
A.J.P. OIL COMPANY, LLC           *
d/b/a GRAPELAND FUEL & BBQ;       *
AND ANDREW J. PATTON              *

RUSK COUNTY DISTRICT CLERK

BY _____ DEPUTY

## DEFENDANTS' MOTION TO TRANSFER VENUE

TO THE HONORABLE COURT:

A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, and Andrew J. Patton, also known and being the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack Patton and Jack Patton, III, Defendants, move the Court to transfer venue and in support of the motion show:

1. Defendants object to venue in Rusk County, Texas, the county in which this action was instituted, on the ground that Rusk County is not a county of proper venue in this case.

2. No basis exists for permitting venue in Rusk County as alleged in Plaintiff's Original Petition under any of the venue rules provided by the Civil Practice and Remedies Code of Texas or otherwise. Defendants specifically deny the venue facts pleaded in Plaintiff's Original Petition. Defendants specifically deny that any Defendant contracted in writing to perform an obligation in Rusk County, Texas, expressly naming Rusk County or definite place in that county by the writing. Defendants specifically deny that any invoice the subject of this suit constituted a contract in

16

writing by which they agreed to pay for the goods the subject of this suit in Rusk County, Texas. Defendants further specifically deny that any such invoice was furnished prior to the time the kind and quantity of goods to be purchased, the price to be paid therefor, the place of delivery and other contractual terms had been agreed upon. Defendants specifically deny that any invoice the subject of this suit was sent to any of them prior to the shipment of the goods the subject of this suit. Defendants specifically deny that any invoice by Plaintiff was intended to modify the terms of any original contract.

Defendants specifically deny that the individual Defendant was ever a resident of Rusk County, Texas. The individual Defendant is not a resident of Rusk County, Texas and was not a resident of Rusk County, Texas when the cause of action alleged in Plaintiff's Original Petition allegedly accrued.

Defendant A.J.P. Oil Company, LLC specifically denies that Rusk County is the county of Defendant's principal office in this state.

Defendants also specifically deny that all or a substantial part of the events or omissions giving rise to Plaintiff's cause of action occurred in Rusk County, Texas.

3. Defendants further object to venue in Rusk County, Texas, the county in which this action was instituted, on the grounds that Rusk County is an inconvenient venue, and the action should be transferred to Houston County, Texas in accordance with TEX. CIV.

17

PRAC. & REM. CODE ANN. § 15.002(b) (2014). More specifically, as shown in the attached Affidavit of Andrew J. Patton, for the convenience of the parties and witnesses and in the interest of justice, maintenance of this action in Rusk County would work an injustice to Defendants considering:

(1) The Defendants' economic personal hardship;

(2) The balance of the interest of all parties predominates in favor of the action being brought in Houston County, Texas; and

(3) The transfer of the action to Houston County, Texas would not work an injustice to any other party.

4. Defendants request that this action be transferred to a District Court of Houston County, Texas, where proper venue lies in this case.

5. Venue is proper in Houston County, Texas, because the individual Defendant resided in Houston County, Texas at the time the alleged cause of action accrued, and Houston County, Texas is the county of the principal office of Defendant A.J.P. Oil Company, LLC.

WHEREFORE, Defendants request that this matter be set for hearing, and that on completion of the hearing the Court grant Defendants' Motion to Transfer Venue in this cause to Houston County, Texas, taxing costs against the Plaintiff, and granting the Defendants any further relief to which they may be justly entitled.

Respectfully submitted,

BY: _____

WILLIAM R. PEMBERTON
WILLIAM R. PEMBERTON, P.C.
P. O. BOX 1112
CROCKETT, TEXAS  75835
936-544-4111
936-544-5023 (FAX)
TEXAS BAR I.D. NO. 15735500
bill@pembertontriallaw.net

JACLYN D. PATTON
3730 Kirby Drive, Suite 1200
Houston, Texas 77098

ATTORNEYS FOR DEFENDANTS

19

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing Defendants' Motion to Transfer Venue has been served upon:

> Mr. Ronnie Horsley
> Attorney at Law
> P. O. Box 7017
> Tyler, Texas 75711

by depositing same, enclosed in a post paid, properly addressed wrapper, in a Post Office or official depository, under the care and custody of the United States Postal Service, Certified Mail, Return Receipt Requested, this the 23rd day of December, 2014.

_____
WILLIAM R. PEMBERTON

20

AFFIDAVIT

THE STATE OF TEXAS *

COUNTY OF HOUSTON *

BEFORE ME, the undersigned notary public, on this day personally appeared Andrew J. Patton, individually and as agent for A.J.P. Oil Company, LLC, who, after being duly sworn, stated that he is a Defendant in this Cause, that he is over the age of 18 years, of sound mind, and is competent to make this affidavit, and that every statement contained in this Affidavit is true and correct.

"Andrew J. Patton, also known and being the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack Patton and Jack Patton, III, is a resident of Houston County, Texas, and he was a resident of Houston County, Texas at the time the alleged cause of action plead in Plaintiff's Original Petition accrued. The principal office in Texas of A.J.P. Oil Company, LLC, is in Houston County, Texas. Houston County, Texas is the county in which the decision makers for the organization within the State of Texas conduct the daily affairs of the organization.

"The invoices attached to Plaintiff's Original Petition as Exhibit "A" were delivered to Defendants after the kind and quality of goods to be purchased, the price to be paid therefor, the place of delivery and the other terms of contract between Plaintiff and Defendants had been agreed upon. The goods the subject of this suit had already been delivered prior to the time the invoices were

21

delivered.

"Litigation between the Plaintiff in this case and Defendant A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, is pending in the Third Judicial District Court of Houston County, Texas, in Cause No. 14-0217, wherein A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, sued Velvin Oil Company, Inc. for damages for delivery of tainted fuel. A true and correct copy of Plaintiff's Original Petition filed on November 7, 2014 in Cause No. 14-0217 is attached hereto, marked "Exhibit A" and incorporated by reference.

_____
ANDREW J. PATTON, INDIVIDUALLY AND
AS AGENT FOR A.J.P. OIL COMPANY,
LLC

SUBSCRIBED AND SWORN TO BEFORE ME this 22ND day of December, 2014.

SANDRA L. HAYNES
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 11-08-2018

_____
NOTARY PUBLIC, STATE OF TEXAS

22



| | | |
|---|---|---|
| AJP OIL COMPANY, LLC D/B/A GRAPELAND FUEL AND BBQ, Plaintiff | § § § § | IN THE 3 DISTRICT COURT OF |
| V. | § § | |
| VELVIN OIL COMPANY, INC. Defendant | § § | HOUSTON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **AJP OIL COMPANY, LLC d/b/a GRAPELAND FUEL AND BBQ** (hereinafter "Plaintiff") complaining of **VELVIN OIL COMPANY, INC.** (hereinafter "Defendant), and states the following:

### I. DISCOVERY LEVEL

Plaintiff intends to conduct discovery in this suit under Level 2 of Texas Rule of Civil Procedure 190.3 and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiff seeks monetary relief over $100,000.

### II. RELIEF

Plaintiff seeks monetary relief over $1,000,000. Tex. R. Civ. P. 47(c)(5).

### III. PARTIES

Plaintiff, AJP OIL COMPANY, LLC is a limited liability company organized and existing under the laws of the State of Texas and may be served with citation in this cause by serving its registered agent for service, Andrew Patton, at 1277 East Loop 304, Crockett, Texas 75835, or wherever he may be found.

Defendant, VELVIN OIL COMPANY, INC. is a corporation organized and existing under the laws of the State of Texas and may be served with citation in this cause by serving its registered agent for service, David Velvin, at 403 Webster Drive, Henderson Texas 75653, or wherever he may be found.

## IV. JURISDICTION

Jurisdiction is proper in this Court because the damages suffered by the Plaintiffs are in excess of the minimum jurisdictional limits of this Court.

Venue is proper in Houston County, Texas because the acts and/or omissions complained of herein occurred in Houston County, Texas.

## V. VENUE

Venue for this suit is proper in Houston County under Texas Civil Practice & Remedies Code section 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to this cause of action occurred in Houston County. TEX. CIV. PRAC. & REM. CODE § 15.002(a).

Venue for this suit is also proper in Houston County under Texas Business & Commerce Code section 17.56 because Defendants have conducted business in Houston County, and the transactions that form the basis of this cause of action occurred in Houston County. TEX.BUS. & COM. CODE §17.56.

## VI. BACKGROUND FACTS

Plaintiff, Grapeland Fuel and BBQ, is a convenience store and gas station located in Grapeland, Texas. Plaintiff has been in operation and regularly selling gasoline and diesel fuels since 2006.

On or about December 4, 2013, Defendant Velvin Oil made a fuel delivery to Plaintiff

that included 2,478 gallons of defective and harmful diesel fuel. In turn Plaintiff, in its ordinary and expected course of business, sold this defective fuel to customers. The diesel fuel actively harmed vital engine parts and rendered customers' vehicles inoperable, or in a diminished functional capacity. Plaintiff was ultimately forced to fix these disabled vehicles out of pocket at a cost exceeding $20,000.

Further, in the weeks following Defendant's diesel delivery to Plaintiff, Defendant's agents continuously and fraudulently misrepresented to Plaintiff that the diesel fuel was untainted and met regulatory requirements, inhibiting Plaintiff from taking timely remedial action and resulting in further damages to Plaintiff.

As a result of the tainted diesel sold by Defendant and the resulting harm to Plaintiff's customers, Plaintiff has suffered serious financial harm including repair costs, loss of profit and severely diminished goodwill within the community.

### VII. VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT

Plaintiff is a consumer under the DTPA because plaintiff is a Limited Liability Company who acquired goods by purchase. Defendant is a corporation that can be sued under the DTPA.

Based on the conduct alleged above, Defendant Velvin Oil Company has engaged in false, misleading, or deceptive acts or practices in the conduct of trade or commerce in violation of TEX. BUS. & COM. CODE §17.46(a) and (b), to wit Defendant:

(A)  engaged in false, misleading, or deceptive acts or practices that plaintiff relied on to plaintiff's detriment. Specifically, Defendant represented that the diesel fuel it sold to Plaintiff was of a particular standard, quality or grade when it was not. TEX. BUS. & COM. CODE §17.46(b)(7). Defendant also failed to disclose information known at the time of the transaction to Plaintiff, with the intention that

25

withholding this information would induce Plaintiff to enter into a transaction that Plaintiff would not have entered had the information been disclosed. TEX. BUS. & COM. CODE §17.46(b)(24).

(B) breached an implied warranty. Specifically, Defendant breached the implied warranty of merchantability as discussed in detail below.

(C) engaged in false, misleading, or deceptive acts or practices that, to plaintiff's detriment, violated a "tie-in" consumer statute. Specifically, Defendant breached Texas Agriculture Code Section 17.055 by selling motor fuel with an inaccurate automotive fuel rating. TEX. AGRIC. CODE § 17.055.

Plaintiff gave Defendant notice as required by Texas Business & Commerce Code section 17.505(a). Attached as Exhibit A is a copy of the notice letter sent to Defendant, which is incorporated by reference.

## VIII.    BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

Plaintiff re-alleges and incorporates by reference all other paragraphs of this Petition as if fully set forth herein.

At all times relevant to this Petition, Defendant is and was in the business of selling motor fuel without substantial change in the condition in which such fuel was manufactured and sold to consumers, knowing that its fuel products would be sold to persons whose vehicles required a specific quality of fuel to operate.

Defendant is a merchant as to motor fuels, and as such impliedly warranted that the diesel fuel advertised as meeting state and federal regulations and purchased by Plaintiff and was merchantable and fit for the ordinary purposes for which it was to be used. Plaintiff accordingly relied on Defendant's implied warranties in purchasing and reselling the diesel fuel.

26

On or around December 4, 2013, Defendant sold and delivered to Plaintiff tainted diesel fuel that Defendant warranted met regulatory standards. Defendant sold and delivered this fuel to Plaintiff with knowledge that such fuel was to be sold to the general public for specific use in vehicles that operate only on fuel meeting regulatory standards.

Plaintiff was unable to inspect or test the fuel it received from Defendant prior to purchase.

After Plaintiff purchased the diesel fuel from Defendant, Plaintiff resold such fuel in the course of its business to customers. Plaintiff relied on Defendant's implied warranty of merchantability in selling the fuel to its customers.

Plaintiff's customers immediately began to experience problems with their vehicles, including engine stalling and failure, resulting in expenses incurred for towing and repair.

Defendant breached its implied warranty of merchantability in that the diesel fuel it sold contained water and other contaminants, making the fuel unwholesome, unfit for consumers to use in their vehicles and unreasonably dangerous to consumers.

The injuries to Plaintiff, described above, proximately resulted from Defendant's breach of the implied warranty of merchantability.

## IX. NEGLIGENCE

Plaintiff re-alleges and incorporates by reference all other paragraphs of this Petition as if fully set forth herein.

Plaintiff purchased diesel fuel distributed and sold by Defendant.

Defendant owed Plaintiff a duty of care to offer goods free from harmful defect.

Defendant should have reasonably foreseen that Plaintiff would be subject to the harm caused by the damaging and defective fuel sold.

The defective fuel was intended to, and did, reach Plaintiff without material alteration.

Plaintiff used the defective fuel in the manner that Defendant expected.

The defects in the fuel could not be anticipated or detected by Plaintiff through any reasonable method. The defective fuel was unreasonably dangerous when used in its customary manner.

The fuel was defective and unsafe for its intended use because it harmed the vehicles it was intended to fuel, rendering them inoperable.

The fuel failed to perform its intended function of safely and efficiently powering engines.

Defendant should have foreseen, detected, and prevented the defective condition of the fuel.

Defendant should have prevented distribution of the defective fuel.

Defendant breached their duty of care by selling products that were harmful and deleterious:

      a. without adequate quality control and testing; and

      b. without using proper "clean out" and distribution practices.

Defendant's conduct was at a minimum negligent and likely careless or reckless.

Plaintiff has suffered economic damages through no fault of its own as a direct and proximate result of Defendant's defective fuel.

## X. DAMAGES

Economic and Actual Damages. Defendant's wrongful conduct was a producing cause of Plaintiff's injury, which resulted in the following damages:

      a.    $31,760.45 in out-of-pocket damages for the worthless diesel fuel delivered.

28

b.   $1,146,616.17 for lost profits.

c.   $17,232.02 in mitigation costs.

d.   $6,000 in lost time.

Mental-Anguish Damages. Defendant acted knowingly, which entitles Plaintiff to recover mental-anguish damages under Texas Business & Commerce Code section 17.50(b)(1). Defendant's wrongful conduct resulted in mental-anguish damages totaling $15,000.

Additional damages. Defendant acted knowingly, which entitles plaintiff to recover treble economic damages under Texas Business & Commerce Code section 17.50(b)(1). Specifically, Defendant and its agents knowingly sold tainted, substandard diesel fuel to Plaintiff because Defendants were switching over to a "Winter Blend" of diesel and were in short supply of diesel. This is commonly referred to "clean out" diesel, which is substandard. *See* Exhibit B.

Attorney fees. Plaintiff is entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code section 17.50(d).

## XI. JURY DEMAND

Plaintiffs hereby request a trial by jury and have tendered the appropriate Jury Fee.

## XII. CONDITIONS PRECEDENT

All conditions precedent to plaintiff's claim for relief have been performed or have occurred.

## XIII. REQUEST FOR DISCLOSURE

Under Texas Rule of Civil Procedure 194, plaintiff requests that defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## XIV. PRAYER

As a result of the foregoing, Plaintiff asks that the Court issue citation for Defendant to appear and answer, and respectfully prays for each of the following:

a.  Economic damages.

b.  Actual damages.

c.  Mental-anguish damages.

d.  Treble damages.

e.  Pre-judgment and post-judgment interest.

f.  Attorneys' fees and costs of Court.

g.  All other relief to which Plaintiff may be entitled.

Respectfully submitted,

JACLYN D. PATTON
TX Bar No. 24085521
3730 Kirby Drive, Suite 1200
Houston, Texas 77098
(713) 730-9446
(713) 364-6992 (Fax)
jaclyn@txestateplanning.com

DATED: 11-7-14

30

# EXHIBIT A

August 28, 2014

Re: Tainted diesel delivered to Grapeland Fuel and BBQ

Mr. David Velvin
Velvin Oil Company, Inc.
P.O. Box 993
Henderson, TX 75653

Dear Mr. Velvin:

I represent Grapeland Fuel and BBQ in the above-referenced matter. You will recall that in December 2013, Jack Patton of Grapeland Fuel and BBQ placed a fuel order with Velvin Oil, which was delivered on December 4th. Two days later, on December 6th, Mr. Patton became aware that three of his customers had experienced issues with diesel purchased from Grapeland Fuel, resulting in extensive damage to their vehicles. Your Vice President, Jim Jordan, was immediately advised of the problem and reassured my client that it would be looked into. Over the next two weeks, Mr. Jordan was regularly contacted by my client about the ongoing issue. During this time Mr. Jordan sent two super clean diesel shipments and one employee to add a shock treatment to the fuel tank, all in hopes of fixing the tainted diesel. After each "fix" made by your company, Mr. Jordan insisted that the diesel was now safe to sell to the general public. It was not. The problem was not ultimately resolved until my client emptied every ounce of diesel from your company's December 4th shipment from his tank.

In reliance on your representation that the diesel delivered on December 4th was of a standard quality and on your continuous assurances that the diesel had been "fixed" and was safe for resale, my client has suffered severe and continuing damages which have not been remedied by Velvin Oil. Grapeland Fuel and BBQ has made numerous attempts to resolve this matter amicably, but has been rebuffed. After months of being assured by Mr. Jordan that Velvin Oil

would "do the right thing" in relation to the tainted diesel, my client's concerns are now being ignored.

Undoubtedly, you are aware of your liability to my client for violation of the implied warranty of merchantability arising from the principles of common law and, more specifically, Section 17.46(7) of the Texas Deceptive Trade Practices Act (DTPA), Texas Business & Commerce Code section 17.41 et seq.

Because of your violation of the DTPA, my client has incurred economic damages of $1,072,439.11. These damages represent the $31,760.45 you have charged to my client for the tainted diesel delivered, $15,000 in business interruption while my client was forced to shut down his diesel pumps, $19,678.66 in out-of-pocket and mitigation costs to repair the customers' vehicles damaged by the tainted diesel, $6,000 in lost time Mr. Patton spent attending to this issue, and $1,015,000 representing the loss in sales that have already been experienced by Grapeland Fuel and will continue to be experienced over the next two years. In the event of litigation, these amounts will be adjusted upward to reflect any additional damages.

In the event of litigation, my client will also seek recovery of mental-anguish damages in the amount of $15,000 and trebled economic damages on the grounds that your conduct was committed knowingly. Specifically, we will show that your company acted with actual awareness that the diesel was tainted when attempting to remedy the problem with shipments of super clean diesel and shock treatment, yet reassuring my client that the diesel was safe for resale.

Please understand that this demand is made in the spirit of compromise. According to our analysis, the demand presents a tremendous savings to you given your potential exposure to Grapeland Fuel and BBQ. We hope you view this demand as a good faith, conservative effort on our part to resolve this potential litigation on amicable terms.

My client is anxious to resolve this matter immediately. Therefore, I suggest that you or your attorney contact me as soon as possible. From this point forward, all contact concerning this matter should be made to my office.

If this matter is not resolved, my client has authorized me to bring a lawsuit against you for all appropriate remedies under the Texas Deceptive Trade Practices—Consumer Protection Act. We would expect to recover not only our damages, but also mental anguish damages, prejudgment interest, attorney's fees, and perhaps additional punitive damages.

Please forward this letter to your insurance carrier to ensure that the carrier receives timely notice of the claim and will provide you with representation and coverage.

We trust that you will immediately respond, in writing, to this formal demand letter and schedule a mutually convenient time and date for the requested relief within the time specified in

this letter. If you have any questions regarding this matter or need additional information, please contact my office.


Sincerely,


Jaclyn D. Patton

# EXHIBIT B

| | | |
|---|---|---|
| AJP OIL COMPANY, LLC  D/B/A | § | IN THE _____ DISTRICT COURT OF |
| GRAPELAND FUEL AND BBQ, | § | |
| Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| VELVIN OIL COMPANY, INC. | § | HOUSTON COUNTY, TEXAS |
| Defendant | § | |

## AFFIDAVIT OF ANDREW PATTON

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HOUSTON | § |

ANDREW PATTON appeared in person before me today and stated under oath:

"My name is ANDREW PATTON. I am above the age of eighteen years, and I am fully competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct."

"I am the owner of Grapeland Fuel and BBQ. On December 3, 2013 I placed a gasoline and diesel order with Jim Jordan of Velvin Oil by phone. When I made the order, Mr. Jordan told me that there was currently a shortage of diesel because the refinery was switching to a winter blend and doing maintenance, but that he "would pull some diesel from somewhere." This order was delivered to Grapeland Fuel on December 4th.

Two days later on December 6th, I was told by my store manager Marsha Kosechata that Joe Graves of Joe's Automotive had called saying that three of my customers had to bring their trucks into his shop after purchasing diesel from my store. These customers were Tommy Smith, Charlie Casky and Chris Byrn and they started having problems with their trucks almost

immediately after filling up with us—one truck broke down before it could even make the half block from Grapeland Fuel to Joe's Automotive. I verified via credit card records that these customers had purchased diesel from diesel tank four at my store on December 4th, 5th and 6th. I immediately shut down both diesel pumps and called Mr. Jordan of Velvin Oil to advise him of the problem. Mr. Jordan said he would look into the matter and get back to me. Meanwhile I inspected all of my pumps and fuel delivery paperwork and checked the veeder root readings that my manager Ms. Kosechata prints out every night. I discovered that eighteen gallons of water was dropped with the diesel delivery in diesel tank four. I pulled a fuel sample and found that the diesel had a strange milky tea-like color and smelled somewhat like cleaning solvent. Normally diesel has a greenish tint and ranges from clear to yellow in color—in my ten years in the gas station business I have never seen diesel the color of tea.

On December 9th, I spoke to Mr. Jordan again. He agreed there was a problem with the diesel and said that he had a solution. Velvin Oil shipped 2,183 gallons of super clean diesel, which seemed to change the color of the fuel to a more normal color. Mr. Jordan assured me that this super clean diesel would fix the problem. Because of Velvin Oil's assurances, we began to sell diesel again on December 10th. The next day our fuel filters started stopping up again and we had to change out six filters in diesel tank four in just one day. I called Mr. Jordan again about the problems we were still having and he sent another 3,718 gallons of super clean diesel on December 11th. By December 13th the filters in diesel tank four were clogging yet again and I hired a technician to change all filters and inspect the pumps.

On December 19th, I called Mr. Jordan about the ongoing problems with diesel tank four. He sent an employee of Velvin Oil to add a shock treatment additive to the diesel in that tank and again assured me that any problems we were having would be fixed by this. The

filters in diesel tank four clogged within a few days, forcing me to stop selling all diesel until we could pump the diesel tanks empty and dispose of 435 gallons worth of worthless diesel—about $1,500 worth of diesel wasted.

During this time, four additional trucks that had filled up at our diesel tank four were towed to auto shops in Grapeland, Crockett and Huntsville. These customers were Gator Matthews, Eric Grueziecke, Richard Wagner and Tom Gates. I again verified by credit card receipt that these customers had indeed filled up with diesel from tank four at Grapeland Fuel.

Between December 6th, 2013 and January 7th, 2014, seven total trucks were damaged after filling up at our diesel tank four. Repairs to their trucks included changing fuel filters, flushing fuel systems, dropping fuel tanks, cleaning fuel tanks, fuel injector replacement and fuel pump replacement. Tom Gates' truck required a total fuel system overhaul. I paid $17,233.02 out of pocket to repair my customers' trucks. In addition, because Grapeland and Houston County is such a small and close community, word quickly spread that our diesel was damaging customers' trucks. During the first eight months of 2014, my business has been down almost $250,000 compared to this same period last year and it continues to suffer. Even now, almost an entire year since the incident, customers ask me almost daily if our fuel is safe to buy.

Grapeland Fuel purchased diesel exclusively from Velvin Oil between October 2013 and February 2014. We have never had any issues with diesel before Velvin Oil delivered contaminated fuel on December 4, 2013 and we have not had any issues since we pumped that fuel out of our tanks in January 2014.

We continued to do business with Velvin Oil because we were repeatedly assured by Jim Jordan that Velvin Oil would make their mistake right. After trying to amicably resolve

38

this matter several times and being ignored by Velvin Oil, it has become apparent we must resort to the legal system to get any relief."

AFFIANT FURTHER SAYETH NOT.

_____
ANDREW PATTON

SWORN TO AND SUBSCRIBED BEFORE ME on this $\underline{16}$ day of $\underline{Nov.}$, 2014, to certify which witness my hand and seal of office.

JULIE RHONE
Notary Public, State of Texas
My Commission Expires
December 02, 2016

_____
Notary Public in and for the
State of Texas

39

# EXHIBIT C

| | | |
|---|---|---|
| AJP OIL COMPANY, LLC D/B/A | § | IN ____THE DISTRICT COURT OF |
| GRAPELAND FUEL AND BBQ, | § | |
| Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| VELVIN OIL COMPANY, INC. | § | HOUSTON COUNTY, TEXAS |
| Defendant | § | |

## AFFIDAVIT OF MARLENE SANDERS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HOUSTON | § |

MARLENE SANDERS appeared in person before me today and stated under oath:

"My name is MARLENE SANDERS. I am above the age of eighteen years, and I am fully competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct."

"I am a shift manager at Grapeland Fuel and BBQ. On December 4th, 2013, I was working when an employee of Velvin Oil came and dropped off diesel and gasoline into our tanks. I signed the delivery ticket for that fuel.

About the next day we began to have problems with tank four at our store. We had never had any problems with diesel before Velvin Oil made the fuel delivery that I signed for on December 4th, 2013.

I was working again around December 18th or 19th when a Velvin Oil employee came to Grapeland Fuel and treated tank four with a shock treatment he said was for water in the diesel. The employee left another bottle of shock treatment with us for use later on. We kept

41

having problems until we pumped out tank four. We have not had any problems since but I still hear customers say they are worried about buying diesel and gasoline from us."

AFFIANT FURTHER SAYETH NOT.

_Marlene Sanders_
MARLENE SANDERS

SWORN TO AND SUBSCRIBED BEFORE ME on this 10 day of Nov., 2014, to certify which witness my hand and seal of office.

JULIE RHONE
Notary Public, State of Texas
My Commission Expires
December 02, 2016

Notary Public in and for the State of Texas

42

# EXHIBIT D

No. _____

| | | |
|---|---|---|
| AJP OIL COMPANY, LLC D/B/A | § | IN _____THE DISTRICT COURT OF |
| GRAPELAND FUEL AND BBQ, | § | |
| Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| VELVIN OIL COMPANY, INC. | § | HOUSTON COUNTY, TEXAS |
| Defendant | § | |

## AFFIDAVIT OF MARSHA KOSECHATA

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HOUSTON | § |

MARSHA KOSECHATA appeared in person before me today and stated under oath:

"My name is MARSHA KOSECHATA. I am above the age of eighteen years, and I am fully competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct."

"I have been the manager at Grapeland Fuel and BBQ for over three years. One of my regular duties as manager is to print out and check the veeder root reading every day immediately after closing. On December 3rd and 4th of 2013, I printed out the veeder root readings like I do each and every night at approximately 6:05pm. I did notice at this time that the time stamp was off due to a power outage.

When I checked the veeder root readings on December 3rd, 2013, there was no water in tank four. After the fuel delivery by Velvin Oil on December 4th, the veeder root readings showed that there were eighteen gallons of water in tank four. Our fuel tanks are always kept locked and are not accessible.

44

On December 18th or 19th, an employee from Velvin Oil came to Grapeland Fuel and treated our tank four. The employee said it was a shock treatment for the water in the diesel. They also left some shock treatment for us to treat at a later date. We used the treatment the following week as we were still having trouble.

During my entire time working for Grapeland Fuel and BBQ, we've never had any problems with bad diesel except for the period between December 4th 2013 when Velvin Oil delivered bad diesel to tank four and when Mr. Patton pumped tank four empty in January 2014."

AFFIANT FURTHER SAYETH NOT.

*Marsha Kosechata*
MARSHA KOSECHATA

SWORN TO AND SUBSCRIBED BEFORE ME on this _16_ day of _NOV._, 2014, to certify which witness my hand and seal of office.

JULIE RHONE
Notary Public, State of Texas
My Commission Expires
December 02, 2016

Notary Public in and for the State of Texas

45

IN THE DISTRICT COURT OF RUSK COUNTY, TEXAS FILED

4TH JUDICIAL DISTRICT

2014 DEC 29 AM 10: 45

RUSK COUNTY DISTRICT CLERK

| | | |
|---|---|---|
| VELVIN OIL COMPANY, INC. | * | |
| | * | |
| VS. | * | NO. 2014-36 BY_____DEPUTY |
| | * | |
| A.J.P. OIL COMPANY, LLC | * | |
| d/b/a GRAPELAND FUEL & BBQ; | * | |
| AND ANDREW J. PATTON | * | |

## DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE COURT:

A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, and Andrew J. Patton, also known and being the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack Patton and Jack Patton, III, hereinafter sometimes referred to as "Defendants," SUBJECT TO DEFENDANTS' MOTION TO TRANSFER VENUE, file this, their Original Answer to Plaintiff's Original Petition herein, and, for such Answer, would respectfully show unto the Court the following:

1. Defendants have paid in full the account the subject of Plaintiff's suit, more specifically with check number 2902, dated April 29, 2014.

2. Defendants deny, each and every, all and singular, the allegations contained in Plaintiff's Original Petition and demand strict proof thereof; and, of this, Defendants put themselves upon the country.

WHEREFORE, premises considered, Defendants pray that Plaintiff take nothing by its suit, that Defendants go hence with their costs

5

without day, and for such other and further relief, both general and special, at law and in equity, to which Defendants may be justly entitled.

Respectfully submitted,

BY: _____
WILLIAM R. PEMBERTON
WILLIAM R. PEMBERTON, P.C.
P. O. BOX 1112
CROCKETT, TEXAS   75835
936-544-4111
936-544-5023 (FAX)
TEXAS BAR I.D. NO. 15735500
bill@pembertontriallaw.net


JACLYN D. PATTON
3730 Kirby Drive, Suite 1200
Houston, Texas 77098

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing Defendants' Original Answer has been served upon:

Mr. Ronnie Horsley
Attorney at Law
P. O. Box 7017
Tyler, Texas 75711

by depositing same, enclosed in a post paid, properly addressed wrapper, in a Post Office or official depository, under the care and custody of the United States Postal Service, Certified Mail, Return Receipt Requested, this the 23rd day of December, 2014.

_____
WILLIAM R. PEMBERTON

6

No: 2014-362

| | | |
|---|---|---|
| VELVIN OIL COMPANY, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 4TH JUDICIAL DISTRICT |
| | § | |
| A.J.P. OIL COMPANY, LLC d/b/a | § | |
| GRAPELAND FUEL & BBQ; and | § | |
| ANDREW J. PATTON | § | RUSK COUNTY, TEXAS |

RESPONSE TO MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Velvin Oil Company, Inc., Plaintiff in the above entitled and numbered cause and in response to the Motion for New Trial filed herein by the Defendants would show the court the following:

I.

A.J.P. Oil Company, LLC and Andrew J. Patton (hereinafter referred to as "Defendants") did not file a plea to abate this case. The allegation that the pending cases are "identically the same parties, involve the same subject matter" is contrary to the evidence already before this court. In this connection, the undisputed evidence shows that the sworn account upon which Plaintiff's claim has already been adjudicated, shows a series of payments on account made by the Defendants. Those payments applied to discharge the invoice which Defendants now claim to be in dispute in another county. Essentially, Defendants have filed a suit for damages arising out of customer complaints regarding fuel provided by them in Houston County.

II.

Plaintiff would show that the Defendant filed its Original Answer in this cause

47

setting forth a claim of payment by its check #2902 in April, 2014. Thereafter the Defendants filed a Motion to Transfer Venue and many other pleadings in this cause but never requested this cause be abated in any direction to the court. A plea in abatement can be waived as this plea was never raised.

### III.

Defendants request a new trial for the reason that the attorney's fee proof was within counsel's estimation inadequate. Your Plaintiff would show that the court does not need to hear _any_ evidence in connection with attorney's fees as Plaintiff's cause was brought as a suit on a sworn account and on a contract and is provided in the TEXAS CIVIL PRACTICE AND REMEDIES CODE §38.004

"The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in:

(1) a proceeding before the court; or

(2) a jury case in which the amount of attorney's fees is submitted to the court by agreement."

### IV.

The Defendants request a new trial claiming there is a defense of payment, while the documentary evidence attached to the Motion for New Trial shows that the check #3018 attached to Exhibit "D" to Defendant's Motion for New Trial is an unrestricted $64,656.63 check to be applied on account "00-0001998". Without a restriction, the Plaintiff is entitled to apply ongoing account payment, as they wish and that and subsequent payments by Defendant were applied to discharge the previous balances,

48

and of the same controversy must be dismissed if a party to that suit calls the second court's attention to the pendency of the prior suit by a Plea in Abatement."

VII.

Clearly the issues in the Houston County case are not the same as those before the court here. The Houston County case involves damage to customer vehicles, while this case was a simple sworn account for fuel which was delivered but not paid for. There is no dispute that undesignated payment was made, Plaintiff applied those payments and there is no dispute regarding the fuel alleged to be involved in the Houston County case as it has been paid for.

WHEREFORE premises considered Plaintiff prays the court deny the Motion for New Trial and deny the late filed Request for Abatement and for general relief.

Respectfully submitted,

LAW OFFICES OF RONNIE HORSLEY
Attorney for Plaintiff

BY: _____
RONNIE HORSLEY
P.O. Box 7017
Tyler, Texas 75711
Telephone: (903) 593-7314
Facsimile: (903) 593-3450
Email: horsleylaw@tyler.net
Texas Bar Card No. 10014000

including the invoice which Defendants claim is disputed. It is settled law in Texas that such application can be made at the discretion of the payee, and can even be applied to discharge a debt barred by limitation.

V.

*Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508-11 (Tex. 1995) cited by Defendants for authority appears to be applicable only to a medical malpractice case and does not appear to mention the "absolute authority" suggested by counsel. *Morgan v. Morgan*, 406 S.W.2d 347 (Tex.Civ.App.-San Antonio 1966, no writ) cited by Defendants relates to an agreement regarding application of payment. It also stands for the Plaintiff's proposition including the general rule at page 350 where the court states "The general rules is that where a debtor makes payment to his creditor, without specifying the manner in which such payment is to be applied, the creditor may appropriate the payment to any one of the various debts owed them by such debtor (citing case). This right of the creditor includes the right to apply an unappropriated payment to satisfaction of a barred debt".

VI.

The general rule in Texas is that the court in which suit is filed first acquires dominate jurisdiction to the exclusion of other courts. *Clawson v. Millard*, 934 S.W.2d 899 (Tex. App.-Houston [1st Dist.] 1996. The court there cites *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) there the court states "The general common law rule in Texas is that the court in which suit is first filed acquires dominate jurisdiction to the exclusion of other coordinate courts. (citing cases) "Any subsequent suit <u>involving the same parties</u>

50

THE STATE OF TEXAS          *
                           *
COUNTY OF SMITH            *

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned Affiant, who being by me first duly sworn, did say and depose that he is one of the attorneys for the Plaintiff in the above entitled and numbered cause; that he has prepared the above and foregoing Response; that he is personally congnizant of the facts set forth in said Response; and that said facts are, within his knowledge, true and correct.

RONNIE HORSLEY

SUBSCRIBED AND SWORN TO, before me, this 29th day of July, 2015.

BRANDY RENEE GLOVER
MY COMMISSION EXPIRES
August 9, 2015

Notary Public in and for the
State of T E X A S

My commission expires:

_____

51

No: 2014-362

| | | |
|---|---|---|
| VELVIN OIL COMPANY, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 4th JUDICIAL DISTRICT |
| | § | |
| A.J.P. OIL COMPANY, LLC d/b/a | § | |
| GRAPELAND FUEL & BBQ; and | § | |
| ANDREW J. PATTON | § | RUSK COUNTY, TEXAS |

FILED

2015 MAR 30 AM 11: 27

TERRI PIRTLE WILLARD
RUSK COUNTY DISTRICT CLERK

BY_____DEPUTY

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the above entitled Plaintiff and respectfully shows to the Court that after suit was filed the Defendant entered an appearance and filed an answer herein which is insufficient in law as provided in RULES 185 and 93, TEXAS RULES OF CIVIL PROCEDURE to constitute a defense to Plaintiff's cause of action; that as shown by the pleadings, together with depositions, admissions and affidavit, if any, on file herein, there is no genuine issue as to any material fact between the parties herein, and by reason thereof the Plaintiff is entitled to a Judgment as a matter of law as prayed for by Plaintiff.

Plaintiff would further show that in accordance with the attorney's fee affidavit annexed hereto, it incurred the attorney's fees as set forth in the affidavit of Plaintiff's attorney and is entitled to receive same.

WHEREFORE, premises considered, Plaintiff now moves the Court to enter a Judgment in favor of Plaintiff, and against Defendant, for Plaintiff's debt together with interest, a reasonable attorney's fees for Plaintiff's attorney, RONNIE HORSLEY, costs of Court and all other relief, both general and special to which Plaintiff may be justly entitled.

55

Respectfully submitted,

LAW OFFICES OF RONNIE HORSLEY, P.C.
Attorney for Plaintiff

By: _____
RONNIE HORSLEY
P. O. Box 7017
Tyler, Texas  75711
Telephone:  (903) 593-7314
Facsimile:  (903) 593-3450
Texas Bar Card No. 10014000

## A F F I D A V I T

THE STATE OF TEXAS     \*

                            \*

COUNTY OF SMITH     \*

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned Affiant, who, being first duly sworn, did depose and say as follows:

"I, the Affiant, am the attorney for the Plaintiff in the above numbered and captioned cause now pending in said Court. I am duly licensed to practice law in the Courts of the State of Texas and am familiar with the fees customarily charged by the practicing attorneys in this county and area, having practiced generally in many counties across the State of Texas since 1970. The Affiant was retained by the Plaintiff on a contingent fee based upon the amount of the debt to be collected. In accordance with the Affiant's experience in handling numerous cases and based upon the usual contingent fee arrangements of attorneys similarly engaged, $10,892.24 is a reasonable and customary fee for investigating the above captioned cause, attempting to secure collection of the indebtedness by amicable means, preparing and filing the Petition in said cause, filing a Motion for Summary Judgment therein, appearing in Court to argue same, preparing the Judgment in this cause, and filing same. Demand for payment of Plaintiff's claim was made upon the Defendant more than thirty (30) days prior to the date of this affidavit. The affidavit is made upon personal knowledge of the Affiant, and all facts stated therein are true and correct".

RONNIE HORSLEY

SUBSCRIBED AND SWORN TO, before me, on this 25th day of March, 2015.

Notary Public in and for the
State of T E X A S

BRANDY RENEE GLOVER
MY COMMISSION EXPIRES
August 9, 2015

57

THE STATE OF TEXAS   *

                       *

COUNTY OF SMITH     *

       BEFORE ME, the undersigned authority, on this day personally appeared the undersigned Affiant, who being by me first duly sworn, did say and depose that he is the attorney for the Plaintiff in the above entitled and numbered cause; that he has prepared the above and foregoing motion; that he is personally cognizant of the facts set forth in said motion; and that said facts are, within his knowledge, true and correct.

                                               RONNIE HORSLEY

       SUBSCRIBED AND SWORN TO, before me, this 25th day of March, 2015.

BRANDY RENEE GLOVER
MY COMMISSION EXPIRES
August 9, 2015

Notary Public in and for the
State of T E X A S

### CERTIFICATE OF SERVICE

       I, the undersigned attorney, certify that a true and complete copy of the foregoing Motion for Summary Judgment and following Order, was duly served upon the Defendant's attorney of record, by fax on this the 25th day of March, 2015 at his last known address, to-wit:

William R. Pemberton               Fax: 936-544-5023
Attorney at Law
P.O. Box 1112
Crockett, Texas 75835

                                             RONNIE HORSLEY

IN THE DISTRICT COURT OF RUSK COUNTY, TEXAS

FILED

2015 APR -6 AM 11: 10

TERRI ... LC BALLARD
RUSK COUNTY DISTRICT CLERK

BY_____DEPUTY

4TH JUDICIAL DISTRICT

VELVIN OIL COMPANY, INC. *
 *
VS. * NO. 2014-362
 *
A.J.P. OIL COMPANY, LLC *
d/b/a GRAPELAND FUEL & BBQ; *
AND ANDREW J. PATTON *

DEFENDANTS' FIRST AMENDED ORIGINAL ANSWER

TO THE HONORABLE COURT:

A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, and Andrew J. Patton, also known and being the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack Patton and Jack Patton, III, hereinafter sometimes referred to as "Defendants," SUBJECT TO DEFENDANTS' MOTION TO TRANSFER VENUE, file this, their First Amended Original Answer to Plaintiff's Original Petition herein, and, for such Answer, would respectfully show unto the Court the following:

1. Defendants have paid in full the account the subject of Plaintiff's suit, more specifically with check number 2902, dated April 29, 2014, in the amount of Fifty Four Thousand Four Hundred Eighty and 52/100 Dollars ($54,480.52).

2. Defendants specially deny that the finance charges listed in Plaintiff's sworn account are due and owing. More specifically, the Charge Account Application credit terms and conditions on which Plaintiff's claim is based state that finance charges are due if the balance is not paid by the end of the month following the

59

statement date. Defendant paid the charges made the basis of this suit prior to the end of the month following the statement dates.

3. Defendants deny, each and every, all and singular, the allegations contained in Plaintiff's Original Petition and demand strict proof thereof; and, of this, Defendants put themselves upon the country.

WHEREFORE, premises considered, Defendants pray that Plaintiff take nothing by its suit, that Defendants go hence with their costs without day, and for such other and further relief, both general and special, at law and in equity, to which Defendants may be justly entitled.

Respectfully submitted,

BY: _____
WILLIAM R. PEMBERTON
WILLIAM R. PEMBERTON, P.C.
P. O. BOX 1112
CROCKETT, TEXAS 75835
936-544-4111
936-544-5023 (FAX)
TEXAS BAR I.D. NO. 15735500
bill@pembertontriallaw.net

JACLYN D. PATTON
3730 Kirby Drive, Suite 1200
Houston, Texas 77098

ATTORNEYS FOR DEFENDANTS

<u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above and foregoing Defendants' Original Answer has been served upon:

> Mr. Ronnie Horsley
> Attorney at Law
> P. O. Box 7017
> Tyler, Texas 75711

by depositing same, enclosed in a post paid, properly addressed wrapper, in a Post Office or official depository, under the care and custody of the United States Postal Service, Certified Mail, Return Receipt Requested, this the 1st day of April, 2015.

WILLIAM R. PEMBERTON

61

AFFIDAVIT

THE STATE OF TEXAS    *

COUNTY OF HOUSTON    *

BEFORE ME, the undersigned notary public, on this day personally appeared Andrew J. Patton, individually and as agent for A.J.P. Oil Company, LLC, who, after being duly sworn, stated that he is a Defendant and agent for the other Defendant in this Cause, that he is over the age of 18 years, of sound mind, and is competent to make this affidavit, and has personal knowledge of the facts set forth in this affidavit.

"Every statement contained in paragraphs 1 and 2 of Defendants' First Amended Original Answer is true and correct."

_____
ANDREW J. PATTON, INDIVIDUALLY AND
AS AGENT FOR A.J.P. OIL COMPANY, LLC

SUBSCRIBED AND SWORN TO BEFORE ME this 1st day of April, 2015.

BELINDA J. BLACKSTOCK
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 02-02-2019

_____
NOTARY PUBLIC, STATE OF TEXAS

62

IN THE DISTRICT COURT OF RUSK COUNTY, TEXAS

FILED

2015 APR -6 AM 11: 10

TERRI PATTERSON WILLARD
RUSK COUNTY DISTRICT CLERK

BY_____DEPUTY

4TH JUDICIAL DISTRICT

VELVIN OIL COMPANY, INC.        *
                                *
VS.                             *        NO. 2014-362
                                *
A.J.P. OIL COMPANY, LLC         *
d/b/a GRAPELAND FUEL & BBQ;     *
AND ANDREW J. PATTON            *

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, and Andrew J. Patton, also known as and being the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack Patton and Jack Patton, III, Defendants, file this Response to the Motion for Summary Judgment of Plaintiff, Velvin Oil Company, Inc., and respectfully show unto the Court the following:

1. The evidence is sufficient to raise a genuine issue of material fact regarding Defendant's defense of payment. As shown by the attached affidavit of Andrew J. Patton, which is attached hereto, marked Exhibit "A", and incorporated by reference, the invoices the subject of Plaintiff's cause of action were paid by Defendant's check number 2902, dated April 29, 2014, in the amount of Fifty Four Thousand Four Hundred Eighty and 52/100 Dollars ($54,480.52).

2. Further, as shown by the attached affidavit of Andrew J. Patton, the evidence is sufficient to raise a genuine issue of

63

material fact as to whether the finance charges made the basis of Plaintiff's sworn account are due and owing. The finance charges made the basis of Plaintiff's Original Petition are not due, because the Charge Account Application credit terms and conditions made the basis of Plaintiff's claim provide that finance charges are due if the balance is not paid by the end of the month following the statement date. The affidavit of Andrew J. Patton shows that payment of the invoices the subject of Plaintiff's Original Petition was made prior to the end of the month following the statement dates.

3. Defendants object to the summary judgment affidavit of Ronnie Horsley in support of Plaintiff's claim for attorney's fees, on the ground that it is conclusory. More specifically, the summary judgment affidavit does not fully discuss the factors required by Rule 1.04 of the Texas Disciplinary Rule of Professional Conduct, <u>Arthur Andersen & Co. v. Perry Equipment Corp.</u>, 945 S.W.2d 812 (Tex. 1997):

    (1)    The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

    (2)    The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

    (3)    The fee customarily charged in the locality for similar services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation and ability of the lawyer performing the services; and

(8) Whether the fee is fixed or contingent on results obtained or certainty of collection before the legal services have been rendered.

Factors (1), (2), (5), (6) and the reputation and ability of the lawyer performing the services are not mentioned in the summary judgment affidavit. Evidence of Plaintiff's contingent fee agreement, without evidence of the factors identified in Disciplinary Rule 1.04, gives the court no meaningful way to determine if the fees were in fact reasonable and necessary and will not support a judgment of their reasonableness and necessity as a matter of law, Arthur Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812, 818 (Tex. 1997)

3. The evidence is sufficient to raise a general issue of material fact regarding the unreasonableness of the attorney's fees sought by Plaintiff. To demonstrate there is evidence raising an issue of fact on the element of unreasonableness of the amount of attorney's fees sought by Plaintiff, the affidavit of William R. Pemberton is attached as Exhibit "B".

WHEREFORE, Defendants request this Court deny the Motion for Summary Judgment.

Respectfully submitted,

BY: WILLIAM R. PEMBERTON
WILLIAM R. PEMBERTON, P.C.
P. O. BOX 1112
CROCKETT, TEXAS 75835
936-544-4111
936-544-5023 (FAX)
TEXAS BAR I.D. NO. 15735500
bill@pembertontriallaw.net

JACLYN D. PATTON
3730 Kirby Drive, Suite 1200
Houston, Texas 77098

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing Defendants' Response to Plaintiff's Motion for Summary Judgment has been served upon:

Mr. Ronnie Horsley
Attorney at Law
P. O. Box 7017
Tyler, Texas 75711

by depositing same, enclosed in a post paid, properly addressed wrapper, in a Post Office or official depository, under the care and custody of the United States Postal Service, Certified Mail, Return Receipt Requested, this the 1st day of April, 2015.

WILLIAM R. PEMBERTON

66

EXHIBIT "A"

AFFIDAVIT

THE STATE OF TEXAS    *

COUNTY OF HOUSTON    *

BEFORE ME, the undersigned notary public, on this day personally appeared Andrew J. Patton, individually and as agent for A.J.P. Oil Company, LLC, who, after being duly sworn, stated that he is a Defendant and the agent for the other Defendant in this Cause, that he is over the age of 18 years, of sound mind, and is competent to make this affidavit, and that every statement contained in this Affidavit is true and correct to his personal knowledge.

"The invoices the subject of Plaintiff's Original Petition were paid by Defendant's check number 2902, dated April 29, 2014, in the amount of Fifty Four Thousand Four Hundred Eighty and 52/100 Dollars ($54,480.52). Attached hereto as Exhibit "1" is a true and correct copy of check number 2902, dated April 29, 2014, in the amount of Fifty Four Thousand Four Hundred Eighty and 52/100 Dollars ($54,480.52).

"Further, the finance charges made the basis of Plaintiff's Original Petition are not due, because the Charge Account Application credit terms and conditions made the basis of Plaintiff's claim provide that finance charges are due if the balance is not paid by the end of the month following the statement date. Attached hereto as Exhibit "2" is a true and correct copy of

67

the Charge Account Application. The invoices the subject of Plaintiff's Original Petition were paid prior to the end of the month following the statement date."



ANDREW J. PATTON, INDIVIDUALLY AND
AS AGENT FOR A.J.P. OIL COMPANY, LLC

SUBSCRIBED AND SWORN TO BEFORE ME this 1st day of April, 2015.

BELINDA J. BLACKSTOCK
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 02-02-2019

NOTARY PUBLIC, STATE OF TEXAS

68

# Grapeland State Bank
## Print Date and Time: 12/22/2014 -- 01:53:52PM



**2902**

AJP OIL CO., LLC
1277 EAST LOOP 304
CROCKETT, TX 75835
DBA GRAPELAND FUEL & BBQ

66-1392-1131

Date 4/29/14

Pay to the Order of _Velvin Oil Company, Inc._    $54,480.52

_Fifty-four thousand four hundred eighty +52/100_ Dollars

Grapeland State Bank
P.O. BOX 117
GRAPELAND, TEXAS 75844-0117

for DD1998

⑆002902⑆ ⑈113113923⑇ ⑆0022247⑈



Citizens National Bank
>111903151<
5/27/2014

130010000051380

Deposited to the account
of the within named payee.
CITIZENS NATIONAL BANK 111903151
1054996



**EXHIBIT**

69

*12. Sent out approval letter
called + left journal msg

# VELVIN OIL CO.

403 Webster Drive
Henderson, Texas 75652
903-657-2108/Fax 903-657-8794

## Charge Account Application

| Approved | Account # | Date: |
|---|---|---|
| Declined | 1990 | 6.12.12 |

Applicant: please read the following before completing this form. Applicant represents that the information given in this Application is complete and accurate and authorizes Velvin Oil Company or its authorized credit agent to check with credit reporting agencies, credit references and other sources, including banks. Seller deems appropriate in considering this application and subsequently for any legal purposes. READ THE ATTACHED AGREEMENT AND SIGN THE "SIGNATURE" SECTION BEFORE SUBMITTING THIS APPLICATION.

| Company Name (Full Legal Name) | DBA (Doing Business As) | | |
|---|---|---|---|
| ASP Oil Company LLC | Grapeland Fuel & BBQ | | |

| Billing Address | City | State | Zip |
|---|---|---|---|
| 1277 East Loop 304 | Crockett | TX | 75835 |

| Physical Address (or Shipping Address) | City | State | Zip |
|---|---|---|---|
| 405 S Market | Grapeland | TX | 75844 |

| Business Type | # of Locations | Year Established | # of Employees |
|---|---|---|---|
| Retail Sales | 2 | 2004 | 11 |

Business Structure ___ Corporation (or) ✓ LLC ___ LP Year Incorporated___ State of Incorporation TX ___ Proprietorship ___ Partnership ___ Government Agency

Annual Sales $ 3,200,000.00

If a Corporation, please list three major stock-Holders and officers of the Corporation.
If a Partnership or Proprietorship, please list the name, address and Social Security Number of all owners.

| Name/Title | Social Security Number |
|---|---|
| | |
| | |
| | |

| Inside City Limits? | County (For Shipping Address) | Have you ever filed bankruptcy? Yes___ (complete below) No ✓ |
|---|---|---|
| Yes | Houston | What Year? ___ What Type? |

| Avg. Monthly Purchases? | Federal ID# | Purchase Order Required? | Dun & Bradstreet # | Rating (if known) |
|---|---|---|---|---|
| $255,000.00 | 26-3399912 | No | | |

Are your purchases Tax Exempt?    Tax Exempt#
Yes ✓ No ___    3-20379-2167-6

TAX WILL CONTINUE TO BE CHARGED ON ALL INVOICES UNTIL THE APPROPRIATE "TAX EXEMPT CERTIFICATE" IS RECEIVED. CUSTOMER WILL BE RESPONSIBLE FOR ALL TAX UNTIL CERTIFICATE IS RECEIVED.

| Billing Contact Name | Phone # | Fax # | Email Address |
|---|---|---|---|
| Jack Patton | (936)852-3050 | (936)687-2921 | andrewjackp5@hotmail.com |
| Purchasing Manager | Phone # | Fax # | Email Address |
| Jack Patton | (936)687-2921 | " | " |

Indicate all authorized purchasers(s) (other than fuel cards) (for oils, greases, etc.)

1. _____ 4. _____
2. _____ 5. _____
3. _____ 6. _____

Bank Reference (Required)

Name Of Bank: Grapeland State Bank    Address: PO Box 117, Grapeland, TX 75844
Phone #: 936-687-2519 or 4813    Contact: Norm Arministen
    (936)635-1234

Trade References (DO NOT LIST financial institutions or credit cards)
1. Olan Walker (BEK)   City/St: Fort Worth, Texas 76101   Phone#: 817-759-6000
2. Frank Pride (Deans Meats)   City/St: Huntington Texas 75949   Phone#: 936-876-5722
3. Tyler Beverages   City/St: Tyler, TX 75712   Phone#: (903)597-3363



**EXHIBIT**
2
70

# Velvin Oil Company Credit Terms and Conditions

Our terms are DUE UPON RECEIPT OF STATEMENT. On the last business day of each month a statement will be prepared and mailed to you listing all unpaid invoices as of the close of business for that month. THE ENTIRE BALANCE SHOWN ON THE STATEMENT, IS DUE UPON RECEIPT and accounts will be CUT OFF IF payment is not received by the TENTH. Any part of a statement balance not paid by the end of the month following the statement date will be considered PAST DUE and will be assessed a 1.5 % late charge that will be added to the unpaid balance.

Your account will be assigned an OPEN CREDIT LIMIT, subject to review at any time and Velvin Oil Company reserves the right to discontinue any CHARGE privileges should your account become past due; if there is an ownership or name change; if there is a bankruptcy; or at any time Velvin Oil Co., for good cause, deems itself insecure.

The applicant hereby authorizes a full and complete credit investigation by Velvin Oil Co. and understands that Velvin Oil Co., will not process a "CHARGE" order until a signed and completed credit application has been submitted and approved. All information will be VERIFIED. The applicant further authorizes the bank listed on the application to release information to Velvin Oil Co., as necessary for Velvin Oil Co., to approve credit and subsequently for any legal purpose. Should it become necessary to place the account in the hands of an attorney or collection agency, I/we agree to pay an additional 25% of the amount due and owing. If Velvin Oil Co., finds it necessary to refer this account to an attorney for initiation of a LAWSUIT, a fee of 33 1/3% of the outstanding balance plus any and all court costs shall be added to the account balance.

This CONFIDENTIAL CREDIT APPLICATION contains all terms negotiated between the parties and may be modified only upon written agreement between Velvin Oil Co., and the Applicant.

## I/WE HAVE READ THE TERMS OF THIS AGREEMENT AND AGREE
## TO BE BOUND BY THEM IN ALL RESPECTS.

This ___5th___ day of ___June___, 20 __12__

Signature: _____
(OWNER OR OFFICER SIGNATURE REQUIRED)

Name: ___Jack Patton___          Title: ___Owner___

## PERSONAL GUARANTY

### ALL BUSINESSES ARE REQUIRED TO SIGN THIS GUARANTY.

UNDERSIGNED GUARANTY MUST BE ONE OF THE FOLLOWING (Circle One) Owner/Sole Proprietor / General Partner / Corporate Officer

PERSONAL GUARANTY:    In consideration of Seller, financing purchases by Applicant, the undersigned Guarantor hereby agrees unconditionally, absolutely and irrevocably, to personally guarantee payment of all amounts, hereafter due under, and the performance under the terms of the attached Commercial Charge Account Agreement ("Agreement"), and further agrees to pay the total balance due on the Account opened pursuant to the Agreement upon demand, without requiring Seller to make demand and/or proceed first to enforce payment against the Applicant also liable on this account, in the event of any default under the Agreement that governs the Account. The undersigned hereby waives any notices regarding the Agreement or this Guaranty, and agrees that this Guaranty shall be applicable until the Agreement has terminated and all amounts due there under shall be paid in full. The undersigned agrees that in the event the Account is not paid as agreed, Seller may report the undersigned's liability for and the status of the Account to the credit bureaus and others who may lawfully receive such information.

PERSONAL GUARANTOR MUST BE OWNER/SOLE PROPRIETOR, GENERAL PARTNER, OR CORPORATE OFFICER.

| Full name | Home Address | City | St | Zip |
|---|---|---|---|---|
| Jack Patton | 714 E. Houston | Crockett | TX | 75835 |
| Signature | Date | Title | Social Security # (REQUIRED) | Home Phone # |
| | 6/5/12 | Owner | ~~~~~~~~~~~ | (936)545-8678 |

FOR OFFICE USE ONLY

Number of Fueling Cards Requested _____



EXHIBIT
2

EXHIBIT "B"

AFFIDAVIT

THE STATE OF TEXAS   *

COUNTY OF HOUSTON   *

BEFORE ME, the undersigned notary public, on this day personally appeared William R. Pemberton, who, after being duly sworn, stated that he is the attorney for Plaintiffs in this Cause, that he is over the age of 18 years, of sound mind, and is competent to make this affidavit, and that every statement contained in this Affidavit is true and correct to his personal knowledge.

1. I am an attorney licensed to practice by the Supreme Court of Texas and in good standing. I am qualified to make this affidavit, as shown by my Curriculum Vitae attached hereto as Exhibit "1". The information on Exhibit "1" is true and correct.

2. The summary judgment affidavit of Ronnie Horsley in support of Plaintiff's claim for attorney's fees does not set forth a reasonable amount of attorney's fees, because it does not contain all of the elements required by Rule 1.04 of the Texas Disciplinary Rule of Professional Conduct, <u>Arthur Andersen & Co. v. Perry Equipment Corp.</u>, 945 S.W.2d 812 (Tex. 1997). The affidavit does not state:

> (1) The time and labor required, the novelty and difficulty of the questions involved, or the skill requisite to perform the legal service properly;

72

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; ...

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The ..., reputation and ability of the lawyer performing the services."

"In the absence of evidence of the factors above listed, the Court has no meaningful way to determine if the fees were in fact reasonable and necessary."

_____
WILLIAM R. PEMBERTON

SUBSCRIBED AND SWORN TO BEFORE ME this 1st day of April, 2015.

SANDRA L. HAYNES
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 11-08-2018

NOTARY PUBLIC, STATE OF TEXAS

73

# WILLIAM R. PEMBERTON
*Attorney at Law*

**Home**
*1000 Mimosa*
*Crockett, Texas 75835*
*936-544-4971*

**Office**
*306 N. Seventh Street*
*Crockett, Texas 75835*
*936-544-4111*

## EDUCATION

- **University of Arkansas, Fayetteville, Arkansas**
  *BSBA with honors, 1970*
- **University of Texas, Austin, Texas**
  *JD, 1972*

## EXPERIENCE

- **Morrill and Patton,** *305 N. St. Mary's Street, P. O. Box 610, Beeville, Texas 78104-0819; September 1972 through June 1978*
- **County Attorney, Bee County, Texas,** *Bee County Courthouse, 105 W. Corpus Christi Street, Beeville, Texas 78102; January 1974 through June 1978*
- **Sallas, Meriwether & Pemberton,** *604 E. Goliad, P. O. Box 1087, Crockett, Texas 75835; July 1978 through January 1985*
- **Pemberton & Garner,** *306 N. Seventh Street, P. O. Box 1112, Crockett, Texas 75835; February 1985 through May 1989*
- **William R. Pemberton, P.C.,** *306 N. Seventh Street, P. O. Box 1112, Crockett, Texas 75835; June 1989 to present*

## COURTS ADMITTED TO PRACTICE BEFORE

- **SUPREME COURT OF TEXAS**
  *Admitted September 1972*
- **U.S. COURT OF APPEALS, FIFTH CIRCUIT**
  *Admitted December 17, 1973*
- **U.S. SUPREME COURT**
  *Admitted December 15, 1975*
- **U.S. DISTRICT COURT, EASTERN DISTRICT OF TEXAS**
  *Admitted August 12, 1983*

## OTHER EXPERIENCE

- **STATE BAR OF TEXAS DISTRICT 2-C GRIEVANCE COMMITTEE**
  *Member August 1985 through 1990*
- **BOARD CERTIFIED, TEXAS BOARD OF LEGAL SPECIALIZATION**
  *Civil Trial Law since December 1991*



EXHIBIT

74

- **COLLEGE OF THE STATE BAR OF TEXAS**
  *Admitted November 1992*
- **BOARD CERTIFIED CIVIL TRIAL ADVOCATE - NATIONAL BOARD OF TRIAL ADVOCACY**
  *1994 to date*
- **BOARD CERTIFIED CIVIL PRETRIAL ADVOCATE - NATIONAL BOARD OF CIVIL PRETRIAL ADVOCACY**
  *2012 to date*
- **CITY ATTORNEY, CITY OF CROCKETT, TEXAS**
  *October 1988 to Present*
- **PRESIDENT, HOUSTON COUNTY BAR ASSOCIATION**
  *May 1992 to Present*


EXHIBIT

15

No: 2014-362

| | | |
|---|---|---|
| VELVIN OIL COMPANY, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 4th JUDICIAL DISTRICT |
| | § | |
| A.J.P. OIL COMPANY, LLC d/b/a | § | |
| GRAPELAND FUEL & BBQ; and | § | |
| ANDREW J. PATTON | § | RUSK COUNTY, TEXAS |

## JUDGMENT

BE IT REMEMBERED, that on this day, came on to be heard Plaintiff's Motion for Summary Judgment in the above captioned and numbered cause; and came on to be heard Plaintiff, by counsel, and the Court finding that proper notice of Plaintiff's Motion for Summary Judgment and this hearing, for such time and in such manner, as required by law has been given to the Defendants, whereupon, the Court proceeded to consider Plaintiff's Motion, together with the affidavit in support thereof, and the pleadings on file in this cause; and having heard the arguments of counsel, and being of the opinion that Plaintiff's cause of action is founded upon a sworn account, and that no material issue of fact exists in this cause; and that, therefore, Plaintiff is entitled to a Judgment from and against the said Defendants for Plaintiff's debt of $32,676.71, and legal interest upon such indebtedness at the rate of eighteen percent (18%) per annum, from the 17th day of November, 2014, until paid, for reasonable statutory attorney's fees which the Court finds that the Plaintiff has agreed to pay the Plaintiff's attorney of record and for all costs of court in this behalf expended and interest on such fees and costs at the rate of five percent (5%) per annum from the date of Judgment until paid;

It is therefore ORDERED, ADJUDGED and DECREED, by the Court, that the said Plaintiff, Velvin Oil Company, Inc., do have and recover Judgment from and against the said Defendants, A.J.P Oil Company, LLC, a limited liability company, doing business as Grapeland Fuel & BBQ; Andrew J. Patton, also known as and being the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack Patton and Jack Patton, III, jointly, severally, individually, in the sum and amount of THIRTY-TWO THOUSAND SIX HUNDRED SEVENTY-SIX and 71/100 DOLLARS ($32,676.71), with interest thereon from the 17th day of November, 2014, at the rate of eighteen percent (18%) per annum until paid, plus attorney's fees for Plaintiff's attorney, RONNIE HORSLEY, in the amount of TEN THOUSAND EIGHT HUNDRED NINETY-TWO and 24_/100 DOLLARS ($10,892.24), costs of court in this behalf expended and interest on such fees and costs at the rate of five percent (5%) per annum from the date thereof until paid;

It is further ORDERED by this Court, that Plaintiff shall have all such writs and orders as shall become in Plaintiff's behalf, necessary to enforce the execution hereof and

that all other relief requested and not expressly granted is denied.

SIGNED this _4th_ day of _June_, 2015.

_____
JUDGE PRESIDING

APPROVED AS TO FORM & SUBSTANCE:

LAW OFFICES OF RONNIE HORSLEY, P.C.
Attorney for Plaintiff

BY: _____
RONNIE HORSLEY
P.O. Box 7017
Tyler, Texas 75711
Telephone: (903) 593-7314
Facsimile: (903) 593-3450
Texas Bar Card No. 10014000

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing Summary Judgment, was duly served upon the Defendant's attorney of record by fax, on the 1st day of June, 2015, at his last known address, to-wit:

William R. Pemberton                    Fax: 936-544-5023
Attorney at Law
P.O. Box 1112
Crockett, Texas 75835

_____
RONNIE HORSLEY

Vol. 2867 Page 174

No. 2014-362

| VELVIN OIL COMPANY, INC, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| Plaintiff | § | |
| | § | |
| v. | § | RUSK COUNTY, TEXAS |
| | § | |
| A.J.P. OIL COMPANY, LLC | § | |
| d/b/a/ GRAPELAND FUEL & BBQ | § | |
| and ANDREW J. PATTON, | § | 4th JUDICIAL DISTRICT |
| Defendants | § | |

## DEFENDANTS' MOTION FOR NEW TRIAL

Defendants, A.J.P. OIL COMPANY, LLC, d/b/a/ GRAPELAND FUEL & BBQ, and

ANDREW J. PATTON, ask the Court to grant a new trial in the interest of justice and fairness.

In support, Defendants would show as follows:

### FACTS

1.      On November 19, 2014 Plaintiff, Velvin Oil Company, Inc., sued Defendants,

A.J.P. Oil Company, LLC, d/b/a/ Grapeland Fuel and BBQ, and Andrew J. Patton, in this Court

for the sum of $32,676.71. Plaintiff alleged that this amount is owed by Defendants for fuel

delivered to Grapeland Fuel & BBQ by Plaintiff, plus interest thereon.

2.      On November 7, 2014, prior to any filings in this Court, Plaintiff was properly

sued in a lawsuit styled *A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ vs. Velvin Oil

Company, Inc.*, in the 3rd District Court for Houston County, Cause No. 14-0217 (the "Original

Lawsuit") for delivery of tainted fuel to Defendants—the same fuel complained of by Plaintiff in

the suit at hand. Plaintiff timely responded to the first-filed Original Lawsuit without complaint

regarding jurisdiction and continues to actively participate in said suit, having to this date

exchanged thousands of pages of discovery with Defendants.

78

3.  Defendants timely brought the first-filed Original Lawsuit to the attention of this Court in their initial pleading and Motion to Transfer Venue, attaching as evidence a file-stamped copy of the Original Petition in the Original Lawsuit and an affidavit of Defendant Andrew J. Patton stating that litigation over the same facts was already pending. In their Response to Defendants' Motion to Transfer Venue, Plaintiff did not refute its active participation, without objection, in the Original Lawsuit, and did not rebut Defendants' specific denials.

4.  On March 3, 2015, this Court denied Defendants' Motion to Transfer Venue.

5.  Shortly thereafter, Plaintiff filed its Motion for Summary Judgment, alleging that there is no genuine issue as to any material facts between the parties. Defendants filed a timely Response to Plaintiff's Motion for Summary Judgment, pointing out the multiple deficiencies in Plaintiff's assertions and the genuine issue of material facts raised by the pleadings.

6.  On June 4, 2015, this Court granted Plaintiff's Motion for Summary Judgment.

## ARGUMENTS & AUTHORITIES

The Court must grant a new trial because: (1) litigation involving the same parties and subject-matter was pending prior to this suit, requiring that this suit be abated; (2) there are disputed facts regarding the unreasonableness and supporting proof of attorney's fees sought by Plaintiff, which require submission to a jury; and (3) there are disputed facts regarding Defendants' defense of payment and the validity of finance charges, which require submission to a jury.

2

79

1. **New trial must be granted because a suit involving the same parties and subject matter was pending at the filing of this suit, the existence of the prior suit was timely brought to the Court's attention, and abatement of this suit is proper.**

When two pending cases are between identically the same parties, involve the same subject-matter, and relief in one suit would be res adjudicata as to the relief prayed for in the other suit, it is well settled that the first-filed suit has dominant jurisdiction. *See, e.g. Cleveland v. Ward*, 285 S.W. 1063 (Tex. 1926) (holding that when original suit regarding cancellation of loan would be res adjudicata against second suit regarding recovery on that loan, the second suit must be abated); *Wyatt v. Shaw Plumbing*, 760 S.W.2d 245, 247 (Tex. 1988). Once dominant jurisdiction has attached in a first-filed suit, the rule is elementary that it cannot be taken away by subsequent proceedings in another court. *Ex Parte Lillard*, 314 S.W.2d 800, 805 (Tex. 1958). The court where the second suit was filed must grant a motion to abate. *Wyatt* 760 S.W.2d at 247; *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974); *Sweezy Construction, Inc. v. Murray*, 915 S.W.2d 527, 531 (Tex. App.—Corpus Christi 1995). Abatement does not prejudice the plaintiff of the second-filed suit, as any claims or defenses raised by the plaintiff may be asserted in the original suit if the plaintiff so chooses. *Cleveland*, 285 S.W. at 1070.

The pendency of a prior suit between the same parties involving the same subject-matter must be seasonably raised by a plea in abatement. *Id.* Courts have found that a plea in abatement is seasonably raised, even after the rendering of judgment, when the pendency of a prior suit is shown in the pleadings. *See, e.g. Ex Parte Lillard*, 314 S.W.2d 800, 805 (Tex. 1958); *Beckman v. Beckman*, 716 S.W.2d 83 (Tex.App.—Dallas 1986). Once the necessary facts showing the pendency of a prior suit are plead and admitted, or shown by the undisputed record, the subsequent suit must be abated. *Lillard*, 314 S.W.2d at 806. This rule holds true even when the

3

party who filed the original suit fails to subsequently participate in that suit. *Id.* However, when parties do not inform the court of the pendency of a prior suit until after judgment, courts have discretion to determine if a plea in abatement is seasonable. *Falderbaum v. Lowe*, 964 S.W.2d 744 (Tex.App.—Austin 1998).

The Court must grant a new trial so that this lawsuit may be properly abated. This case must be abated because a suit involving the same parties and arising from the same subject-matter was first filed in the Original Lawsuit, currently pending in the 3rd District Court for Houston County, and that court has dominant jurisdiction. Further, relief in the Original Lawsuit would be res adjudicata as to the relief prayed for by Plaintiff in the suit at hand. Here, Plaintiff has sued Defendants for the cost of fuel delivered by Plaintiff to Defendants. Plaintiff was advised by Defendants verbally, by written communications and in the Original Lawsuit that the fuel delivered by Plaintiff was tainted, harmful and worthless. *See* Exhibit A (Original Pet. in Original Lawsuit and communications between Plaintiff and Defendants). The Original Lawsuit explicitly lists and includes the cost of the fuel complained of by Plaintiff in the present suit as economic damages. *Id.* Rationally, this suit must be abated pending determination of whether the disputed fuel was, in fact, tainted and worthless. If the fuel is determined to be tainted and worthless, the debt complained of in the present suit is not owed. If the fuel is determined to not be tainted and worthless, the debt complained of is owed and a full adjudication of this suit is unnecessary.

Plaintiff may contend that new trial is not appropriate because a plea in abatement was not seasonably raised. However, case law makes clear that a plea in abatement raised following judgment is seasonable when the pendency of a prior suit has been shown in the pleadings. Defendants brought the Original Lawsuit to the attention of the Court multiple times in its initial

4

pleadings. *See* Exhibit A (Original Petition in Original Lawsuit); Exhibit B (Defendants' Answer, Motion to Transfer Venue and Affidavit of Andrew J. Patton). At no time has Plaintiff disputed the pendency of the Original Lawsuit or that the fuel made the basis of this suit is also the basis of the Original Lawsuit. Rather, Plaintiff simply "declined to do battle in the forum of the original suit" and has multipled the controversies at hand, rather than settling them in the interest of orderly justice. *See* 2 R. McDonald, Texas Civil Practice in District and County Courts § 7.10, at 165 (rev.1982); *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988).

Plaintiff has filed multiple motions, attending hearings and produced and requested thousands of pages of discovery in the Original Lawsuit—at no point making any objection to the dominant jurisdiction of that suit. Further, Plaintiff has recently filed leave to designate a responsible third party in the Original Lawsuit, clearly showing that Plaintiff considers it to be the dominant and determinative suit and would not be prejudiced by abatement of the suit at hand. Accordingly, because a suit involving the same parties and subject-matter was pending prior to the filing of this suit and that the prior suit has been shown in the pleadings, abatement of this suit is proper. The Court must grant a new trial so that this suit may be abated as required by law.

2. **New trial must be granted because there is a disputed fact issue regarding the unreasonableness and supporting proof of attorney's fees, which must be submitted to a jury.**

The Court must grant a new trial because it erred by granting Plaintiff's Motion for Summary Judgment. There is a disputed fact issue regarding the unreasonableness of attorney's

5

fees sought by Plaintiff, which must be submitted to the jury. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510-11 (Tex. 1995). In Plaintiff's Motion for Summary Judgment and affidavit attached thereto, counsel for Plaintiff requests attorney's fees unsupported by the proof required in the Texas Disciplinary Rules of Professional Conduct. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (quoting the eight-factor test for determining attorney's fees); Exhibit C, Plaintiff's Motion for Summary Judgment. That proof should include the basic facts supporting the fees, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked. *El Apple v Olivas*, 370 S.W.3d 757 (Tex. 2012).

The party applying for an award of attorney's fees bears the burden of documenting the hours expended on the litigation and the value of those hours. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). When attorney's fees are claimed under fee shifting statutes, courts should be skeptical of broad, unspecific claims regarding fees, as "hours not properly billed to one's client are also not properly billed to one's adversary under a fee-shifting statute." *City of Lardeo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013). Rather, the attorney should provide contemporaneous billing records or other documentation recorded reasonably close to the time when the work is performed. *Id.* When a summary judgment record contains evidence contesting the reasonableness of attorney's fees, summary judgment is not appropriate. *See Guity v. C.C.I. Enter. Co.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Rosenblatt v. Freedom Life*, 240 S.W.3d 315, at 321(Tex. App. 2007); *McGlown v. Ashford Park* (Tex.App.- Houston [1st Dist.] Jun. 11, 2009) (holding that attorney fee award in summary judgment proceeding not proper if amount disputed).

6

The affidavit of Plaintiff's counsel offered as proof of attorney's fees clearly does not meet the requirements of the Texas Disciplinary Rules of Professional Conduct and established case law. Rather, Plaintiff's proof fits soundly into the category of non-contemporaneous, "broad, unspecified claims" courts are warned to be skeptical of. Further, the affidavit of Plaintiff's counsel includes false claims of time spent on matters such as appearing in court in support of Plaintiff's Motion for Summary Judgment—a hearing that did not occur. Accordingly, the Court must grant a new trial because there is a disputed fact regarding the unreasonableness and supporting proof of attorney's fees sought by Plaintiff, which must be submitted to the jury. When the record contains evidence contesting attorney's fees, summary judgment is not appropriate.

**3.     New trial must be granted because there are disputed fact issues regarding Defendants' defense of payment and the validity of finance charges included in Plaintiff's alleged damages, which must be submitted to a jury.**

The Court must grant a new trial because it erred by granting Plaintiff's Motion for Summary Judgment. There are disputed fact issues about whether payment was made on the invoices sued for, and whether finance charges made the basis of Plaintiff's sworn account are due and owing, which must be submitted to the jury. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510-11 (Tex. 1995). Defendants had the absolute right to direct appropriation of payments made to Plaintiff, and exercised that right by including language on checks paid to Plaintiff specifying to which debt the payment was to be applied.

The general rule is that where a debtor makes payment to his creditor without directing the manner of application of the payment, the creditor is privileged to apply the payment to any

7

one of the various debts owed him by the debtor, *Morgan v. Morgan*, 406 S.W.2d 347 (Tex.Civ.App.—San Antonio 1966, no writ), and the creditor is not bound by the debtor's uncommunicated intentions as to the application of the payment. *Carey v. Ellis*, 46 S.W.2d 1012 (Tex.Civ . App.—San Antonio 1932, no writ). However, when the debtor has directed the application of payment by written or verbal communication, the "true rule seems to be, first, the debtor has the absolute right to direct appropriation at the time of payment." *Phillips v. Herndon*, 78 Tex. 378, 14 S. W. 857, 859. "[If] the debtor pays without exercising his right of appropriation, the creditor may then appropriate. It is only when neither party has exercised the right of appropriation that the courts may assume to make the appropriation for the parties." *Id.*

Here, Defendants clearly communicated their intent that the payments made following December 4, 2013, on which date Plaintiff delivered tainted and worthless fuel to Defendants, were not to be applied to that disputed fuel. Case law makes clear that a debtor has the absolute right to direct application of payments, as Defendants have done by making notations on checks paid to Plaintiff stating "gasoline only" and specifying invoice numbers. *See Exhibit D.* Accordingly, the Court must grant a new trial because there are disputed fact issues about whether payment was made on the invoices sued for, and whether finance charges made the basis of Plaintiff's sworn account are due and owing, which must be submitted to the jury.

## CONCLUSION

This Court must grant Defendants' Motion for New Trial because a suit involving the same parties and subject matter was pending prior to the initiation of this suit, as was raised seasonably in Defendants' initial pleadings. A new trial must be granted so that this suit may be properly abated.

8

Further, Defendants Motion for New Trial must be granted because there exist multiple disputed fact issues that require submission to a jury.

## PRAYER

For these reasons, and in the interest of justice and fairness, Defendants respectfully ask the Court to grant a new trial.

Respectfully submitted,

JACLYN D. PATTON
TX Bar No. 24085521
639 Heights Boulevard
Houston, Texas 77007
PH: (713) 730-9446
FX: (713) 583-4180
jaclyn@txestateplanning.com

WILLIAM R. PEMBERTON
William R. Pemberton, P.C.
P. O. BOX 1112
Crockett, Texas 75835

ATTORNEYS FOR DEFENDANTS

9

86

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served upon the following counsel of record by electronic service and first-class mail on July 2, 2015.

_____
JACLYN D. PATTON


Mr. Ronnie Horsley
P.O. Box 7017
Tyler, Texas 75711
Via Email: horsleylaw@tyler.net

10

EXHIBIT "A"

88

No. 14-0217



FILED
DISTRICT CLERK
HOUSTON COUNTY
14 NOV -7 AM 9:35
CAROLYN RAINEY
BY
DEPUTY

| AJP OIL COMPANY, LLC D/B/A GRAPELAND FUEL AND BBQ, Plaintiff | § § § § | IN THE 3⁴⁰ DISTRICT COURT OF |
| V. | § § § | |
| VELVIN OIL COMPANY, INC. Defendant | § § | HOUSTON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **AJP OIL COMPANY, LLC d/b/a GRAPELAND FUEL AND BBQ** (hereinafter "Plaintiff") complaining of **VELVIN OIL COMPANY, INC.** (hereinafter "Defendant), and states the following:

### I. DISCOVERY LEVEL

Plaintiff intends to conduct discovery in this suit under Level 2 of Texas Rule of Civil Procedure 190.3 and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiff seeks monetary relief over $100,000.

### II. RELIEF

Plaintiff seeks monetary relief over $1,000,000. Tex. R. Civ. P. 47(c)(5).

### III. PARTIES

Plaintiff, AJP OIL COMPANY, LLC is a limited liability company organized and existing under the laws of the State of Texas and may be served with citation in this cause by serving its registered agent for service, Andrew Patton, at 1277 East Loop 304, Crockett, Texas 75835, or wherever he may be found.

Defendant, VELVIN OIL COMPANY, INC. is a corporation organized and existing under the laws of the State of Texas and may be served with citation in this cause by serving its registered agent for service, David Velvin, at 403 Webster Drive, Henderson Texas 75653, or wherever he may be found.

## IV. JURISDICTION

Jurisdiction is proper in this Court because the damages suffered by the Plaintiffs are in excess of the minimum jurisdictional limits of this Court.

Venue is proper in Houston County, Texas because the acts and/or omissions complained of herein occurred in Houston County, Texas.

## V. VENUE

Venue for this suit is proper in Houston County under Texas Civil Practice & Remedies Code section 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to this cause of action occurred in Houston County. TEX. CIV. PRAC. & REM. CODE § 15.002(a).

Venue for this suit is also proper in Houston County under Texas Business & Commerce Code section 17.56 because Defendants have conducted business in Houston County, and the transactions that form the basis of this cause of action occurred in Houston County. TEX.BUS. & COM. CODE §17.56.

## VI. BACKGROUND FACTS

Plaintiff, Grapeland Fuel and BBQ, is a convenience store and gas station located in Grapeland, Texas. Plaintiff has been in operation and regularly selling gasoline and diesel fuels since 2006.

On or about December 4, 2013, Defendant Velvin Oil made a fuel delivery to Plaintiff

that included 2,478 gallons of defective and harmful diesel fuel. In turn Plaintiff, in its ordinary and expected course of business, sold this defective fuel to customers. The diesel fuel actively harmed vital engine parts and rendered customers' vehicles inoperable, or in a diminished functional capacity. Plaintiff was ultimately forced to fix these disabled vehicles out of pocket at a cost exceeding $20,000.

Further, in the weeks following Defendant's diesel delivery to Plaintiff, Defendant's agents continuously and fraudulently misrepresented to Plaintiff that the diesel fuel was untainted and met regulatory requirements, inhibiting Plaintiff from taking timely remedial action and resulting in further damages to Plaintiff.

As a result of the tainted diesel sold by Defendant and the resulting harm to Plaintiff's customers, Plaintiff has suffered serious financial harm including repair costs, loss of profit and severely diminished goodwill within the community.

### VII. VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT

Plaintiff is a consumer under the DTPA because plaintiff is a Limited Liability Company who acquired goods by purchase. Defendant is a corporation that can be sued under the DTPA.

Based on the conduct alleged above, Defendant Velvin Oil Company has engaged in false, misleading, or deceptive acts or practices in the conduct of trade or commerce in violation of TEX. BUS. & COM. CODE §17.46(a) and (b), to wit Defendant:

(A)     engaged in false, misleading, or deceptive acts or practices that plaintiff relied on to plaintiff's detriment. Specifically, Defendant represented that the diesel fuel it sold to Plaintiff was of a particular standard, quality or grade when it was not. TEX. BUS. & COM. CODE §17.46(b)(7). Defendant also failed to disclose information known at the time of the transaction to Plaintiff, with the intention that

91

withholding this information would induce Plaintiff to enter into a transaction that Plaintiff would not have entered had the information been disclosed. TEX. BUS. & COM. CODE §17.46(b)(24).

(B) breached an implied warranty. Specifically, Defendant breached the implied warranty of merchantability as discussed in detail below.

(C) engaged in false, misleading, or deceptive acts or practices that, to plaintiff's detriment, violated a "tie-in" consumer statute. Specifically, Defendant breached Texas Agriculture Code Section 17.055 by selling motor fuel with an inaccurate automotive fuel rating. TEX. AGRIC. CODE § 17.055.

Plaintiff gave Defendant notice as required by Texas Business & Commerce Code section 17.505(a). Attached as Exhibit A is a copy of the notice letter sent to Defendant, which is incorporated by reference.

## VIII. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

Plaintiff re-alleges and incorporates by reference all other paragraphs of this Petition as if fully set forth herein.

At all times relevant to this Petition, Defendant is and was in the business of selling motor fuel without substantial change in the condition in which such fuel was manufactured and sold to consumers, knowing that its fuel products would be sold to persons whose vehicles required a specific quality of fuel to operate.

Defendant is a merchant as to motor fuels, and as such impliedly warranted that the diesel fuel advertised as meeting state and federal regulations and purchased by Plaintiff and was merchantable and fit for the ordinary purposes for which it was to be used. Plaintiff accordingly relied on Defendant's implied warranties in purchasing and reselling the diesel fuel.

92

On or around December 4, 2013, Defendant sold and delivered to Plaintiff tainted diesel fuel that Defendant warranted met regulatory standards. Defendant sold and delivered this fuel to Plaintiff with knowledge that such fuel was to be sold to the general public for specific use in vehicles that operate only on fuel meeting regulatory standards.

Plaintiff was unable to inspect or test the fuel it received from Defendant prior to purchase.

After Plaintiff purchased the diesel fuel from Defendant, Plaintiff resold such fuel in the course of its business to customers. Plaintiff relied on Defendant's implied warranty of merchantability in selling the fuel to its customers.

Plaintiff's customers immediately began to experience problems with their vehicles, including engine stalling and failure, resulting in expenses incurred for towing and repair.

Defendant breached its implied warranty of merchantability in that the diesel fuel it sold contained water and other contaminants, making the fuel unwholesome, unfit for consumers to use in their vehicles and unreasonably dangerous to consumers.

The injuries to Plaintiff, described above, proximately resulted from Defendant's breach of the implied warranty of merchantability.

## IX. NEGLIGENCE

Plaintiff re-alleges and incorporates by reference all other paragraphs of this Petition as if fully set forth herein.

Plaintiff purchased diesel fuel distributed and sold by Defendant.

Defendant owed Plaintiff a duty of care to offer goods free from harmful defect.

Defendant should have reasonably foreseen that Plaintiff would be subject to the harm caused by the damaging and defective fuel sold.

The defective fuel was intended to, and did, reach Plaintiff without material alteration.

Plaintiff used the defective fuel in the manner that Defendant expected.

The defects in the fuel could not be anticipated or detected by Plaintiff through any reasonable method. The defective fuel was unreasonably dangerous when used in its customary manner.

The fuel was defective and unsafe for its intended use because it harmed the vehicles it was intended to fuel, rendering them inoperable.

The fuel failed to perform its intended function of safely and efficiently powering engines.

Defendant should have foreseen, detected, and prevented the defective condition of the fuel.

Defendant should have prevented distribution of the defective fuel.

Defendant breached their duty of care by selling products that were harmful and deleterious:

      a. without adequate quality control and testing; and

      b. without using proper "clean out" and distribution practices.

Defendant's conduct was at a minimum negligent and likely careless or reckless.

Plaintiff has suffered economic damages through no fault of its own as a direct and proximate result of Defendant's defective fuel.

## X. DAMAGES

<u>Economic and Actual Damages.</u> Defendant's wrongful conduct was a producing cause of Plaintiff's injury, which resulted in the following damages:

      a.    $31,760.45 in out-of-pocket damages for the worthless diesel fuel delivered.

b. $1,146,616.17 for lost profits.

c. $17,232.02 in mitigation costs.

d. $6,000 in lost time.

Mental-Anguish Damages. Defendant acted knowingly, which entitles Plaintiff to recover mental-anguish damages under Texas Business & Commerce Code section 17.50(b)(1). Defendant's wrongful conduct resulted in mental-anguish damages totaling $15,000.

Additional damages. Defendant acted knowingly, which entitles plaintiff to recover treble economic damages under Texas Business & Commerce Code section 17.50(b)(1). Specifically, Defendant and its agents knowingly sold tainted, substandard diesel fuel to Plaintiff because Defendants were switching over to a "Winter Blend" of diesel and were in short supply of diesel. This is commonly referred to "clean out" diesel, which is substandard. *See* Exhibit B.

Attorney fees. Plaintiff is entitled to recover reasonable and necessary attorney fees for prosecuting this suit under Texas Business & Commerce Code section 17.50(d).

## XI. JURY DEMAND

Plaintiffs hereby request a trial by jury and have tendered the appropriate Jury Fee.

## XII. CONDITIONS PRECEDENT

All conditions precedent to plaintiff's claim for relief have been performed or have occurred.

## XIII. REQUEST FOR DISCLOSURE

Under Texas Rule of Civil Procedure 194, plaintiff requests that defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## XIV. PRAYER

As a result of the foregoing, Plaintiff asks that the Court issue citation for Defendant to appear and answer, and respectfully prays for each of the following:

a.   Economic damages.

b.   Actual damages.

c.   Mental-anguish damages.

d.   Treble damages.

e.   Pre-judgment and post-judgment interest.

f.   Attorneys' fees and costs of Court.

g.   All other relief to which Plaintiff may be entitled.

Respectfully submitted,

JACLYN D. PATTON
TX Bar No. 24085521
3730 Kirby Drive, Suite 1200
Houston, Texas 77098
(713) 730-9446
(713) 364-6992 (Fax)
jaclyn@txestateplanning.com

DATED: 11-7-14

# EXHIBIT A

## NOTICE OF CLAIM

August 28, 2014

Re: Tainted diesel delivered to Grapeland Fuel and BBQ

Mr. David Velvin
Velvin Oil Company, Inc.
P.O. Box 993
Henderson, TX 75653

Dear Mr. Velvin:

I represent Grapeland Fuel and BBQ in the above-referenced matter. You will recall that in December 2013, Jack Patton of Grapeland Fuel and BBQ placed a fuel order with Velvin Oil, which was delivered on December 4th. Two days later, on December 6th, Mr. Patton became aware that three of his customers had experienced issues with diesel purchased from Grapeland Fuel, resulting in extensive damage to their vehicles. Your Vice President, Jim Jordan, was immediately advised of the problem and reassured my client that it would be looked into. Over the next two weeks, Mr. Jordan was regularly contacted by my client about the ongoing issue. During this time Mr. Jordan sent two super clean diesel shipments and one employee to add a shock treatment to the fuel tank, all in hopes of fixing the tainted diesel. After each "fix" made by your company, Mr. Jordan insisted that the diesel was now safe to sell to the general public. It was not. The problem was not ultimately resolved until my client emptied every ounce of diesel from your company's December 4th shipment from his tank.

In reliance on your representation that the diesel delivered on December 4th was of a standard quality and on your continuous assurances that the diesel had been "fixed" and was safe for resale, my client has suffered severe and continuing damages which have not been remedied by Velvin Oil. Grapeland Fuel and BBQ has made numerous attempts to resolve this matter amicably, but has been rebuffed. After months of being assured by Mr. Jordan that Velvin Oil

would "do the right thing" in relation to the tainted diesel, my client's concerns are now being ignored.

Undoubtedly, you are aware of your liability to my client for violation of the implied warranty of merchantability arising from the principles of common law and, more specifically, Section 17.46(7) of the Texas Deceptive Trade Practices Act (DTPA), Texas Business & Commerce Code section 17.41 et seq.

Because of your violation of the DTPA, my client has incurred economic damages of $1,072,439.11. These damages represent the $31,760.45 you have charged to my client for the tainted diesel delivered, $15,000 in business interruption while my client was forced to shut down his diesel pumps, $19,678.66 in out-of-pocket and mitigation costs to repair the customers' vehicles damaged by the tainted diesel, $6,000 in lost time Mr. Patton spent attending to this issue, and $1,015,000 representing the loss in sales that have already been experienced by Grapeland Fuel and will continue to be experienced over the next two years. In the event of litigation, these amounts will be adjusted upward to reflect any additional damages.

In the event of litigation, my client will also seek recovery of mental-anguish damages in the amount of $15,000 and trebled economic damages on the grounds that your conduct was committed knowingly. Specifically, we will show that your company acted with actual awareness that the diesel was tainted when attempting to remedy the problem with shipments of super clean diesel and shock treatment, yet reassuring my client that the diesel was safe for resale.

Please understand that this demand is made in the spirit of compromise. According to our analysis, the demand presents a tremendous savings to you given your potential exposure to Grapeland Fuel and BBQ. We hope you view this demand as a good faith, conservative effort on our part to resolve this potential litigation on amicable terms.

My client is anxious to resolve this matter immediately. Therefore, I suggest that you or your attorney contact me as soon as possible. From this point forward, all contact concerning this matter should be made to my office.

If this matter is not resolved, my client has authorized me to bring a lawsuit against you for all appropriate remedies under the Texas Deceptive Trade Practices—Consumer Protection Act. We would expect to recover not only our damages, but also mental anguish damages, prejudgment interest, attorney's fees, and perhaps additional punitive damages.

Please forward this letter to your insurance carrier to ensure that the carrier receives timely notice of the claim and will provide you with representation and coverage.

We trust that you will immediately respond, in writing, to this formal demand letter and schedule a mutually convenient time and date for the requested relief within the time specified in

this letter. If you have any questions regarding this matter or need additional information, please contact my office.

Sincerely,


Jaclyn D. Patton

EXHIBIT B

No. _____

| | | |
|---|---|---|
| AJP OIL COMPANY, LLC D/B/A<br>GRAPELAND FUEL AND BBQ,<br>Plaintiff | §<br>§<br>§<br>§ | IN THE \_\_\_\_\_ DISTRICT COURT OF |
| V. | §<br>§<br>§ | |
| VELVIN OIL COMPANY, INC.<br>Defendant | §<br>§ | HOUSTON COUNTY, TEXAS |

## AFFIDAVIT OF ANDREW PATTON

| | |
|---|---|
| STATE OF TEXAS | §<br>§ |
| COUNTY OF HOUSTON | § |

ANDREW PATTON appeared in person before me today and stated under oath:

"My name is ANDREW PATTON. I am above the age of eighteen years, and I am fully competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct."

"I am the owner of Grapeland Fuel and BBQ. On December 3, 2013 I placed a gasoline and diesel order with Jim Jordan of Velvin Oil by phone. When I made the order, Mr. Jordan told me that there was currently a shortage of diesel because the refinery was switching to a winter blend and doing maintenance, but that he "would pull some diesel from somewhere." This order was delivered to Grapeland Fuel on December 4th.

Two days later on December 6th, I was told by my store manager Marsha Kosechata that Joe Graves of Joe's Automotive had called saying that three of my customers had to bring their trucks into his shop after purchasing diesel from my store. These customers were Tommy Smith, Charlie Casky and Chris Byrn and they started having problems with their trucks almost

102

filters in diesel tank four clogged within a few days, forcing me to stop selling all diesel until we could pump the diesel tanks empty and dispose of 435 gallons worth of worthless diesel—about $1,500 worth of diesel wasted.

During this time, four additional trucks that had filled up at our diesel tank four were towed to auto shops in Grapeland, Crockett and Huntsville. These customers were Gator Matthews, Eric Grueziecke, Richard Wagner and Tom Gates. I again verified by credit card receipt that these customers had indeed filled up with diesel from tank four at Grapeland Fuel.

Between December 6th, 2013 and January 7th, 2014, seven total trucks were damaged after filling up at our diesel tank four. Repairs to their trucks included changing fuel filters, flushing fuel systems, dropping fuel tanks, cleaning fuel tanks, fuel injector replacement and fuel pump replacement. Tom Gates' truck required a total fuel system overhaul. I paid $17,233.02 out of pocket to repair my customers' trucks. In addition, because Grapeland and Houston County is such a small and close community, word quickly spread that our diesel was damaging customers' trucks. During the first eight months of 2014, my business has been down almost $250,000 compared to this same period last year and it continues to suffer. Even now, almost an entire year since the incident, customers ask me almost daily if our fuel is safe to buy.

Grapeland Fuel purchased diesel exclusively from Velvin Oil between October 2013 and February 2014. We have never had any issues with diesel before Velvin Oil delivered contaminated fuel on December 4, 2013 and we have not had any issues since we pumped that fuel out of our tanks in January 2014.

We continued to do business with Velvin Oil because we were repeatedly assured by Jim Jordan that Velvin Oil would make their mistake right. After trying to amicably resolve

this matter several times and being ignored by Velvin Oil, it has become apparent we must resort to the legal system to get any relief."

AFFIANT FURTHER SAYETH NOT.

ANDREW PATTON

SWORN TO AND SUBSCRIBED BEFORE ME on this 1ø day of Nov. , 2014, to certify which witness my hand and seal of office.

JULIE RHONE
Notary Public, State of Texas
My Commission Expires
December 02, 2016

Notary Public in and for the
State of Texas

104

# EXHIBIT C

No. _____

| | | |
|---|---|---|
| AJP OIL COMPANY, LLC D/B/A GRAPELAND FUEL AND BBQ, Plaintiff | § § § § § | IN _____THE DISTRICT COURT OF |
| V. | § § | |
| VELVIN OIL COMPANY, INC. Defendant | § § | HOUSTON COUNTY, TEXAS |

## AFFIDAVIT OF MARSHA KOSECHATA

| | |
|---|---|
| STATE OF TEXAS | § § |
| COUNTY OF HOUSTON | § |

MARSHA KOSECHATA appeared in person before me today and stated under oath:

"My name is MARSHA KOSECHATA. I am above the age of eighteen years, and I am fully competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct."

"I have been the manager at Grapeland Fuel and BBQ for over three years. One of my regular duties as manager is to print out and check the veeder root reading every day immediately after closing. On December 3rd and 4th of 2013, I printed out the veeder root readings like I do each and every night at approximately 6:05pm. I did notice at this time that the time stamp was off due to a power outage.

When I checked the veeder root readings on December 3rd, 2013, there was no water in tank four. After the fuel delivery by Velvin Oil on December 4th, the veeder root readings showed that there were eighteen gallons of water in tank four. Our fuel tanks are always kept locked and are not accessible.

On December 18th or 19th, an employee from Velvin Oil came to Grapeland Fuel and treated our tank four. The employee said it was a shock treatment for the water in the diesel. They also left some shock treatment for us to treat at a later date. We used the treatment the following week as we were still having trouble.

During my entire time working for Grapeland Fuel and BBQ, we've never had any problems with bad diesel except for the period between December 4th 2013 when Velvin Oil delivered bad diesel to tank four and when Mr. Patton pumped tank four empty in January 2014."

AFFIANT FURTHER SAYETH NOT.

*Marsha Kosechata*
MARSHA KOSECHATA

SWORN TO AND SUBSCRIBED BEFORE ME on this 12 day of NOV. , 2014, to certify which witness my hand and seal of office.

JULIE RHONE
Notary Public, State of Texas
My Commission Expires
December 02, 2016

Notary Public in and for the State of Texas

LAW OFFICES OF
# RONNIE HORSLEY P. C.
231 SOUTH COLLEGE, TYLER, TEXAS 75702
(903)593-7314
FAX (903)593-3450

RONNIE HORSLEY
horsleylaw@tyler.net

MAILING ADDRESS
P.O. BOX 7017
TYLER, TX 75711

September 23, 2014

Jaclyn D. Patton                    Fax: (713) 364-6992
Attorney at Law
River Oaks Tower
3730 Kirby Drive, Suite 1200
Houston, TX 77098

RE:   Velvin Oil Company, Inc. vs. AJP Oil Company. LLC dba Grapeland Fuel & BBQ
      Balance due: $ 31,760.45

Dear Ms. Patton:

Thank you for your August communication. My clients had provided me some information regarding this matter and I am not sure they were aware of it all when they first communicated with me. In this connection, I do know there are some questions about how the contamination appeared and in the type of vehicles. There are some other questions as well as to the filtration or lack of same which was being used or available. I believe we might benefit from assembling the various aspects of our "evidence" and coming to a definitive arrangement. The curiosity I have is that this last shipment is not part of the complaint, rather the previous shipments were part of the complaint and yet they were paid for. I don't believe there was any dispute over the most recent shipment and would be grateful to hear from you regarding that aspect of this case.

Yours very truly,

RONNIE HORSLEY
RH/bg

108

# EXHIBIT "B"

IN THE DISTRICT COURT OF RUSK COUNTY, TEXAS

4TH JUDICIAL DISTRICT

| VELVIN OIL COMPANY, INC. | * | |
| | * | |
| VS. | * | NO. 2014-362 |
| | * | |
| A.J.P. OIL COMPANY, LLC | * | |
| d/b/a GRAPELAND FUEL & BBQ; | * | |
| AND ANDREW J. PATTON | * | |

## DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE COURT:

A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, and Andrew J. Patton, also known and being the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack Patton and Jack Patton, III, hereinafter sometimes referred to as "Defendants," SUBJECT TO DEFENDANTS' MOTION TO TRANSFER VENUE, file this, their Original Answer to Plaintiff's Original Petition herein, and, for such Answer, would respectfully show unto the Court the following:

1. Defendants have paid in full the account the subject of Plaintiff's suit, more specifically with check number 2902, dated April 29, 2014.

2. Defendants deny, each and every, all and singular, the allegations contained in Plaintiff's Original Petition and demand strict proof thereof; and, of this, Defendants put themselves upon the country.

WHEREFORE, premises considered, Defendants pray that Plaintiff take nothing by its suit, that Defendants go hence with their costs

110

without day, and for such other and further relief, both general and special, at law and in equity, to which Defendants may be justly entitled.

Respectfully submitted,

BY: _____
WILLIAM R. PEMBERTON
WILLIAM R. PEMBERTON, P.C.
P. O. BOX 1112
CROCKETT, TEXAS 75835
936-544-4111
936-544-5023 (FAX)
TEXAS BAR I.D. NO. 15735500
bill@pembertontriallaw.net

JACLYN D. PATTON
3730 Kirby Drive, Suite 1200
Houston, Texas 77098

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing Defendants' Original Answer has been served upon:

Mr. Ronnie Horsley
Attorney at Law
P. O. Box 7017
Tyler, Texas 75711

by depositing same, enclosed in a post paid, properly addressed wrapper, in a Post Office or official depository, under the care and custody of the United States Postal Service, Certified Mail, Return Receipt Requested, this the 23rd day of December, 2014.

_____
WILLIAM R. PEMBERTON

111

IN THE DISTRICT COURT OF RUSK COUNTY, TEXAS

4TH JUDICIAL DISTRICT

| | | |
|---|---|---|
| VELVIN OIL COMPANY, INC. | * | |
| | * | |
| VS. | * | NO. 2014-362 |
| | * | |
| A.J.P. OIL COMPANY, LLC | * | |
| d/b/a GRAPELAND FUEL & BBQ; | * | |
| AND ANDREW J. PATTON | * | |

## DEFENDANTS' MOTION TO TRANSFER VENUE

TO THE HONORABLE COURT:

A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, and Andrew J. Patton, also known and being the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack Patton and Jack Patton, III, Defendants, move the Court to transfer venue and in support of the motion show:

1. Defendants object to venue in Rusk County, Texas, the county in which this action was instituted, on the ground that Rusk County is not a county of proper venue in this case.

2. No basis exists for permitting venue in Rusk County as alleged in Plaintiff's Original Petition under any of the venue rules provided by the Civil Practice and Remedies Code of Texas or otherwise. Defendants specifically deny the venue facts pleaded in Plaintiff's Original Petition. Defendants specifically deny that any Defendant contracted in writing to perform an obligation in Rusk County, Texas, expressly naming Rusk County or definite place in that county by the writing. Defendants specifically deny that any invoice the subject of this suit constituted a contract in

112

writing by which they agreed to pay for the goods the subject of this suit in Rusk County, Texas. Defendants further specifically deny that any such invoice was furnished prior to the time the kind and quantity of goods to be purchased, the price to be paid therefor, the place of delivery and other contractual terms had been agreed upon. Defendants specifically deny that any invoice the subject of this suit was sent to any of them prior to the shipment of the goods the subject of this suit. Defendants specifically deny that any invoice by Plaintiff was intended to modify the terms of any original contract.

Defendants specifically deny that the individual Defendant was ever a resident of Rusk County, Texas. The individual Defendant is not a resident of Rusk County, Texas and was not a resident of Rusk County, Texas when the cause of action alleged in Plaintiff's Original Petition allegedly accrued.

Defendant A.J.P. Oil Company, LLC specifically denies that Rusk County is the county of Defendant's principal office in this state.

Defendants also specifically deny that all or a substantial part of the events or omissions giving rise to Plaintiff's cause of action occurred in Rusk County, Texas.

3. Defendants further object to venue in Rusk County, Texas, the county in which this action was instituted, on the grounds that Rusk County is an inconvenient venue, and the action should be transferred to Houston County, Texas in accordance with TEX. CIV.

113

PRAC. & REM. CODE ANN. § 15.002(b) (2014). More specifically, as shown in the attached Affidavit of Andrew J. Patton, for the convenience of the parties and witnesses and in the interest of justice, maintenance of this action in Rusk County would work an injustice to Defendants considering:

    (1)   The Defendants' economic personal hardship;

    (2)   The balance of the interest of all parties predominates in favor of the action being brought in Houston County, Texas; and

    (3)   The transfer of the action to Houston County, Texas would not work an injustice to any other party.

4.    Defendants request that this action be transferred to a District Court of Houston County, Texas, where proper venue lies in this case.

5.    Venue is proper in Houston County, Texas, because the individual Defendant resided in Houston County, Texas at the time the alleged cause of action accrued, and Houston County, Texas is the county of the principal office of Defendant A.J.P. Oil Company, LLC.

WHEREFORE, Defendants request that this matter be set for hearing, and that on completion of the hearing the Court grant Defendants' Motion to Transfer Venue in this cause to Houston County, Texas, taxing costs against the Plaintiff, and granting the Defendants any further relief to which they may be justly entitled.

114

Respectfully submitted,

BY: _____
WILLIAM R. PEMBERTON
WILLIAM R. PEMBERTON, P.C.
P. O. BOX 1112
CROCKETT, TEXAS  75835
936-544-4111
936-544-5023 (FAX)
TEXAS BAR I.D. NO. 15735500
bill@pembertontriallaw.net

JACLYN D. PATTON
3730 Kirby Drive, Suite 1200
Houston, Texas 77098

ATTORNEYS FOR DEFENDANTS

115

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing Defendants' Motion to Transfer Venue has been served upon:

> Mr. Ronnie Horsley
> Attorney at Law
> P. O. Box 7017
> Tyler, Texas 75711

by depositing same, enclosed in a post paid, properly addressed wrapper, in a Post Office or official depository, under the care and custody of the United States Postal Service, Certified Mail, Return Receipt Requested, this the 23rd day of December, 2014.

WILLIAM R. PEMBERTON

116

AFFIDAVIT

THE STATE OF TEXAS      *

COUNTY OF HOUSTON      *

BEFORE ME, the undersigned notary public, on this day personally appeared Andrew J. Patton, individually and as agent for A.J.P. Oil Company, LLC, who, after being duly sworn, stated that he is a Defendant in this Cause, that he is over the age of 18 years, of sound mind, and is competent to make this affidavit, and that every statement contained in this Affidavit is true and correct.

"Andrew J. Patton, also known and being the same person as Andrew Jack Patton, Andrew Patton, Andrew J. Patton, III, Jack Patton and Jack Patton, III, is a resident of Houston County, Texas, and he was a resident of Houston County, Texas at the time the alleged cause of action plead in Plaintiff's Original Petition accrued. The principal office in Texas of A.J.P. Oil Company, LLC, is in Houston County, Texas. Houston County, Texas is the county in which the decision makers for the organization within the State of Texas conduct the daily affairs of the organization.

"The invoices attached to Plaintiff's Original Petition as Exhibit "A" were delivered to Defendants after the kind and quality of goods to be purchased, the price to be paid therefor, the place of delivery and the other terms of contract between Plaintiff and Defendants had been agreed upon. The goods the subject of this suit had already been delivered prior to the time the invoices were

117

delivered.

"Litigation between the Plaintiff in this case and Defendant A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, is pending in the Third Judicial District Court of Houston County, Texas, in Cause No. 14-0217, wherein A.J.P. Oil Company, LLC, d/b/a Grapeland Fuel & BBQ, sued Velvin Oil Company, Inc. for damages for delivery of tainted fuel. A true and correct copy of Plaintiff's Original Petition filed on November 7, 2014 in Cause No. 14-0217 is attached hereto, marked "Exhibit A" and incorporated by reference.

_____
ANDREW J. PATTON, INDIVIDUALLY AND
AS AGENT FOR A.J.P. OIL COMPANY,
LLC

SUBSCRIBED AND SWORN TO BEFORE ME this 22ND day of December, 2014.

SANDRA L. HAYNES
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 11-08-2018

_____
NOTARY PUBLIC, STATE OF TEXAS

118

EXHIBIT "C"

No: 2014-362

| | | |
|---|---|---|
| VELVIN OIL COMPANY, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 4th JUDICIAL DISTRICT |
| | § | |
| A.J.P. OIL COMPANY, LLC d/b/a | § | |
| GRAPELAND FUEL & BBQ; and | § | |
| ANDREW J. PATTON | § | RUSK COUNTY, TEXAS |

## NOTICE OF SUBMISSION

The annexed and foregoing Motion for Summary Judgment having been presented

to the Court, it is hereby NOTICED that the same is set for SUBMISSION on the 15th day of

April, 2015, before the 4th Judicial District Court, Rusk County, Texas.

SIGNED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

LAW OFFICES OF RONNIE HORSLEY, P.C.
Attorney for Plaintiff

BY: _____
RONNIE HORSLEY
P.O. Box 7017
Tyler, Texas 75711
Telephone: (903) 593-7314
Facsimile: (903) 593-3450
Texas Bar Card No. 10014000

120

No: 2014-362

| VELVIN OIL COMPANY, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 4th JUDICIAL DISTRICT |
| | § | |
| A.J.P. OIL COMPANY, LLC d/b/a | § | |
| GRAPELAND FUEL & BBQ; and | § | |
| ANDREW J. PATTON | § | RUSK COUNTY, TEXAS |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the above entitled Plaintiff and respectfully shows to the Court that after suit was filed the Defendant entered an appearance and filed an answer herein which is insufficient in law as provided in RULES 185 and 93, TEXAS RULES OF CIVIL PROCEDURE to constitute a defense to Plaintiff's cause of action; that as shown by the pleadings, together with depositions, admissions and affidavit, if any, on file herein, there is no genuine issue as to any material fact between the parties herein, and by reason thereof the Plaintiff is entitled to a Judgment as a matter of law as prayed for by Plaintiff.

Plaintiff would further show that in accordance with the attorney's fee affidavit annexed hereto, it incurred the attorney's fees as set forth in the affidavit of Plaintiff's attorney and is entitled to receive same.

WHEREFORE, premises considered, Plaintiff now moves the Court to enter a Judgment in favor of Plaintiff, and against Defendant, for Plaintiff's debt together with interest, a reasonable attorney's fees for Plaintiff's attorney, RONNIE HORSLEY, costs of Court and all other relief, both general and special to which Plaintiff may be justly entitled.

121

Respectfully submitted,

LAW OFFICES OF RONNIE HORSLEY, P.C.
Attorney for Plaintiff


By: _____
    RONNIE HORSLEY
    P. O. Box 7017
    Tyler, Texas  75711
    Telephone:  (903) 593-7314
    Facsimile:  (903) 593-3450
    Texas Bar Card No. 10014000

122

## AFFIDAVIT

THE STATE OF TEXAS        *

                          *

COUNTY OF SMITH           *

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned Affiant, who, being first duly sworn, did depose and say as follows:

"I, the Affiant, am the attorney for the Plaintiff in the above numbered and captioned cause now pending in said Court. I am duly licensed to practice law in the Courts of the State of Texas and am familiar with the fees customarily charged by the practicing attorneys in this county and area, having practiced generally in many counties across the State of Texas since 1970. The Affiant was retained by the Plaintiff on a contingent fee based upon the amount of the debt to be collected. In accordance with the Affiant's experience in handling numerous cases and based upon the usual contingent fee arrangements of attorneys similarly engaged, $10,892.24 is a reasonable and customary fee for investigating the above captioned cause, attempting to secure collection of the indebtedness by amicable means, preparing and filing the Petition in said cause, filing a Motion for Summary Judgment therein, appearing in Court to argue same, preparing the Judgment in this cause, and filing same. Demand for payment of Plaintiff's claim was made upon the Defendant more than thirty (30) days prior to the date of this affidavit. The affidavit is made upon personal knowledge of the Affiant, and all facts stated therein are true and correct".

RONNIE HORSLEY

SUBSCRIBED AND SWORN TO, before me, on this 25th day of March, 2015.

BRANDY RENEE GLOVER
MY COMMISSION EXPIRES
August 9, 2015

Notary Public in and for the
State of T E X A S

123

THE STATE OF TEXAS    *

                     *

COUNTY OF SMITH    *

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned Affiant, who being by me first duly sworn, did say and depose that he is the attorney for the Plaintiff in the above entitled and numbered cause; that he has prepared the above and foregoing motion; that he is personally cognizant of the facts set forth in said motion; and that said facts are, within his knowledge, true and correct.

RONNIE HORSLEY

SUBSCRIBED AND SWORN TO, before me, this 25th day of March, 2015.



BRANDY RENEE GLOVER
MY COMMISSION EXPIRES
August 0, 2015

Notary Public in and for the
State of T E X A S

### CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that a true and complete copy of the foregoing Motion for Summary Judgment and following Order, was duly served upon the Defendant's attorney of record, by fax on this the 25th day of March, 2015 at his last known address, to-wit:

William R. Pemberton                  Fax: 936-544-5023
Attorney at Law
P.O. Box 1112
Crockett, Texas 75835

RONNIE HORSLEY

EXHIBIT "D"

**VELVIN OIL CO., INC.**
PETROLEUM PRODUCTS
PO BOX 993
HENDERSON, TX 75653
903/657-2108

STATEMENT  PAGE: 1

STATEMENT DATE: 12/31/2013

AJP Oil Company, LLC
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX 75835

CUSTOMER NO.: 00-0001998

CREDIT LIMIT:
CREDIT AVAIL:

CONTACT:



| DATE | REFERENCE | DESCRIPTION | CHARGE | CREDIT | BALANCE |
|---|---|---|---|---|---|
| 11/1/2013 | 0164147-IN | | 22,781.63 | | |
| 12/13/2013 | | Payment Ref: 2977 | | 22,781.63 | 0.00 |
| 11/6/2013 | 0164277-IN | | 24,544.12 | | |
| 12/13/2013 | | Payment Ref: 2977 | | 24,544.12 | 0.00 |
| 11/19/2013 | 0164518-IN | | 23,883.23 | | |
| 12/13/2013 | | Payment Ref: 2977 | | 23,883.23 | 0.00 |
| 12/4/2013 | 0165380-IN | | 23,720.24 | | 23,720.24 |
| 12/9/2013 | 0165464-IN | | 24,587.23 | | 24,587.23 |
| 12/12/2013 | 0165552-IN | | 19,171.76 | | 19,171.76 |
| 12/23/2013 | 0165770-IN | | 24,711.59 | | 24,711.59 |

| | | | | | 92,190.82 |
|---|---|---|---|---|---|
| Current | 10 Days | 30 Days | 60 Days | 90 Days | BALANCE DUE |
| 92,190.82 | 0.00 | 0.00 | 0.00 | 0.00 | |

PAYMENT DUE UPON RECEIPT OF STATEMENT.
ACCOUNT IS CUT OFF IF NOT PAID BY JANUARY 10, 2014

126

VELVIN OIL CO, INC.

# Grapeland State Bank
## Print Date and Time: 03/19/2015 — 12:36:06PM



**3003**

AJP OIL CO. LLC
1277 EAST LOOP 304
CROCKETT, TX 75835
DBA GRAPELAND FUEL & BBQ

1/17/14   88-1392-1131

Pay to the order of *Veldia Oil Company, Inc.*        $62,245.00

*Thirty-two thousand two hundred forty-five* 00/100

Grapeland State Bank
P.O. Box 131
Grapeland, Texas 75844

for Gasoline only   00-0001998

⑆003003⑆ ⑈113113923⑈ ⑆0022247⑆

22247      3003      62,245.00



Citizens National Bank
>111903161<
1/31/2014

22247      3003      62,245.00

FOR DEPOSIT ONLY
CITIZENS NATIONAL BANK 111903151
1054998

# Grapeland State Bank
### Print Date and Time: 03/19/2015 -- 12:36:16PM



3018

AJP OIL CO. LLC
1277 EAST LOOP 304
CROCKETT, TX 75835
DBA GRAPELAND FUEL & BBQ

2/10/14                    63-1882-1181

Pay to the Order of  Vektra Oil Co., Inc.        $ 64,656.63

Thirty four thousand six hundred fifty six & 63/100        dollars

Grapeland State Bank
P.O. Box 111
Grapeland, Texas 75844

for  00-0007998

P003018P  C113113923C  P0022247P

22247       3018          64,656.63

---

Citizens National Bank
>111903151<
2/20/2014

FOR DEPOSIT ONLY
CITIZENS NATIONAL BANK 111903151
1054698

22247       3018          64,656.63

# Grapeland State Bank
Print Date and Time: 03/19/2015 – 12:36:39PM



AJP OIL CO. LLC
1277 EAST LOOP 304
CROCKETT, TX 75835
DBA GRAPELAND FUEL & BBQ

3063

4/10/14

Pay to the Order of Velma Oil Company, Inc.     $75,664.15

Twenty-five thousand six hundred sixty-four & 15/100

Grapeland State Bank
P.O. Box 191
Grapeland, Texas 75844-0191

#003063# #113113923# #002224 7#

22247     3063     76,664.15

CItizens National Bank
>1118031514
4/21/2014

FOR DEPOSIT ONLY
CITIZENS NATIONAL BANK 1118031514
10549988

22247     3063     76,664.15

# VELVIN OIL CO., INC.
## PETROLEUM PRODUCTS
P.O. BOX 993
HENDERSON, TEXAS 75653
903/657-2108

EMERGENCY CONTACT: (512) 463-7727

| INVOICE DATE | INVOICE NO. | PAGE |
|---|---|---|
| 12/4/2013 | 0165380-IN | 1 |

SOLD TO

AJP Oil Company, LLC
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX 75835

SHIPPED TO

grapeland tx
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX 75835

| ACCOUNT NUMBER | SALES REP | CUSTOMER P.O. NUMBER | TERMS | SHIP VIA | F.O.B. |
|---|---|---|---|---|---|
| 00-0001998 | BG | | Net 10TH | | |

| QUANTITY | | | DESCRIPTION | | | DISCOUNT | AMOUNT |
|---|---|---|---|---|---|---|---|
| ORDERED | SHIPPED | BACK ORDERED | STOCK I.D. | UNIT | UNIT PRICE | | |
| 4,977.0 | 4,977.0 | 0.0 | F-N | EACH | 2.6050 | | 12,965.09 |
| | | | No Lead Gasoline UN-1203 | | | | |
| 4,977.0 | 4,977.0 | 0.0 | F-TFG | EACH | 0.1840 | | 915.77 |
| | | | Federal Gasoline Tax | | | | |
| 4,977.0 | 4,977.0 | 0.0 | F-TSG | EACH | 0.2000 | | 995.40 |
| | | | State Gasoline Tax | | | | |
| 2,478.0 | 2,478.0 | 0.0 | F-DL | EACH | 3.1290 | | 7,753.66 |
| | | | Diesel 15-PPM Ultra Low Sulfer | | | | |
| 2,478.0 | 2,478.0 | 0.0 | F-TFD | EACH | 0.2440 | | 604.63 |
| | | | Federal Diesel Tax | | | | |
| 2,478.0 | 2,478.0 | 0.0 | F-TSD2 | EACH | 0.1960 | | 485.69 |
| | | | State Tax Biodiesel | | | | |

ULTRA LOW SULFER DIESEL FUEL(15-PPM SULFER MAXIMUM) REQUIRED FOR USE IN ALL 2007 MODEL
YEAR AND LATER HIGHWAY DIESEL VEHICLES AND ENGINES. RECOMMENDED FOR USE IN ALL DIESEL
VEHICLES AND ENGINES. "THIS FUEL MAY CONTAIN UP TO 5.0% BIODIESEL".

| | |
|---|---|
| Net Invoice: | 23,720.24 |
| Less Discount: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 23,720.24 |

Minimum Octane Rating of this fuel: (R+M) / 2 Method N / L 87, MG 89, SNL 92

All accounts are due net 10th from invoice date. Finance charge after 30 days of 1½% per month (minimum charge of 50¢) which is an annual percentage rate of 18%. Failure to pay the full amount of this invoice within the time set forth in the first sentence shall constitute an acceptance of the terms of this invoice. In the event all or any part of the amount or amounts due pursuant to or as a result of this invoice, and such amount or amounts is turned over to an attorney for collection, Customer agrees to pay in addition to all other sums due hereunder, all costs of collection, including without limitation court costs and reasonable subject to the provisions of the Texas Consumer Credit Law. All invoices due and payable in Rusk County, Henderson, Texas.

130

# VELVIN OIL CO., INC.

### DELIVERY TICKET

*PETROLEUM PRODUCTS*

P. O. Box 993
HENDERSON, TEXAS 75653

903-657-2108

TO _____ NJP OilField _____   DATE _12-4-13_

SHIPPED TO _Grapeland_

_Grapeland Fuel & BBQ_

| OUR ORDER NO. | YOUR ORDER NO. | SALES PERSON | TERMS | SHIPPED VIA "FLAMMABLE LIQUID" | ☐ PREPAID ☐ COLLECT | |
|---|---|---|---|---|---|---|
| QUANTITY SHIPPED | QUANTITY ORDERED | DESCRIPTION | | | PRICE | AMOUNT |
| 4977 | | 6-10  Unleaded GAS | | | 2.98 9 | 14,826.26 |
| | | | | | | |
| | | | | | | |
| 2478 | | Low Sulfur Diesel (Highway use) | | | 3.56 9 | 8,843.99 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| DELIVERY TICKET | | |
|---|---|---|
| | STATE ROAD TAX | |
| | FEDERAL ROAD TAX | |
| | STATE SALES TAX | |
| x Marlene Sanders. | SUB TOTAL | |
| RECEIVED BY | TOTAL AMOUNT DUE | 23,720.25 |

131

# VELVIN OIL CO., INC.
### PETROLEUM PRODUCTS
P.O. BOX  993
HENDERSON, TEXAS  75653
903/657-2108

EMERGENCY CONTACT: (512) 463-7727

| INVOICE DATE | INVOICE NO. | PAGE |
|---|---|---|
| 12/9/2013 | 0165464-IN | 1 |

SOLD TO

AJP Oil Company, LLC
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX  75835

SHIPPED TO

grapeland tx
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX  75835

| ACCOUNT NUMBER | SALES REP | CUSTOMER P.O. NUMBER | TERMS | SHIP VIA | F.O.B. |
|---|---|---|---|---|---|
| 00-0001998 | BG | | Net 10TH | | |

| QUANTITY | | | DESCRIPTION | | | DISCOUNT | AMOUNT |
|---|---|---|---|---|---|---|---|
| ORDERED | SHIPPED | BACK ORDERED | STOCK I.D. | UNIT | UNIT PRICE | | |
| 5,549.0 | 5,549.0 | 0.0 | F-N No Lead Gasoline UN-1203 | EACH | 2.6350 | | 14,621.62 |
| 5,549.0 | 5,549.0 | 0.0 | F-TFG Federal Gasoline Tax | EACH | 0.1840 | | 1,021.02 |
| 5,549.0 | 5,549.0 | 0.0 | F-TSG State Gasoline Tax | EACH | 0.2000 | | 1,109.80 |
| 2,183.0 | 2,183.0 | 0.0 | F-DL Diesel 15-PPM Ultra Low Sulfer | EACH | 3.1490 | | 6,874.27 |
| 2,183.0 | 2,183.0 | 0.0 | F-TFD Federal Diesel Tax | EACH | 0.2440 | | 532.65 |
| 2,183.0 | 2,183.0 | 0.0 | F-TSD2 State Tax Biodiesel | EACH | 0.1960 | | 427.87 |

ULTRA LOW SULFER DIESEL FUEL(15-PPM SULFER MAXIMUM) REQUIRED FOR USE IN ALL 2007 MODEL
YEAR AND LATER HIGHWAY DIESEL VEHICLES AND ENGINES. RECOMMENDED FOR USE IN ALL DIESEL
VEHICLES AND ENGINES. " THIS FUEL MAY CONTAIN UP TO 5.0% BIODIESEL"

| | |
|---|---|
| Net Invoice: | 24,587.23 |
| Less Discount: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 24,587.23 |

Minimum Octane Rating of this fuel  (R+M) / 2 Method N / L 87, MG 89, SNL 92

All accounts are due net 10th from invoice date. Finance charge after 30 days of 1½% per month (minimum charge of 50¢) which is an annual percentage rate of 18%. Failure to pay the full amount of this invoice within the time set forth in the first sentence shall constitute an acceptance of the terms of this invoice. In the event all or any part of the amount or amounts due pursuant to or as a result of this invoice, and such amount of amounts is turned over to an attorney for collection, Customer agrees to pay in addition to all other sums due hereunder, all costs of collection, including without limitation court costs and reasonable subject to the provisions of the Texas Consumer Credit Law. All invoices due and payable in Rusk County, Henderson, Texas.

132

# VELVIN OIL CO., INC.

**DELIVERY TICKET**

PETROLEUM PRODUCTS

P. O. Box 993
HENDERSON, TEXAS 75653

903-657-2108

TO _AJP oil field_

DATE _12-9-13_

SHIPPED TO _Grapeland store_

| OUR ORDER NO. | YOUR ORDER NO. | SALES PERSON BG | TERMS net | | SHIPPED VIA "FLAMMABLE LIQUID" | | ☐ PREPAID ☐ COLLECT | |
|---|---|---|---|---|---|---|---|---|
| QUANTITY SHIPPED | QUANTITY ORDERED | | DESCRIPTION | | | PRICE | AMOUNT | |
| 5549 | | E-10 NL Gasoline | | | | | | |
| | | | | | | 3.01 9 | 16,752.44 | |
| | | | | | | | | |
| | | | | | | | | |
| 2183 | | Low Sulfur Diesel (Highway use) | | | | 3.58 9 | 7,834.79 | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**DELIVERY TICKET**

| | | |
|---|---|---|
| STATE ROAD TAX | | |
| FEDERAL ROAD TAX | | |
| STATE SALES TAX | | |
| SUB TOTAL | | |
| **TOTAL AMOUNT DUE** | 24,587.23 | |

x _Marlene Sanders_

RECEIVED BY

133

# VELVIN OIL CO., INC.
## PETROLEUM PRODUCTS
P.O. BOX 993
HENDERSON, TEXAS 75653
903/657-2108

EMERGENCY CONTACT: (512) 463-7727

| INVOICE DATE | INVOICE NO. | PAGE |
|---|---|---|
| 12/12/2013 | 0165552-IN | 1 |

SOLD TO

AJP Oil Company, LLC
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX 75835

SHIPPED TO

grapeland tx
dba Grapeland Fuel & BBQ
1277 East Loop 304
Crockett, TX 75835

| ACCOUNT NUMBER | SALES REP | CUSTOMER P.O. NUMBER | TERMS | SHIP VIA | F.O.B. |
|---|---|---|---|---|---|
| 00-0001998 | BG | | Net 10TH | | |

| QUANTITY | | | DESCRIPTION | | | DISCOUNT | AMOUNT |
|---|---|---|---|---|---|---|---|
| ORDERED | SHIPPED | BACK ORDERED | STOCK I.D. | UNIT | UNIT PRICE | | |
| 2,022.0 | 2,022.0 | 0.0 | F-N No Lead Gasoline UN-1203 | EACH | 2.5350 | | 5,125.77 |
| 2,022.0 | 2,022.0 | 0.0 | F-TFG Federal Gasoline Tax | EACH | 0.1840 | | 372.05 |
| 2,022.0 | 2,022.0 | 0.0 | F-TSG State Gasoline Tax | EACH | 0.2000 | | 404.40 |
| 3,718.0 | 3,718.0 | 0.0 | F-DL Diesel 15-PPM Ultra Low Sulfer | EACH | 3.1250 | | 11,618.75 |
| 3,718.0 | 3,718.0 | 0.0 | F-TFD Federal Diesel Tax | EACH | 0.2440 | | 907.19 |
| 3,718.0 | 3,718.0 | 0.0 | F-TSD State Diesel Tax | EACH | 0.2000 | | 743.60 |

ULTRA LOW SULFER DIESEL FUEL(15-PPM SULFER MAXIMUM) REQUIRED FOR USE IN ALL 2007 MODEL YEAR AND LATE

| | |
|---|---|
| Net Invoice: | 19,171.76 |
| Less Discount: | 0.00 |
| Sales Tax: | 0.00 |
| Invoice Total: | 19,171.76 |

Minimum Octane Rating of this fuel: (R+M) / 2 Method N L-87, MG 89, SNL 92

All accounts are due net 10th from invoice date. Finance charge after 30 days of 1½% per month (minimum charge of 50¢) which is an annual percentage rate of 18%. Failure to pay the full amount of this invoice within the time set forth in the first sentence shall constitute an acceptance of the terms of this invoice. In the event of any part of the amount or amounts due pursuant to or as a result of this invoice, and such amount or amounts is turned over to an attorney for collection, Customer agrees to pay in addition to all other sums due hereunder, all costs of collection, including without limitation court costs and reasonable subject to the provisions of the Texas Consumer Credit Law. All invoices due and payable in Rusk County, Henderson, Texas.

134

# VELVIN OIL CO., INC.

**DELI**

*PETROLEUM PRODUCTS*

P. O. Box 993
HENDERSON, TEXAS 75653

903-657-2108

TO _A J P oil Field_    DATE _12-12-13_

SHIPPED TO _Grapeland_

_Grapeland Fuel & BBQ_

| OUR ORDER NO. | YOUR ORDER NO. | SALES PERSON BG | TERMS net | | SHIPPED VIA "FLAMMABLE LIQUID" |
|---|---|---|---|---|---|

| QUANTITY SHIPPED | QUANTITY ORDERED | DESCRIPTION | | PRICE | |
|---|---|---|---|---|---|
| 2022 | | 87 E-10 Gasoline | | 2.91 | 9 |
| | | | | | |
| | | | | | |
| 3718 | | Low Sulfur Diesel | | 3.56 | 9 |
| | | (High way use) | | | |
| | | | | | |
| | | | | | |

**DELIVERY TICKET**

x _Marsha Kosechata_

RECEIVED BY

| | |
|---|---|
| STATE ROAD TAX | |
| FEDERAL ROAD TAX | |
| STATE SALES TAX | |
| SUB TOTAL | |
| **TOTAL AMOUNT DUE** | $ 19 |

135

| Type | Date | Num | Memo | Account | Clr | Split | Amount |
|------|------|-----|------|---------|-----|-------|--------|
| **Velvin Oil Co., Inc.** | | | | | | | |
| Check | 12/04/2013 | 2977 | | 1002 · Cash-GSB ... | | 5130 · CGS-... | -71,208.98 |
| Check | 01/17/2014 | 3003 | | 1002 · Cash-GSB ... | | 5130 · CGS-... | -62,245.00 |
| Check | 02/10/2014 | 3018 | | 1002 · Cash-GSB ... | | 5130 · CGS-... | -64,656.63 |
| Check | 03/05/2014 | 1465 | | 1003 · Cash-GSB ... | | 5130 · CGS-... | -51,805.26 |
| Check | 04/10/2014 | 3063 | | 1002 · Cash-GSB ... | | 5130 · CGS-... | -75,664.15 |
| Check | 04/29/2014 | 2902 | | 1002 · Cash-GSB ... | | 5130 · CGS-... | -54,480.52 |

136

| VELVIN OIL COMPANY, INC, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| Plaintiff | § | |
| | § | |
| v. | § | RUSK COUNTY, TEXAS |
| | § | |
| A.J.P. OIL COMPANY, LLC | § | |
| d/b/a/ GRAPELAND FUEL & BBQ | § | |
| and ANDREW J. PATTON, | § | 4th JUDICIAL DISTRICT |
| Defendants | § | |

## ORDER GRANTING NEW TRIAL

After considering Defendants' Motion for New Trial, the response, the pleadings and arguments of counsel, the Court GRANTS the motion and orders a new trial.

It is therefore ORDERED that the trial herein is set for _____, 2015.

SIGNED on _____, 2015.

_____
PRESIDING JUDGE

137

No. 2014-362

| | | |
|---|---|---|
| VELVIN OIL COMPANY, INC, <br> Plaintiff | § <br> § <br> § | IN THE DISTRICT COURT OF |
| v. | § <br> § | RUSK COUNTY, TEXAS |
| A.J.P. OIL COMPANY, LLC <br> d/b/a/ GRAPELAND FUEL & BBQ <br> and ANDREW J. PATTON, <br> Defendants | § <br> § <br> § <br> § | 4th JUDICIAL DISTRICT |

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE
## TO MOTION FOR NEW TRIAL

Defendants, A.J.P. OIL COMPANY, LLC, d/b/a/ GRAPELAND FUEL & BBQ, and

ANDREW J. PATTON, ask the Court to grant a new trial in the interest of justice and fairness.

In reply to Plaintiff Velvin Oil Company, Inc.'s Response to Motion for New Trial

("Response"), Defendants would show as follows:

### ARGUMENTS & AUTHORITIES

1. **New trial must be granted because a suit involving the same parties and subject matter was pending at the filing of this suit, Plaintiff's claim brought here is a compulsory counterclaim to Defendants' claims brought in the first-filed suit, and abatement of this suit is proper.**

In it's Response, Plaintiff asserts that the Motion for New Trial should be denied because this matter and the first-filed suit do not involve the same parties and subject matter. Plaintiff fails to produce any law supporting this assertion.

Plaintiff does not dispute that this suit is a second-filed, non-dominant suit and that the first-filed suit in Houston County was brought to the Court's attention in a timely manner.

138

Rather, Plaintiff is contending these suits are not substantially interrelated. "In determining whether an inherent interrelationship exists, courts should be guided by the rule governing persons to be joined if feasible and the compulsory counterclaim rule." *Wyatt v. Shaw Plumbing,* 760 S.W.2d 245, 247 (Tex. 1988); Tex.R.Civ.P. 39, 97(a).

The facts in *Wyatt v. Shaw* closely track those at hand. In *Wyatt,* Wyatt and Shaw entered into a contract regarding plumbing services. When Wyatt refused to pay for worthless and faulty services provided by Shaw, "Shaw made a written demand for payment. Following Shaw's demand letter, Wyatt filed suit against Shaw in [Wyatt's county of choice] alleging fraud and violation of the Deceptive Trade Practices Act." *Wyatt* at 246. Shortly thereafter Shaw filed a breach of contract suit in Shaw's county of choice to recover for the disputed services it provided. Finding that Wyatt's claim would be res judicata against Shaw's claim, the court held that the two suits were inherently interrelated. The court further explained, "Shaw Plumbing should have brought its compulsory counterclaim on the contract in Wyatt's tort and DTPA suit in Duval County ... since Wyatt filed suit first, he chose Duval County." *Id* at 248.

The facts at hand are identical to *Wyatt.* Here, Defendants purchased goods from Plaintiff. Plaintiff's goods turned out to be worthless and faulty. Defendants verbally communicated to Plaintiff that it would not pay for the worthless goods, and further refused to pay by directing that payments made by Defendants to Plaintiff for subsequently delivered goods were not to be applied to the worthless goods. *See Exhibit D to Motion for New Trial.* As is evidenced by the record and correspondence between the parties and their counsel, Defendants clearly communicated to Plaintiff that Defendants were only continuing to do business with Plaintiff because of Plaintiff's representations that Defendants' damages from the worthless fuel would be "made right". *See Exhibit A to Motion for New Trial.* Plaintiff's Counsel's own letter of

2

September 2014 shows that all parties involved understand both suits to concern the exact same subject-matter. Like in *Wyatt,* when Plaintiff did not make good on its promises, Defendants sued Plaintiff for the worthless goods provided. <u>Defendants' Original Petition in the first-filed suit lists as damages the exact amount in worthless fuel as is complained of in this matter.</u> *See Exhibit A to Motion for New Trial – Original Petition of First-Filed Suit listing "$31,760.45 in out-of-pocket damages for the worthless diesel fuel delivered".* The fact that the amount sued for in the matter at hand differs slightly only results from the three months of interest charged on Defendants' account between the time Defendants' DTPA notice letter was sent to Plaintiff (July 30, 2014) and when Plaintiff filed this suit (November 19, 2014). This is further evidenced by Plaintiff's own documentation produced during discovery.

Because the record clearly shows that the subject matter of this matter and the first-filed suit are inherently interrelated, the Court must grant a new trial so that this suit may be properly abated pending litigation of the first-filed suit.

**2.      New trial must be granted because the first-filed suit was timely brought to the Court's attention, and abatement of this suit is proper.**

In it's Response, Plaintiff asserts that the Motion for New Trial should be denied because Defendants have not yet raised a plea in abatement. Plaintiff fails to produce any law supporting this assertion.

Case law makes clear that a plea in abatement raised following judgment is seasonable when the pendency of a prior suit has been shown in the pleadings. *See, e.g. Ex Parte Lillard,* 314 S.W.2d 800, 805 (Tex. 1958); *Beckman v. Beckman,* 716 S.W.2d 83 (Tex.App.—Dallas 1986). Defendants timely brought the first-filed suit to the attention of this Court in their initial pleading and Motion to Transfer Venue, attaching as evidence a file-stamped copy of the prior

3

Original Petition and an affidavit of Defendant Andrew J. Patton stating that litigation over the same facts was already pending.

Because Plaintiff has not and cannot refute these facts or provide case law showing a contrary rule, new trial must be granted because notice of the first-filed suit was timely brought to the Court's attention and abatement of this matter is proper.

**3.      New trial must be granted because judicial notice of controverted attorney's fees under Civil Practice and Remedies Code § 38.001 and 38.004 is improper on summary judgment.**

In it's Response, Plaintiff asserts that the Motion for New Trial should be denied because there is no fact question regarding the reasonableness of Plaintiff's attorney fees. Plaintiff contends that "the court does not need to hear any evidence in connection with attorney's fees as Plaintiff's cause was brought as a suit on sworn account and on a contract" under Texas Civil Practice and Remedies Code §38.004. However, the law produced by Plaintiff in support of this assertion is incomplete and incorrect.

Although Texas Civil Practice and Remedies Code §38.004 does allow judicial notice to be taken of attorney's fees in a suit on sworn account, judicial notice of attorney's fees CANNOT be taken when the summary judgment record contains evidence controverting the reasonableness of attorney's fees. *See, e.g. Guity v. C.C.I. Enter. Co.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Rosenblatt v. Freedom Life*, 240 S.W.3d 315, at 321(Tex. App. 2007); *McGlown v. Ashford Park* (Tex.App.- Houston [1st Dist.] Jun. 11, 2009); *Grace v. Duke*, 54 S.W.3d 338, 344 (Tex. App—Austin 2001, pet. denied) (holding that attorney fee award in summary judgment proceeding not proper if amount disputed). Courts have more

4

specifically found that summary judgment is improper when the moving party's affidavit in support of attorney's fees is contested by an affidavit of opposing counsel. *Cammock the Cook, LLC v. Eastburn*, 296 S.W.3d 884, 894 (Tex. App—Texarkana 2009, pet. denied) (holding that "summary judgment award of attorney's fees is improper where the nonmovant produces a controverting affidavit regarding fees").

Here, by Plaintiff's own admission its proof regarding attorney's fees is inadequate under the rules and requires the Court to take judicial notice. Case law clearly shows that summary judgment is improper when attorney's fees are controverted. Because Defendants have contested the reasonableness of Plaintiff's attorney's fees multiple times, including in an affidavit of Defendants' counsel, judicial notice cannot be taken in this matter and summary judgment is improper. *See D's Response to Motion for Summary Judgment and attached Affidavit of William Pemberton, Counsel for Defendants.*

Accordingly, the Court must grant a new trial because it erred by granting Plaintiff's Motion for Summary Judgment. There is a disputed fact issue regarding the unreasonableness of attorney's fees sought by Plaintiff, which must be submitted to the jury.

**4. New trial must be granted because there are disputed fact issues regarding Defendants' defense of payment and the validity of finance charges included in Plaintiff's alleged damages, which must be submitted to a jury.**

In it's Response, Plaintiff asserts that the Motion for New Trial should be denied because Plaintiff had a right to direct appropriation of Defendants' payments. Plaintiff fails to produce any law supporting this assertion, and incorrectly quotes the law rested on by Defendants.

When a debtor has directed the application of payment by written or verbal communication, the "true rule seems to be, first, the debtor has the absolute right to direct appropriation of payment." *Phillips v. Herndon*, 78 Tex. 378, 14 S. W. 857, 859 (Tex. 1890). Plaintiff misapplies this quote and rule to *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510-11 (Tex. 1995), a medical malpractice case not relied on by Defendants. Further case law shows that a creditor is not bound by a debtor's underlined *uncommunicated intentions* as to the application of payment. *Carey v. Ellis*, 46 S.W.2d 1012 (Tex.Civ . App.—San Antonio 1932, no writ).

Here, Defendants communicated their intention early and often. It is evident from the record that Defendants intended for payments made following delivery of the worthless and disputed diesel fuel on December 4, 2013 not to be applied to said disputed diesel fuel. The first payment made by Defendants following the delivery of the disputed fuel noted that it was to be made towards "gasoline only". A subsequent payment noted that it was to be applied only to specific non-disputed invoices. Further, Defendants verbally made known to Plaintiff on many occasions that payment was not to be applied to the disputed fuel, as is sworn to in multiple affidavits of Defendant in the Court's record. *See Defendants' Original Answer and Motion for New Trial*. That Plaintiff was aware of Defendants' intention that payment not be applied to the disputed fuel is obvious—payments were not applied to the disputed fuel until Defendants made clear they intended to pursue the DTPA claim of the filed-first suit.

Defendants' written and verbal communications to Plaintiff clearly show Defendants' intention that payments made after December 4, 2013 were to be applied only to subsequent, non-disputed fuel shipments. Defendants had the absolute right to direct appropriation of payments made to Plaintiff, and exercised that right by including language on checks paid to Plaintiff, and by making verbal directions to Plaintiff. Accordingly, the Court must grant a new

6

143

trial because there are disputed fact issues about whether payment was made on the invoices sued for, and whether finance charges made the basis of Plaintiff's sworn account are due and owing, which must be submitted to the jury.

## PRAYER

For these reasons, and in the interest of justice and fairness, Defendants respectfully ask the Court to grant a new trial.

Respectfully submitted,

JACLYN D. PATTON
TX Bar No. 24085521
639 Heights Boulevard
Houston, Texas 77007
PH: (713) 730-9446
FX: (713) 583-4180
jaclyn@txestateplanning.com

WILLIAM R. PEMBERTON
William R. Pemberton, P.C.
P. O. BOX 1112
Crockett, Texas 75835

ATTORNEYS FOR DEFENDANTS

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served upon the following counsel of record by electronic service and facsimile on August 3, 2015.

JACLYN D. PATTON

Mr. Ronnie Horsley
P.O. Box 7017
Tyler, Texas 75711
Via Email: horsleylaw@tyler.net
Via Facsimile: (903) 593-3450

8

145

No: 2014-362

| | | |
|---|---|---|
| VELVIN OIL COMPANY, INC. | § | IN THE DISTRICT COURT |
| | § | RUSK COUNTY DISTRICT CLERK |
| VS. | § | 4TH JUDICIAL DISTRICT BY_____ DEPUTY |
| | § | |
| A.J.P. OIL COMPANY, LLC d/b/a | § | |
| GRAPELAND FUEL & BBQ; and | § | |
| ANDREW J. PATTON | § | RUSK COUNTY, TEXAS |

## ORDER

The Court having heard the Defendant's Motion for New Trial on this day finds

same should be denied and it is

ORDERED, ADJUDGED, and DECREED that the Motion for New Trial filed

herein be in all things DENIED.

SIGNED this __20__ day of __August__, 2015.

JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE

LAW OFFICE OF RONNIE HORSLEY

BY:_____

RONNIE HORSLEY
P. O. Box 7017
Tyler, Texas   75711
Telephone:   (903) 593-7314
Facsimile:   (903) 593-3450
Email: horsleylaw@tyler.net
Texas Bar Card No. 10014000

No. 2014-362

| | | |
|---|---|---|
| VELVIN OIL COMPANY, INC, | § | IN THE  DISTRICT COURT OF |
| Plaintiff | § | |
| | § | |
| v. | § | RUSK COUNTY, TEXAS |
| | § | |
| A.J.P. OIL COMPANY, LLC | § | |
| d/b/a/ GRAPELAND FUEL & BBQ | § | |
| and ANDREW J. PATTON, | § | 4th JUDICIAL DISTRICT |
| Defendants | § | |

## NOTICE OF APPEAL

TO THE HONORABLE COURT:

A.J.P. Oil Company, LLC d/b/a Grapeland Fuel & BBQ, and Andrew J. Patton,

Defendants, give notice of their intent to appeal the trial court's Judgment rendered on June 4,

2015, in Cause No. 2014-362 entitled Velvin Oil Company, Inc. vs. A.J.P. Oil Company, LLC

d/b/a Grapeland Fuel & BBQ, and Andrew J. Patton, in the 4th Judicial District of Rusk County,

Texas.

This appeal is taken to the Sixth Court of Appeals in Texarkana, Texas. This is not a

parental termination or child protection case as defined in Appellate Rule 28.4.

Respectfully submitted,

 /s/  Jaclyn D. Patton
JACLYN D. PATTON
TX Bar No. 24085521
639 Heights Boulevard
Houston, Texas 77007
PH:  (713) 730-9446
FX:  (713) 583-4180
jaclyn@txestateplanning.com

147

**Arthur Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812 (1997)**

40 Tex. Sup. Ct. J. 591

KeyCite Yellow Flag - Negative Treatment

**Declined to Extend by**     McGee v. Deere & Co.,     Tex.App.-Austin,
March 24, 2005

945 S.W.2d 812
Supreme Court of Texas.

ARTHUR ANDERSEN & CO., Petitioner,

v.

PERRY EQUIPMENT CORPORATION, Respondent.

No. 95–0444.    |    Argued March
19, 1997.    |    Decided May 16, 1997.

Purchasing corporation sued accounting firm, alleging
violations of Deceptive Trade Practices Act (DTPA) in
connection with firm's preparation of audited financial
statements of acquired corporation. The 55th District Court,
Harris County, Kathleen S. Stone, J., entered judgment for
purchasing corporation, and the Houston Court of Appeals,
First District, 898 S.W.2d 914, affirmed. On writ of error,
the Supreme Court, Cornyn, J., held that: (1) purchasing
corporation was "consumer" under DTPA although it did not
pay for audit; (2) failure to instruct jury on proper measure of
direct damages was reversible error; and (3) award of attorney
fees under DTPA had to be dollar amount, not percentage of
judgment.

Reversed and remanded.

West Headnotes (19)

**[1]**    **Antitrust and Trade Regulation**
  Accountants and tax preparers

For purposes of Deceptive Trade Practices
Act (DTPA) claim against accounting firm,
purchasing corporation was a "consumer,"
although it did not pay for audit, where
purchasing corporation insisted as condition of
sale that acquired corporation provide audited
financial statements, acquired corporation hired
accounting firm for that purpose, purchasing
corporation then relied on those statements
in reaching its decision to purchase acquired

corporation, and accounting firm was aware that
purchasing corporation had required audit and
would rely on its accuracy and knew specific
purpose for which it was conducted. V.T.C.A.,
Bus. & C. § 17.45(4).

23 Cases that cite this headnote

**[2]**    **Antitrust and Trade Regulation**
  Consumers, purchasers, and buyers;
 consumer transactions

In determining whether plaintiff is consumer
under Deceptive Trade Practices Act (DTPA),
focus is on plaintiff's relationship to transaction.
V.T.C.A., Bus. & C. § 17.45(4).

19 Cases that cite this headnote

**[3]**    **Antitrust and Trade Regulation**
  Measure and amount

Under Deceptive Trade Practice Act (DTPA),
amount of actual damages recoverable is total
loss sustained as result of deceptive trade
practice. V.T.C.A., Bus. & C. § 17.50(b)(1).

2 Cases that cite this headnote

**[4]**    **Antitrust and Trade Regulation**
  Grounds and Subjects

Under Deceptive Trade Practices Act (DTPA),
actual damages are those damages recoverable
under common law, either direct or
consequential. V.T.C.A., Bus. & C. § 17.50(b)
(1).

13 Cases that cite this headnote

**[5]**    **Damages**
  Direct or indirect consequences

Direct damages are necessary and usual result of
defendant's wrongful act; they flow naturally and
necessarily from the wrong.

49 Cases that cite this headnote

**Arthur Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812 (1997)**

40 Tex. Sup. Ct. J. 591

**[6]** **Damages**

🔑 Direct or indirect consequences

Direct damages compensate plaintiff for loss that is conclusively presumed to have been foreseen by defendant from his wrongful act.

22 Cases that cite this headnote

**[7]** **Damages**

🔑 Proximate or Remote Consequences

Consequential damages result naturally, but not necessarily, from defendant's wrongful acts; under common law, they need not be usual result of the wrong, but they must be foreseeable, and must be directly traceable to wrongful act and result from it.

67 Cases that cite this headnote

**[8]** **Antitrust and Trade Regulation**

🔑 Reliance; causation; injury, loss, or damage

Foreseeability is not an element of producing cause under Deceptive Trade Practices Act (DTPA). V.T.C.A., Bus. & C. § 17.50(b)(1).

1 Cases that cite this headnote

**[9]** **Antitrust and Trade Regulation**

🔑 Grounds and Subjects

Under Deceptive Trade Practices Act, if damages are too remote, too uncertain, or purely conjectural, they cannot be recovered. V.T.C.A., Bus. & C. § 17.50(b)(1).

10 Cases that cite this headnote

**[10]** **Fraud**

🔑 Difference between actual and represented value

**Fraud**

🔑 Difference between value and price paid

Under common law, direct damages for misrepresentation are measured either by out-

of-pocket damages, which measure difference between value buyer has paid and value of what he has received, or by benefit-of-the-bargain damages, which measure difference between value as represented and value received.

42 Cases that cite this headnote

**[11]** **Antitrust and Trade Regulation**

🔑 Measure and amount

Under Deceptive Trade Practices Act (DTPA), plaintiff may recover under damage theory that provides greater recovery, either out-of-pocket damages or benefit-of-the-bargain damages. V.T.C.A., Bus. & C. § 17.50(b)(1).

24 Cases that cite this headnote

**[12]** **Antitrust and Trade Regulation**

🔑 Measure and amount

Under Deceptive Trade Practices Act(DTPA), both out-of-pocket and benefit-of-the-bargain measure of damages are determined at time of sale. V.T.C.A., Bus. & C. § 17.50(b)(1).

29 Cases that cite this headnote

**[13]** **Antitrust and Trade Regulation**

🔑 Instructions

**Appeal and Error**

🔑 Failure or refusal to charge

Failure to instruct jury on proper measure of direct damages on purchasing corporation's claim under Deceptive Trade Practices Act (DTPA) regarding accounting firm's audit of acquired corporation was reversible error, where jury was not asked to find direct damages at time of sale as well as consequential damages attributable to accounting firm's misrepresentations, but was simply asked to consider purchase price as part of overall damages, and purchasing corporation did not establish how much of its loss was attributable to accounting firm. V.T.C.A., Bus. & C. § 17.50(b)(1).

40 Tex. Sup. Ct. J. 591

17 Cases that cite this headnote

**[14]     Antitrust and Trade Regulation**
   Grounds and Subjects

Under Deceptive Trade Practice Act, losses subsequent to time of sale are recoverable only if misrepresentation is producing cause of loss. V.T.C.A., Bus. & C. § 17.50(b)(1).

Cases that cite this headnote

**[15]     Fraud**
   Reliance on Representations and Inducement to Act

Basis of a misrepresentation claim is that defendant's false statement induced plaintiff to assume risk he would not have taken had truth been known.

1 Cases that cite this headnote

**[16]     Antitrust and Trade Regulation**
   Grounds and Subjects

Plaintiff's recovery of damages under Deceptive Trade Practices Act (DTPA) is limited not only by his own evidence, but also by defendant's evidence of plaintiff's failure to reasonably mitigate losses or evidence of intervening causes.

4 Cases that cite this headnote

**[17]     Attorney and Client**
   Construction and Operation of Contract

Attorney contingency fee contracts allow plaintiffs who cannot afford to pay a lawyer up-front to pay lawyer out of any recovery, and, because they offer potential of greater fee than might be earned under hourly billing method, compensate attorney for risk that attorney will receive no fee whatsoever if case is lost.

149 Cases that cite this headnote

**[18]     Antitrust and Trade Regulation**
   Proceedings to impose;  evidence

Party's contingent fee agreement should be considered by fact finder, and is therefore admissible in evidence, but that agreement cannot alone support award of attorney's fees under Deceptive Trade Practices Act (DTPA). V.T.C.A., Bus. & C. § 17.50(d); State Bar Rules, V.T.C.A., Government Code Title 2, Subtitle G App., Art. 10, § 9, Rules of Prof.Conduct, Rule 1.04(b)(8).

135 Cases that cite this headnote

**[19]     Antitrust and Trade Regulation**
   Attorney fees
**Antitrust and Trade Regulation**
   Proceedings to impose;  evidence

To recover attorney's fees under Deceptive Trade Practices Act (DTPA), plaintiff must prove that amount of fees was both reasonably incurred and necessary to prosecution of case, and must ask jury to award fees in specific dollar amount, not as percentage of judgment. V.T.C.A., Bus. & C. § 17.50(d); State Bar Rules, V.T.C.A., Government Code Title 2, Subtitle G App., Art. 10, § 9, Rules of Prof.Conduct, Rule 1.04.

227 Cases that cite this headnote

**Attorneys and Law Firms**

**\*813**  Ben Taylor, Dallas, Thomas C. Godbold, Houston, for Petitioner.

Christopher B. Allen, Michael P. Cash, James W. Paulsen, Houston, for Respondent.

**Opinion**

CORNYN, Justice.

We withdraw our opinion of January 10, 1997, and substitute the following in its place. The parties' motions for rehearing are overruled.

Schultz, William 10/26/2015
For Educational Use Only

**\*814** In this accounting malpractice case, Perry Equipment Corporation (PECO) sued the accounting firm of Arthur Andersen for a faulty audit, which PECO relied on to purchase another company, Maloney Pipeline Systems. The audit favorably reported Maloney's financial condition when, in fact, the company was suffering substantial losses. Fourteen months after the sale, Maloney filed for bankruptcy. PECO sued for violations of the Deceptive Trade Practice Act, fraud, negligence, negligent misrepresentation, gross negligence, and breach of implied warranty. Based on the jury's verdict, the trial court rendered judgment for PECO. The court of appeals affirmed. 898 S.W.2d 914.

We address three issues presented by Arthur Anderson's application for writ of error. First, Arthur Andersen challenges PECO's consumer status because Maloney, rather than PECO, actually paid for the audit. Second, Arthur Andersen claims that the trial court failed to instruct the jury on the correct measure of damages. Third, Arthur Andersen contests the attorney's fees award, arguing that the percentage of recovery method is not a proper measure of attorney's fees under the DTPA, and that even if such fees were recoverable, no evidence supports the award. For the reasons discussed below, we reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings.

# I

When PECO, a successful manufacturer of oil filters used in compressors for gas pipelines, decided to expand its business into the gas metering field, it looked into acquiring Maloney Pipeline Systems, one of three United States companies in the liquid metering market. In the mid–1980s, PECO began negotiating with Maloney's owner, Ramteck II. As a condition of the sale, PECO required an audit of Maloney's financial statements. Maloney retained Arthur Andersen to conduct the audit. Maloney eventually provided PECO financial statements audited by Arthur Andersen. The statements showed Maloney to be a profitable business. Relying upon this information, on August 23, 1985, PECO purchased the Maloney stock from Ramteck II, Inc. for $4,088,237.

Soon after the purchase, Maloney began to show signs of serious financial decline. For example, three months after the sale, Maloney ran out of cash and required a $400,000 advance from PECO to continue operating. PECO also attempted other emergency financial measures, but to no avail. Fourteen months after the sale, Maloney filed bankruptcy. PECO presented uncontradicted evidence at trial that the purchase price for Maloney was a total loss from which PECO realized no return and which PECO wrote off.

PECO's experts testified that Arthur Andersen's audit contained serious errors and otherwise failed to follow acceptable auditing procedures. One of the most significant errors, the evidence showed, was the failure to verify that contracts Maloney reported as complete were in fact complete or that Maloney's estimates of costs and percentage of completion for ongoing contracts were accurate. Maloney later incurred substantial losses on these contracts. One expert testified that the audit was one of the worst he had ever seen. Another expert, an auditing professor, stated that if a student submitted the work, he would have given the student a failing grade.

The jury found Arthur Andersen 51 percent at fault and PECO 49 percent at fault. The jury also found that Arthur Andersen had committed fraud, DTPA violations, and breach of warranty, but that it was not liable for negligent misrepresentation or gross negligence. The jury assessed damages of $5,449,468, including the $4,088,237 PECO paid for Maloney and $1,361,231 for other expenses incurred by PECO in its attempt to salvage the company. PECO elected to recover under the DTPA. The trial court credited Arthur Andersen with the two million dollars that Ramteck II had already paid PECO in settlement, and then awarded PECO a total of $9,297,601.20, including damages, prejudgment interest, DTPA additional damages, attorney's fees, and costs.

# \*815 II

[1] [2] Arthur Andersen first contends that PECO is not a "consumer," a prerequisite to recovery under the DTPA. The DTPA defines a consumer as one "who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM.CODE § 17.45(4). In determining whether a plaintiff is a consumer, our focus is on the plaintiff's relationship to the transaction. *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 650 (Tex.1996). As a condition of sale, PECO

insisted that Maloney provide audited financial statements. Maloney hired Arthur Andersen for this specific purpose. PECO then relied on those statements in reaching its decision to purchase Maloney. Under these circumstances, we hold that PECO sought and acquired Arthur Andersen's services.

The next question is whether PECO sought and acquired these services *by purchase or lease,* inasmuch as it did not pay for the audit. Our decision in _Kennedy v. Sale,_ 689 S.W.2d 890 (Tex.1985), controls this issue. There, we held that the DTPA does not require the consumer to be an actual purchaser or lessor of the goods or services, as long as the consumer is the beneficiary of those goods or services. _Id._

The Texas Society of Certified Public Accountants, as amicus curiae, argues that a stock purchaser should not be considered a consumer simply because the corporation paid for an audit for the purchaser's benefit because virtually every external audit benefits third parties. Thus, any stock purchaser who reviews audited financial statements could bring a DTPA claim against the auditor.[1] Our holding is not so broad. In this case, the audit was rendered in connection with the sale of Maloney and was specifically required by PECO and intended to benefit PECO. Arthur Andersen was aware that PECO had required the audit and would rely on its accuracy and knew the specific purpose for which it was conducted. We accordingly hold that PECO is a consumer under the DTPA.

Arthur Andersen also urges us to reject PECO's consumer status based on the decision in _Hand v. Dean Witter Reynolds Inc.,_ 889 S.W.2d 483 (Tex.App.—Houston [14th Dist.] 1994, writ denied). In _Hand,_ the plaintiff alleged that her stock broker failed to purchase certain commodity option contracts after she requested that he do so. _Id._ at 487–88. After deciding that a commodity option contract is a right, not a "good," under the DTPA, _id._ at 498, the court next considered whether the plaintiff was a consumer by virtue of her purchase of "services." The DTPA defines services as including "services furnished in connection with the sale or repair of goods." TEX. BUS. & COM.CODE § 17.45(2). The court reasoned that the omission of any reference in the definition to services in connection with the sale of something other than a good indicated that services furnished in connection with the sale of intangibles did not fall within the definition of services under the DTPA. _Hand,_ 889 S.W.2d at 498. The court then concluded: "The key to the [consumer status] determination is whether the purchased goods or services are an objective of the transaction or merely incidental to it." _Id._ at 500.

We believe that _Hand_ confirms, rather than defeats, PECO's consumer status. Arthur Andersen's audit was not merely incidental to the sale of Maloney to PECO; it was required by PECO and was central to PECO's decision to consummate the purchase. Determining Maloney's financial condition was PECO's primary objective in acquiring Arthur Andersen's services. We therefore reject Arthur Andersen's contention that _Hand_ defeats PECO's status as a consumer under the DTPA.

### III

Arthur Andersen next complains that the jury charge allowed the jury to award PECO the entire purchase price of Maloney, without instructing the jury to subtract the value of Maloney stock at the time of the sale.[2] Arthur **\*816** Andersen also contends that even if the court had properly instructed the jury, PECO failed to introduce any evidence that the stock was valueless at the time of sale, and thus failed to establish that it was entitled to the entire purchase price under either the "benefit-of-the-bargain" or the "out-of-pocket" measure of damages. PECO responds that in addition to direct damages, consequential damages are also recoverable under the DTPA. PECO thus argues that it is entitled to recover the purchase price as consequential damages.

**[3]** Under the version of the DTPA in effect at the time PECO brought this action, a consumer could recover "the amount of actual damages" caused by the defendant's false, misleading, or deceptive conduct. TEX. BUS. & COM.CODE § 17.50(b)(1).[3] The amount of actual damages recoverable is "the total loss sustained as a result of the deceptive trade practice." _Kish v. Van Note,_ 692 S.W.2d 463, 466 (Tex.1985)(citing _Smith v. Baldwin,_ 611 S.W.2d 611, 617 (Tex.1980)).

**[4]** **[5]** **[6]** Actual damages are those damages recoverable under common law. _Brown v. American Transfer & Storage Co.,_ 601 S.W.2d 931, 939 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). At common law, actual damages are either "direct" or "consequential." _Henry S. Miller Co. v. Bynum,_ 836 S.W.2d 160, 163

(Tex.1992) (Phillips, C.J., concurring); see RESTATEMENT (SECOND) OF TORTS § 549 (1977) (outlining measure of damages for fraudulent misrepresentation). Direct damages are the necessary and usual result of the defendant's wrongful act; they flow naturally and necessarily from the wrong. *See Southwind Aviation, Inc. v. Avendano,* 776 S.W.2d 734, 736 (Tex.App.—Corpus Christi 1989, writ denied); *Anderson Dev. Corp. v. Coastal States Crude Gathering Co.,* 543 S.W.2d 402, 405 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Direct damages compensate the plaintiff for the loss that is conclusively presumed to have been foreseen by the defendant from his wrongful act. *See Bynum,* 836 S.W.2d at 163 (Phillips, C.J., concurring); *Coastal States,* 543 S.W.2d at 405; Anderson, *Incidental and Consequential Damages,* 7 J.L. & COM. 327, 328 (1987).

 **[7]**    **[8]**    **[9]**    Consequential damages, on the other hand, result naturally, but not necessarily, from the defendant's wrongful acts. *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 182 (Tex.1995); *Moore v. Anderson,* 30 Tex. 224, 230 (1867). Under the common law, consequential damages need not be the usual result of the wrong, but must be foreseeable, *see Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 687 (Tex.1981), and must be directly traceable to the wrongful act and result from it. *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.,* 847 S.W.2d 289, 295 (Tex.App.—El Paso 1992, writ denied); *El Paso Dev. Co. v. Ravel,* 339 S.W.2d 360, 363 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.). Of course, foreseeability is not an element of producing cause under the DTPA. *See Haynes & Boone,* 896 S.W.2d at 182; *Prudential Ins. v. Jefferson Assocs.,* 896 S.W.2d 156, 161 (Tex.1995). Still, if damages are too remote, too uncertain, or purely conjectural, they cannot be recovered. *See White v. Southwestern Bell Tel. Co., Inc.,* 651 S.W.2d 260, 262 (Tex.1983); *see also Bynum,* 836 S.W.2d at 164 (Phillips, C.J., concurring).

 ***817** **[10]**    **[11]**    **[12]**    Under Texas common law, direct damages for misrepresentation are measured in two ways. *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988); *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984). Out-of-pocket damages measure the difference between the value the buyer has paid and the value of what he has received; benefit-of-the-bargain damages measure the difference between the value as represented and the value received. *Leyendecker,* 683 S.W.2d at 373. Under the DTPA, a plaintiff may recover under the

damage theory that provides the greater recovery. *Id.* Both measures of damages are determined at the time of sale. *See id.* at 373 (out-of-pocket damages are measured at the time of sale); *see also* Bullion, *An Understanding of Damages Recoverable Under the DTPA,* 20 ST. MARY'S L.J. 667, 670–72 (1989).

 **[13]**    In this case, the jury was not asked to find direct damages at the time of the sale as well as consequential damages attributable to Arthur Anderson's misrepresentations. Rather, the jury was simply asked to consider the purchase price as part of the overall damages. PECO did present evidence that the purchase price was eventually a total loss. There was also evidence that Maloney was losing money at the time of the sale and continued to do so until it declared bankruptcy. What PECO did not establish, however, was how much of its loss occurred at the time of the sale and how much was attributable to subsequent events for which Arthur Anderson should bear legal responsibility. If subsequent losses were caused by Arthur Andersen's wrongful conduct and were not simply part of the risk a buyer of the business would have assumed, they may be part of PECO's consequential damages.

 **[14]**    **[15]**    Subsequent losses, however, are recoverable only if the misrepresentation is a producing cause of the loss. *See Haynes & Boone,* 896 S.W.2d at 182. Without this limitation, an investor could shift the entire risk of an investment to a defendant who made a misrepresentation, even if the loss were unrelated to the misrepresentation. The basis of a misrepresentation claim is that the defendant's false statement induced the plaintiff to assume a risk he would not have taken had the truth been known. But to allow the plaintiff to transfer the entire risk of loss associated with his investment, even risks that the plaintiff accepted knowingly or losses that occurred through no fault of the defendant, would unfairly transform the defendant into an insurer of the plaintiff's entire investment.

Because the charge failed to instruct the jury on the proper measure of direct damages, the submission was reversible error. But, because we find some evidence that Arthur Andersen's misrepresentation was a producing cause of PECO's loss, we remand this case for a new trial. *See Spencer v. Eagle Star Ins. Co.,* 876 S.W.2d 154, 157 (Tex.1994) (holding that remand is proper when defective liability question is submitted); *Jackson v. Fontaine's Clinics, Inc.,*

Schultz, William 10/26/2015
For Educational Use Only

40 Tex. Sup. Ct. J. 591

499 S.W.2d 87, 90 (Tex.1973) (remanding for new trial when defective damages question submitted); *Moulton v. Alamo Ambulance Serv., Inc.,* 414 S.W.2d 444, 449–50 (Tex.1967) (affirming remand for new trial when defective damages question submitted).

**[16]** We emphasize that a plaintiff's recovery of damages is limited not only by his own evidence, but also by the defendant's evidence of the plaintiff's failure to reasonably mitigate losses or evidence of intervening causes. *See Dubow v. Dragon,* 746 S.W.2d 857, 860 (Tex.App.—Dallas 1988, no writ); EDGAR & SALES, TEXAS TORTS & REMEDIES § 43.04[1][b]; Tschoepe et al., *Aspects of Defending A Texas Deceptive Trade Practices–Consumer Protection Act Claim,* 20 ST. MARY'S L.J. 527, 561 (1989). If a plaintiff's losses are attributable to his own mistakes or factors outside either of the parties' control, the defendant may be entitled to an appropriate limiting instruction to the jury.

**IV**

Because we are remanding this case for a new trial, we turn now to Arthur Andersen's complaint that the trial court improperly awarded PECO attorney's fees calculated as a percentage of recovery. [4]

**\*818 [17]** Attorney contingency fee contracts serve two main purposes. First, they allow plaintiffs who cannot afford to pay a lawyer up-front to pay the lawyer out of any recovery. *See* See, *An Alternative to the Contingent Fee,* 1984 UTAH L.REV. 485, 490 n. 14. Second, such contracts, because they offer the potential of a greater fee than might be earned under an hourly billing method, compensate the attorney for the risk that the attorney will receive no fee whatsoever if the case is lost. *Id.* The lawyer in effect lends the value of his services, which is secured by a share in the client's potential recovery. POSNER, ECONOMIC ANALYSIS OF LAW § 21.9 (4th ed.1992). Under some contingency fee contracts, the attorney also agrees to advance the out-of-pocket costs of the litigation. In such cases, the attorney not only risks loss of the fee, but also risks loss of actual expenditures.

Arthur Andersen complains that an award of contingency fees under a fee-shifting statute like the DTPA forces defendants to pay fees unrelated to the amount of work performed. While

this is not always true, shifting these fees to the defendant presents two problems.

First, a contingent fee award based solely on evidence of a percentage fee agreement between a lawyer and client may be determined without regard to many of the factors that should be considered when determining reasonableness. The DTPA allows recovery of "reasonable and necessary attorneys' fees." TEX. BUS. & COM.CODE § 17.50(d). Factors that a factfinder should consider when determining the reasonableness of a fee include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. (STATE BAR RULES, art. X, § 9); *see also Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex.1990); *cf. General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 960–961 (Tex.1996) (discussing the relative strengths and weaknesses of the contingent fee and lodestar methods of awarding attorneys fees in the context of a court-approved class action settlement). While we do not doubt that many plaintiffs must contract for a contingent fee to secure the services of a lawyer, we do not believe that the DTPA

authorizes the shifting of the plaintiff's entire contingent fee to the defendant without consideration of the factors required by the Rules of Professional Conduct. A contingent fee may indeed be a reasonable fee from the standpoint of the parties to the contract. But, we cannot agree that the mere fact that a party and a lawyer have agreed to a contingent fee means that the fee arrangement is in and of itself reasonable for purposes of shifting that fee to the defendant.

 **[18]**  A party's contingent fee agreement should be considered by the factfinder, see TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(b)(8), and is therefore admissible in evidence, but that agreement cannot alone support an award of attorney's fees under Texas Business and Commerce Code section 17.50(d). *See* Brister, *Proof of Attorney's Fees in Texas,* 24 ST. MARY'S L.J. 313, 324 (1993). In other words, the plaintiff cannot simply ask the jury to award a percentage of  **\*819**  the recovery as a fee because without evidence of the factors identified in Disciplinary Rule 1.04, the jury has no meaningful way to determine if the fees were in fact reasonable and necessary.

Second, because the jury is not informed what the total amount of the judgment will be, the jury can only speculate about whether a percentage of that unknown recovery will represent a reasonable and necessary fee in that particular case. Rather than leave this question to speculation, the jury must decide the question of attorney's fees specifically in light of the work performed in the very case for which the fee is sought.

 **[19]**  In light of these concerns, we hold that to recover attorney's fees under the DTPA, the plaintiff must prove that the amount of fees was both reasonably incurred and necessary to the prosecution of the case at bar, and must ask the jury to award the fees in a specific dollar amount, not as a percentage of the judgment.

For the foregoing reasons, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

**All Citations**

945 S.W.2d 812, 40 Tex. Sup. Ct. J. 591

Footnotes

1    After PECO brought this action, the Legislature amended the DTPA to preclude consumers from suing under the DTPA for professional negligence or for claims arising from transactions involving consideration of more than $500,000. TEX. BUS. & COM.CODE § 17.49(c) & (g).

2    The charge asked the jury:
     What sum of money, if any, if paid now in cash, would fairly and reasonably compensate PECO for its losses which resulted from such conduct?
        Do not increase or reduce the amount in one answer because of your answer to any other question about damages.
        ....
        ....
        Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.
        ....
        a. Purchase price of MPSI [Maloney] _____
        b. Costs and expenses incurred by PECO as a result of its purchase and ownership of MPSI [listing 13 categories of costs and expenses]

3    In 1995, the Legislature amended § 17.50(b)(1) to permit recovery of "economic damages" and, if the defendant acted knowingly, "damages for mental anguish," instead of "actual damages." Act of May 17, 1995, 74th Leg., R.S., ch. 414, 1995 Tex.Gen. Laws 2992.

4    The jury charge requested the jury to calculate attorney's fees three ways: in dollars and cents, as a percentage of PECO's recovery, and as a combination of dollars and cents and percentage of recovery.

**End of Document**                               © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 3781367
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

Court of Appeals of Texas,
Texarkana.

CIRCLE RIDGE PRODUCTION, INC., Appellant
v.
KITTRELL FAMILY MINERALS, LLC, Appellee.

No. 06–13–00009–CV.   |   Submitted
May 15, 2013.   |   Decided July 17, 2013.

On Appeal from the 241st District Court, Smith County,
Texas, Trial Court No. 12–0107–C. Jack Skeen Jr., Judge.

**Attorneys and Law Firms**

Roger W. Anderson, Gillen & Anderson, PC, Tyler, TX, for
appellant.

Clark C. Hampe Jr., James S. Robertson, Jr., Wilson,
Robertson & Cornelius, PC, Tyler, TX, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

**MEMORANDUM OPINION**

Memorandum Opinion by Justice CARTER.

**\*1**  Kittrell Family Minerals, LLC,[1] brought a declaratory
judgment[2] and conversion suit against Circle Ridge
Production, Inc., alleging that Circle Ridge failed to pay the
prescribed overriding royalties even after receiving notice of
its failure. Kittrell claimed the failure resulted in a forfeiture
of the assignment of an oil and gas lease. The trial court
granted Kittrell's motion for summary judgment.[3]

Circle Ridge argues that the trial court erred in granting
summary judgment on grounds not addressed in Kittrell's
motion, Kittrell failed to provide notice in strict compliance
with the assignment, and the lack of a signed division
order excused the nonpayment of the overriding royalty.

According to Circle Ridge, genuine issues of material fact
exist concerning the date of forfeiture and whether Circle
Ridge was entitled to receive reimbursement for good-faith
improvements. Finally, Circle Ridge argues the trial court
erred in awarding Kittrell attorney's fees.

We affirm in part and reverse in part concluding (1) the
trial court rendered judgment on grounds that were supported
by the summary judgment motions, (2) strict compliance
occurred, (3) the untimely tender of overriding royalties did
not excuse Circle Ridge's breach, (4) the untimely request
for a division order did not excuse Circle Ridge's breach,
(5) the trial court did not err in awarding attorney's fees, (6)
genuine issues of material fact exist concerning the date of
forfeiture, (7) the trial court erred in concluding Circle Ridge
committed trespass, and (8) the trial court erred in failing
to effectuate Kittrell's concession that Circle Ridge could
recover the personal property at the well site.

**I. Background Facts**

On May 15, 2009, Kittrell, then the owner of the mineral
lease, assigned the lease to Circle Ridge. The assignment
reserved an overriding royalty interest as follows:

> Commencement of overriding royalty
> payments shall not be delayed beyond
> ninety (90) days after the last day of
> the month during which production
> commences from any well. After
> the commencement of overriding
> royalty payments from any well, all
> overriding royalty payable in money
> on account of hydrocarbons and
> products associated with hydrocarbons
> produced from such well during
> each calendar month shall be paid
> by Assignee's check mailed to the
> Assignor on or before the last day
> of the second succeeding calendar
> month. Such payment shall be
> accompanied by a statement showing
> the gross amount of oil produced
> since the last report and the gross
> production of all dry gas, residue gas,
> casinghead gas and other products
> produced from the Leased Premises,

Circle Ridge Production, Inc. v. Kittrell Family Minerals, LLC, Not Reported in S.W.3d...

or lands pooled therewith, and that which was sold or used for the manufacture of gasoline and other products, and the market value of oil, dry gas, residue gas, casinghead gas and each other product produced from the Leased Premises. Overriding royalties not paid when due shall bear interest at the rate of twelve percent (12%) from their due date until paid. If royalty is not paid by such due date, Assignor may give Assignee written notice of nonpayment of the overriding royalty (via certified mail to addressed Assignee at the address shown herein), and if Assignor's overriding royalty is not paid on or before expiration of sixty (60) days from Assignee's receipt of such notice, Assignor may terminate this agreement and evict Assignee forthwith.

**\*2** The assignment specified that Circle Ridge's address was "300 East Northside Dr., Fort Worth, Texas 76106." The assignment was filed with the County Clerk of Smith County on June 11, 2009.

The lease was pooled on September 22, 2009, and production began on the pooled unit in February 2010. Having received no payments for its overriding royalty interest, Kittrell sent a letter to Circle Ridge on April 27, 2011, to "300 East Northside Dr., Fort Worth, Texas 76164–9234" demanding payment within sixty days. Despite having a different zip code than the one listed in the assignment, the letter was received by Circle Ridge at 300 East Northside Drive in Fort Worth, Texas, on April 29, 2011. On July 14, 2011, Kittrell sent a second letter demanding payment to "300 East Northside Dr., Fort Worth, Texas 76106[,]" but this letter only provided five days for payment.

Circle Ridge's first response was a letter dated August 9, 2011. Shortly thereafter, Circle Ridge sent Kittrell a division order dated August 11, 2011. In his summary judgment affidavit, Scott Kittrell, manager for Kittrell Family Minerals, LLC, stated he refused to sign the division order because the royalties had not been paid within sixty days of the notice and the division order contained an incorrect ownership interest.

On August 30, 2011, Kittrell sent Circle Ridge a letter stating, "*You are hereby advised that the Assignment is terminated and Circle Ridge has been evicted effective immediately.*" Circle Ridge continued production and, on September 30, 2011, sent Kittrell a letter and a check for $11,241.05. In a letter dated October 4, 2011, Kittrell's attorney returned the check stating, Kittrell "remains undecided in its intended course of action with regard to the unpaid royalties...." On November 21, 2011, Kittrell sent Circle Ridge a letter advising that Kittrell had "terminated the Assignment" and "locked the gates to the lease" and that continued production would be considered trespassing.

## II. Standards of Review

To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 379 (Tex.App.-Texarkana 1989, no writ). The defendant must conclusively negate at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issues of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *see Limestone Prods. Distrib., Inc. v. McNamara,* 71 S.W.2d 308, 311 (Tex.2002); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). A motion for summary judgment must stand on its own merits, and the nonmovant may argue on appeal that the movant's summary judgment proof is insufficient as a matter of law, even if the nonmovant filed no response to the motion. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000).

## III. The Trial Court Rendered Judgment on Grounds Supported by the Summary Judgment Motions

**\*3** As noted above, Circle Ridge argues the trial court granted summary judgment on grounds not addressed by Kittrell's motion.[4] Circle Ridge alleges the motion for

Schultz, William 10/26/2015
For Educational Use Only

Circle Ridge Production, Inc. v. Kittrell Family Minerals, LLC, Not Reported in S.W.3d...

summary judgment failed to address its counterclaims for mitigation of damages, breach of warranty of title, breach of contract, and conversion. [5]

Kittrell's summary judgment motion addressed the breach of contract and conversion claims. Circle Ridge's breach of contract claims were resolved when the trial court found, as addressed below, strict compliance with the forfeiture provision had occurred. The conversion claim concerned the personal property left at the well site [6] and is also discussed below.

Breach of warranty of title was not asserted as a counterclaim or mentioned in Circle Ridge's amended answer. It was first mentioned in Circle Ridge's motion for new trial. In its response to Circle Ridge's motion for new trial, Kittrell objected to the lack of any pleading on the breach of warranty of title. Because Circle Ridge failed to plead this counterclaim, the motion for summary judgment was not required to address it.

Although Circle Ridge pled in its first amended answer that "KITTRELL has failed to mitigate its damages," Circle Ridge failed to allege any facts supporting this bare allegation. Assuming, without deciding, that this minimal allegation was sufficient to give fair notice and assuming, without deciding, Kittrell waived any defect by failing to specially except, [7] Circle Ridge failed to assert this affirmative defense [8] in its summary judgment response. Because mitigation of damages is an affirmative defense, Circle Ridge had the obligation to raise it in its summary judgment response and to present summary judgment evidence. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.,* 988 S.W.2d 746, 749 (Tex.1999). "A mere pleading does not satisfy either burden." *Id.* at 749–50. Circle Ridge's response does not raise the issue of mitigation of damages. Thus, Circle Ridge failed to carry its burden to both assert the affirmative defense of mitigation of damages and support it with summary judgment evidence. *See id.*

The summary judgment motions addressed the contract and conversion claims. Circle Ridge failed to plead warranty of title and failed to assert mitigation of damages in its response. Circle Ridge's complaint that the trial court rendered summary judgment on grounds not alleged in the summary judgment motion is overruled.

## IV. Strict Compliance Occurred

Circle Ridge argues strict compliance with the terms of the assignment did not occur because the first notice contained an incorrect zip code. Kittrell responds that strict compliance occurred because the notice was received at the correct location. Kittrell alternatively argues only substantial compliance was required or actual notice with lack of prejudice is sufficient.

Texas cases have consistently required strict compliance for the termination or forfeiture of an interest in a mineral estate. "[I]f the lease contains a provision giving the lessee a right of notice of any breach or default before declaring any forfeiture, it must be 'literally complied with.' " *Vinson Minerals, Ltd. v. XTO Energy, Inc.,* 335 S.W.3d 344, 354 (Tex.App.-Fort Worth 2010, pet. denied) (quoting *Coastal Oil & Gas Corp. v. Roberts,* 28 S.W.3d 759, 763 (Tex.App.-Corpus Christi 2000, pet. granted, judgm't vacated w.r.m.)).

**\*4** Several cases illustrate the literal compliance requirement. When the lease required a thirty-day written notice of breach but only a twenty-five-day notice was given, literal compliance was not shown. *Deace v. Stribling,* 142 S.W.2d 564, 567 (Tex.Civ.App.-Austin 1940, no writ). Likewise, when a lease required the notice to "fully describe" the breach or default, literal compliance was not demonstrated by a demand for "an unspecified amount to be paid by an unspecified time for unspecified claims or charges." *Vinson Minerals, Ltd.,* 335 S.W.3d at 357; *see XTO Inc. v. Pennebaker,* No. 07–10–00396–CV, 2011 Tex.App. LEXIS 10194, at \*9, 2011 WL 6846196 (Tex.App.-Amarillo Dec.29, 2011, no pet.) (mem.op.) (failure to file affidavit as required by forfeiture clause). These cases involve the question of whether the content of the notice was timely and specific and properly complied with the lease requirements.

This lease, undisputedly, contains a forfeiture clause. Circle Ridge does not argue that it did not receive notice of the default from Kittrell. Further, there is no argument that the content of the notice did not give fair or proper warning of the breach. Instead, the only argument is that the notice was not addressed with the proper mailing zip code. Circle Ridge has cited no authority that an error in a zip code prevented strict compliance. The Tyler Court of Appeals has suggested strict compliance, albeit in a different context, can

be established despite the absence of a zip code. *See Reese v. Commissioners' Court of Cherokee Cnty.,* 861 S.W.2d 281, 284 (Tex.App.-Tyler 1993, no pet.). The Tyler court rejected the argument that the absence of the proper zip code prevented strict compliance. The court reasoned, because the zip code's absence did not interfere with any possible verification efforts, the absence did not invalidate a petition signature under the Texas Election Code. *Id.*

Circle Ridge argues that *Reese* is distinguishable because it concerns statutory compliance. Except for certain statutory exceptions,[9] strict compliance is required under the Election Code. *See In re Triantaphyllis,* 68 S.W.3d 861, 868 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding).

Similar to *Reese,* the zip code in this case was superfluous. Circle Ridge does not contend there are two physical locations in Fort Worth, Texas, with an address of 300 East Northside Drive. The notice was delivered to the exact physical location specified in the contract including delivery to the specified zip code. Although the zip code on the envelope may have been erroneous, the letter was not misdirected to a different location or to an incorrect zip code. The letter was delivered to Circle Ridge's physical location at 300 East Northside Drive, Fort Worth, Texas.[10]

By its nature, a zip code is more of an aid to the post office than a part of an address. Indeed, in the not so distant past, zip codes did not even exist. The zip code of a particular street address may change over time. Further, we note the post office has added an additional four numbers (referred to as ZIP+4) to the traditional five-digit zip codes. The zip code in the assignment does not contain the additional four numbers, whereas, the zip code to which the notice was addressed does.

**\*5** The zip code's superfluous nature is reinforced by the language of the forfeiture clause. While the assignment requires the notice to be mailed to the specified address, the forfeiture clause is focused on actual notice. The forfeiture clause provides, "[I]f Assignor's overriding royalty is not paid on or before expiration of sixty (60) days **from Assignee's receipt of such notice,** Assignor may terminate...." (Emphasis added.) By focusing on the receipt of actual notice as the event that establishes the sixty-day deadline, the forfeiture clause decreases the importance of the earlier requirement that the notice be sent "to addressed

Assignee at the address shown herein." Strict compliance was required with the forfeiture clause, not the entire assignment. The forfeiture clause required actual notice at the address specified in the lease, and the record conclusively establishes Circle Ridge received actual notice at the exact address, including zip code, specified in the Assignment.

We conclude that strict compliance has been shown. We affirm the portion of the summary judgment finding strict compliance occurred.

**V. The Untimely Tender of Overriding Royalties Did Not Cure Circle Ridge's Breach**

Circle Ridge alternatively argues the forfeiture clause was not breached because it tendered the royalties on September 30, 2011. Because the lease had not been terminated, Circle Ridge argues the tender of payment prevented any breach.

The assignment required the royalties to be tendered within sixty days—not 154 days. We note Circle Ridge has not pled or argued waiver, ratification, or accord and satisfaction. Although the re-entry occurred after the royalty payment was tendered, the forfeiture clause was breached when the royalties were not paid sixty days after the first notice. We are bound by the language of the Assignment and cannot find the Assignment has implied terms that do not exist in the agreement. *See Rogers,* 772 S.W.2d at 79. The Assignment does not place any time limitations or other conditions on exercising the right to terminate. Once the breach of the forfeiture clause occurred, Kittrell had the right to terminate the lease.

Because the royalties were not tendered within sixty days of the notice, Kittrell's right to terminate the Assignment was not affected. The parties could have contracted for the right of reversion to be relinquished if the royalties were paid prior to the Assignor exercising his right, under the forfeiture clause, to terminate the assignment. The Assignment, though, does not provide for such a relinquishment, and we are prohibited from inferring such a term. Circle Ridge's argument is overruled.

**VI. The Untimely Request for a Division Order Did Not Excuse Circle Ridge's Breach**

Additionally, Circle Ridge argues its request for a division order on August 11, 2011, excused the breach of the forfeiture clause on June 28, 2011. Circle Ridge claims that because it had a right to suspend payments of royalties pending the execution of a division order [11] and a division order was requested before the termination of the Assignment, the lease did not terminate. Kittrell responds that Circle Ridge's argument is incorrect because the division order was not requested until after the forfeiture clause had been breached and the division order contained incorrect terms. We agree that a division order, submitted after the breach of a forfeiture clause, does not excuse the breach. [12]

**\*6** A division order is "merely the mechanism for payment to a payee of its share of oil and gas proceeds." *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.,* 345 S.W.3d 537, 560 (Tex.App.-San Antonio 2011, no pet.). Division orders are viewed as agreements between the parties. *See Cabot Corp. v. Brown,* 754 S.W.2d 104, 107–08 (Tex.1987); *see also* TEX. NAT. RES.CODE ANN. § 91.401(3) (West 2011) (" 'Division order' means an agreement signed by the payee directing the distribution of proceeds...."). "Although division orders do not supplant the lease contract," division orders are binding until revocation. *Cabot Corp.,* 754 S.W.2d at 107–08; *cf. Heritage Res. v. Nationsbank,* 939 S.W.2d 118, 123 (Tex.1996) (under unjust enrichment theory, operator is liable, if division order differs from lease, for amount it retains but not for any amounts paid to others).

As noted above, the division order was not requested until after the forfeiture clause had been breached. The overriding royalty payments were due on or before June 28, 2011, but the division order contains an effective date of July 1, 2011, and was dated August 11, 2011. Thus, the division order did not exist until 104 days after receipt of notice and did not even attempt to govern royalty payments during the sixty days following receipt of notice. Circle Ridge does not specify how its breach is excused by the issuance of a division order after the relevant time period.

The San Antonio Court of Appeals has held the Texas Natural Resources Code "places the burden on the payor to submit a division order to the payee for its signature; it is not the royalty owner or mineral interest owner's burden to draft its own division order, sign it, and submit it to the payor." *Prize Energy Res., L.P.,* 345 S.W.3d at 560. The Eastland Court

has agreed in a memorandum opinion. *See Jones v. Clem,* No. 11–10–00123–CV, 2012 Tex.App. LEXIS 2473, 2012 WL 1069168 (Tex.App.-Eastland Mar. 29, 2012, no pet.) (per curiam) (mem.op.) ("[I]n order to rely upon a division order, Jones had the obligation to submit it to the payees for signature."). We agree with the San Antonio and Eastland Courts of Appeals. Circle Ridge had the burden to draft the division order and submit it to Kittrell. Because Circle Ridge failed to submit any division order to Kittrell until after the forfeiture clause had been breached, the lack of a division order did not excuse the non-payment.

**VII. Circle Ridge Has Not Established the Attorney's Fees Award Was Error**

Circle Ridge challenges the award of attorney's fees to Kittrell in four ways: (1) the fees were not supported by a designated expert, (2) the fees were not substantiated with hourly time records, (3) the fees were not segregated, and (4) the evidence to support an award of attorney's fees is conclusory.

Circle Ridge argues that "[a] party may not recover attorneys' fees when they have failed to designate an expert witness with regard to such claim [,]" citing *E.F. Hutton & Co. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987). *Youngblood* merely held that an expert witness on attorney's fees must be designated as an expert witness similar to other expert witnesses. *Id.* The Texas Supreme Court has approved of the procedure of using affidavits of the party's attorney to prove attorney's fees. *See Tex. Commerce Bank v. New,* 3 S.W.3d 515, 517 (Tex.1999).

**\*7** Further, the failure to designate a testifying expert is a defect of form about which an appellant must object and on which he must obtain a ruling to preserve error. *Expro Ams., LLC v. Sanguine Gas Exploration, LLC,* 351 S.W.3d 915, 919–20 (Tex.App.-Houston [14th Dist.] 2011, pet. denied); *Duncan–Hubert v. Mitchell,* 310 S.W.3d 92, 102, 105 (Tex.App.-Dallas 2010, pet. denied). Although Circle Ridge objected in its response, Circle Ridge has directed us to no trial court ruling and our own review has located no such ruling on the objection.

Additionally, Kittrell notes it filed an amended discovery response designating its expert and thereby eliminated any surprise or prejudice. This amended discovery response was filed on August 10, 2012, twenty-five days before the hearing

Schultz, William 10/26/2015
For Educational Use Only

Circle Ridge Production, Inc. v. Kittrell Family Minerals, LLC, Not Reported in S.W.3d...

and two months prior to the entry of summary judgment. Circle Ridge directs us to no evidence of surprise or prejudice.

Circle Ridge argues the evidence is insufficient because it did not include "any time records supporting the hours the attorneys claim to have spent on the case." Circle Ridge did not make this objection in its response, and error has not been preserved. *See* TEX.R.APP. P. 33.1. Even if error had been preserved, we disagree that time records were required. In *El Apple I, Ltd. v. Olivas,* 370 S.W.3d 757, 760 (Tex.2012), cited by Circle Ridge, the Texas Supreme Court discussed in detail the lodestar method for calculating attorney's fees based on hourly time records. *Id.* While the Texas Supreme Court recognized the lodestar method as the required method for claims under Section 21.259(a) of the Texas Commission on Human Rights Act and in class-action lawsuits, the opinion does not require the lodestar method in other types of lawsuits. *See id.* The Dallas Court of Appeals has held that "there is no rigid requirement" of hourly time records and has affirmed attorney's fees awards without hourly time records. *See Brockie v. Webb,* 244 S.W.3d 905, 909 (Tex.App.-Dallas 2008, pet. denied). We agree with the Dallas Court of Appeals that time records are not an indispensible element in the calculation of reasonable attorney's fees.

Circle Ridge also complains about the failure to segregate attorney's fees. [13] This objection was made in its response, but we have not been directed to where Circle Ridge obtained a ruling to preserve error on this issue. [14] *Cont'l Dredging, Inc. v. De–Kaizered, Inc.,* 120 S.W.3d 380, 397 (Tex.App.-Texarkana 2003, pet. denied); *see Dulong v. Citibank (S.D.), N.A.,* 261 S.W.3d 890, 893 (Tex.App.-Dallas 2008, no pet.) ("[T]o preserve error on objections to summary judgment evidence, the complainant must secure a ruling on her objection."). Further, Kittrell filed an amended affidavit in response to this objection claiming seventy-five percent of the attorney's fees concerned the declaratory judgment. [15]

Finally, Circle Ridge argues, "Kittrell's summary judgment evidence consisted only of broad conclusory statements." The Texas Supreme Court, though, has recently held an affidavit is not conclusory merely because it lacks specifics and, if uncontroverted, can be sufficient evidence. *Garcia v. Gomez,* 319 S.W.3d 638, 641 (Tex.2010). As held in *Garcia,* summary judgment can be granted on the testimony of an interested witness if the testimony could have been

readily controverted. *New Times, Inc. v. Isaacks,* 146 S.W.3d 144, 163 (Tex.2004); *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). Following the Texas Supreme Court's opinion in *Garcia,* we conclude Kittrell's uncontroverted affidavit constitutes sufficient evidence.

**\*8** We overrule all of Circle Ridge's complaints concerning attorney's fees.

## VIII. Genuine Issues of Material Fact Exist Concerning the Date of Termination

Kittrell argues that because its August 30, 2011, letter unambiguously communicated an intent to terminate the Assignment, the Assignment terminated on August 30, 2011. Circle Ridge claims the "remains undecided" language of the October 4, 2011, letter is some evidence that the Assignment was not terminated on August 30 but on November 21, 2011, and argues, "[A]n effective notice simply gave Kittrell the right to evict Circle Ridge at some later date."

The first step in the analysis is to determine whether the disputed contract provision is a condition subsequent, a special limitation, or a covenant. [16] *Vinson Minerals, Ltd.,* 335 S.W.3d at 354 n. 12; *see W.T. Waggoner Estate v. Sigler Oil Co.,* 118 Tex. 509, 19 S.W.2d 27, 31 (Tex.1929); *Blackmon v. XTO Energy, Inc.,* 276 S.W.3d 600, 605 (Tex.App.-Waco 2008, no pet.). In making this determination, we cannot add terms, and "doubts should be resolved in favor of a covenant instead of a condition." *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989). A special limitation divests the grantee automatically. *Field v. Shaw,* 535 S.W.2d 3, 5 (Tex.App.-Amarillo 1976, no writ). A condition subsequent gives grantor the right to terminate the leasehold estate upon the occurrence of an event but must be exercised by re-entry. *Id.; Eyssen v. Zeppa,* 100 S.W.2d 417 (Tex.Civ.App.-Texarkana 1936, writ ref'd); *Gutierrez v. Rodriguez,* 30 S.W.3d 558, 560 (Tex.App.-Texarkana 2000, no pet.). Except in extraordinary circumstances, a covenant only subjects the breaching party to monetary damages. *See Anadarko Petroleum Corp. v. Thompson,* 94 S.W.3d 550, 560 (Tex.2003); *Rogers,* 772 S.W.2d at 79.

As argued by Circle Ridge, an overriding royalty is normally considered a covenant and does not result in forfeiture. *See Vinson Minerals,* 335 S.W.3d at 354. " '[F]ew leases are found in which the nonpayment of royalty is a condition

Schultz, William 10/26/2015
For Educational Use Only

Circle Ridge Production, Inc. v. Kittrell Family Minerals, LLC, Not Reported in S.W.3d...

subsequent and rarer still is the lease in which it operates as a special limitation.' " _Blackmon,_ 276 S.W.3d at 606 (quoting Linton E. Barbee, _The Lessor's Remedies for Nonpayment of Royalty,_ 45 TEX. L.REV. 132, 159 (1966)).

The assignment of the lease in this case, though, contains a clause not contained in most leases. The clause provides:

> Assignor may give Assignee written notice of nonpayment of the overriding royalty (via certified mail to addressed Assignee at the address shown herein.), and if Assignor's overriding royalty is not paid on or before expiration of sixty (60) days from Assignee's receipt of such notice, Assignor may terminate this agreement and evict Assignee forthwith.

Because this term provides for termination, the clause must be either a condition subsequent or a special limitation rather than a covenant. The clause makes the termination discretionary with the Assignor. The use of the word "may" indicates the Assignor has discretion to either exercise the right or not to exercise the right. Because the Assignor must exercise the right to effectuate a termination, the plain language of the clause establishes that it is a condition subsequent. Although "[c]ourts will not declare a forfeiture unless they are compelled to do so by language which can be construed in no other way," [17] the clause in this lease is clear and precise and can be construed in no other way than to be a condition subsequent.

**\*9** The termination of the Assignment in this case is not just a contract dispute but rather a reversion of an interest in real property.[18] As explained by the Texas Supreme Court:

> In Texas it has long been recognized that an oil and gas lease is not a "lease" in the traditional sense of a lease of the surface of real property. In a typical oil or gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who is actually a grantee. Consequently, the lessee/grantee acquires ownership of all the minerals in place that the lessor/grantor owned and purported to lease, subject

to the possibility of reverter in the lessor/grantor. The lessee's/grantee's interest is "determinable" because it may terminate and revert entirely to the lessor/grantor upon the occurrence of events that the lease specifies will cause termination of the estate.

> _Natural Gas Pipeline Co. of Am. v. Pool,_ 124 S.W.3d 188, 192 (Tex.2003) (citations omitted). As noted above, a condition subsequent only terminates an oil and gas lease upon re-entry or the filing of a lawsuit seeking re-entry. _Vinson Minerals, Ltd.,_ 335 S.W.3d at 354; _see W.T. Waggoner Estate,_ 19 S.W.2d at 31.

Kittrell has failed to establish as a matter of law that the lease terminated on August 30, 2011, because at that time, there had been no re-entry.[19] "Under Texas summary judgment law, the party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law." _Willrich,_ 28 S.W.3d at 23 (noting "the nonmovant need not respond to the motion to contend on appeal that the movant's summary judgment proof is insufficient as a matter of law to support summary judgment."). While Kittrell had declared the assignment terminated, no re-entry had yet occurred and no lawsuit had been filed. Re-entry did not occur until Kittrell locked the gates and prevented Circle Ridge from continuing to produce.

The trial court erred in finding that the forfeiture occurred on August 30, 2011. Kittrell's November 21, 2011, letter confirms the re-entry had recently occurred, but does not specify the exact date of re-entry. We agree with Circle Ridge that genuine issues of material fact exist concerning the date of termination.

### IX. The Record Conclusively Establishes that Circle Ridge Did Not Trespass

Circle Ridge also contends the trial court erred in concluding as a matter of law that Circle Ridge was a bad-faith trespasser[20] and in awarding Kittrell trespass damages. We agree. As discussed above, the Assignment terminated upon Kittrell's re-entry. The record conclusively establishes that Circle Ridge did not conduct activities on the lease after Kittrell's re-entry. The trial court erred in awarding Kittrell trespass damages. Although entitled to recover its overriding royalty interest from August 30, 2011, until the date of re-entry, Kittrell is not entitled to recover trespass damages.

## X. The Trial Court's Failure to Recognize Kittrell's Concession on Personal Property and Well Casing Was Error

**\*10** Circle Ridge claims the trial court committed reversible error by refusing to permit the removal of its personal property from the well site. In its motion for summary judgment, Kittrell agreed that Circle Ridge had the right to remove its equipment other than the well casing and agreed to pay salvage value for the well casing. Circle Ridge complained in its response that it had been denied access "to its personal property and equipment on the lease. The value of such personal property and equipment exceeds $100,000.00."

We agree with Circle Ridge that the trial court erred in failing to award Circle Ridge the right to recover its personal property remaining at the well site [21] and, if the well casing cannot be removed without damaging the well, damages in the amount of the market value of the well casing minus the cost of removal. *See* *Moore,* 261 S.W.3d at 428; *Fike v. Riddle,* 677 S.W.2d 722, 727 (Tex.App.-Tyler 1984, no writ). On remand, the trial court should order return of the personal property belonging to Circle Ridge at the well site and, if removal would damage the well, damages for the well casing.

## XI. Conclusion

We affirm the judgment of the trial court in part and reverse in part. We affirm the summary judgment determining that (1) Circle Ridge breached the forfeiture clause, (2) Kittrell provided notice in strict compliance with the Assignment, (3) the lease was forfeited, (4) the lack of a division order did not excuse Circle Ridge's non-payment, and (5) the

tendering of royalty payments more than sixty days after notice did not excuse the non-payment. [22] We reject Circle Ridge's argument that the summary judgment was rendered on grounds not contained in the summary judgment motion and that the award of attorney's fees to Kittrell was improper. We affirm the trial court's award of $7,576.75 in overriding royalty proceeds and $8,166.00 in attorney's fees.

The trial court, though, erred in determining that the forfeiture occurred on August 30, 2011. The forfeiture occurred when Kittrell re-entered the property on or about November 21, 2011. Genuine issues of material fact exist concerning the exact date of re-entry. The record, however, conclusively establishes that Circle Ridge did not continue activities on the lease after Kittrell's re-entry. Therefore, the trial court erred in awarding damages for trespass. We reverse the trial court's award to Kittrell as trespass damages of $45,960.62 in lease proceeds and $9,380.00 for the value of the oil in the tanks. We remand the case to the trial court for the limited purpose of determining the exact date of re-entry and calculating the amount of the overriding royalty owed Kittrell from August 30, 2011, until the date of re-entry. On remand, the trial court should give effect to Kittrell's concession that Circle Ridge is entitled to the personal property located at the well site, including the 113 barrels of oil, and, if the well casing cannot be removed without damaging the well, should determine the value Kittrell owes Circle Ridge for the well casing.

## All Citations

Not Reported in S.W.3d, 2013 WL 3781367

Footnotes

1   Originally appealed to the Tyler Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). As a transfer case, we are required to apply the precedent of the Tyler Court of Appeals to the extent it may differ from our precedent. *See* TEX.R.APP. P. 41.3.

2   Except for boundary line disputes, a trespass to try title claim is the exclusive method in Texas for adjudicating disputed claims of title to real property, and, such claims cannot be brought as declaratory judgments. *See* Tex. Parks & Wildlife Dep't v. Sawyer Trust, 354 S.W.3d 384 (Tex.2011). The Tyler Court of Appeals has held that when no objections or special exceptions are made to a lawsuit being brought as a declaratory judgment, the error, if any, in failing to bring the action as a trespass to try title has been waived. *See* Cabot Oil & Gas Corp. v. Healey, L.P., No. 12–11–00236–CV, 2013 Tex.App. LEXIS 3934, 2013 WL 1282007 (Tex.App.-Tyler Mar.28, 2013, no pet. h.) (mem.op.) (failure to specially except waived any error in bringing lawsuit as declaratory judgment instead of trespass to try title).

3   We note Kittrell's motion fails to specify whether it is a traditional or no-evidence motion for summary judgment. Circle Ridge treated the motion as a traditional motion for summary judgment. Because Kittrell had the burden of proof, we have

Schultz, William 10/26/2015
For Educational Use Only

Circle Ridge Production, Inc. v. Kittrell Family Minerals, LLC, Not Reported in S.W.3d...

also treated the motion as a traditional motion for summary judgment. Although the Texas Supreme Court has approved of filing combination summary judgment motions, the better practice is to clearly delineate which type of summary judgment is being sought. *Binur v. Jacobo,* 135 S.W.3d 646, 650–51 (Tex.2004); *Holloway v. Tex. Elec. Util. Constr., Ltd.,* 282 S.W.3d 207, 213 n. 3 (Tex.App.-Tyler 2009, no pet.) ("[T]he better practice is to file two separate motions.").

4 A summary judgment can only be affirmed on grounds specifically presented to the trial court in the summary judgment motion. TEX.R.APP. P. 33.1; TEX.R. CIV. P. 166a(c); *see Clear Creek Basin Auth.,* 589 S.W.2d at 677; *Driskill v. Ford Motor Co.,* 269 S.W.3d 199, 206 (Tex.App.-Texarkana 2008, no pet.).

5 In its brief, Circle Ridge implies the judgment is not "final and appealable." At oral argument, counsel clarified that the argument was that the trial court erred in granting a judgment without disposing of all issues and causes of action, not that the judgment was not final. We find the judgment is final and appealable, and this opinion will address Circle Ridge's claims that the trial court committed error in entering this judgment.

6 Circle Ridge's amended answer and counterclaim merely contains a single sentence under the heading XVI which provides, "The conduct of KITTRELL constitutes conversion." Other than the request for return of personal property left at the well site, Circle Ridge failed to allege any facts in support of its conversion counterclaim. The sufficiency of the pleadings is judged based on whether they provide the opponent with fair and adequate notice. *Roark v. Allen,* 633 S.W.2d 804, 809–10 (Tex.1982); *Burke v. Union Pac. Res. Co.,* 138 S.W.3d 46, 66–67 (Tex.App.-Texarkana 2004, pet. denied). "Fair notice" requires that an opposing attorney of reasonable competence can ascertain the nature and basic issues of the controversy. *Marin v. IESI TX Corp.,* 317 S.W.3d 314, 332 (Tex.App.-Houston [1st Dist.] 2010, pet. denied); *Burke,* 138 S.W.3d at 67. Kittrell only had fair notice of the request to return personal property. "A party is not required to specially except to a pleading defect if it lacks notice of the other party's intent." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 345 (Tex.2011); *Taylor v. Taylor,* 337 S.W.3d 398, 401 (Tex.App.-Fort Worth 2011, no pet.) (failure to specially except did not waive challenge to lack of fair notice retroactive child support was being sought).

7 *See* TEX.R. CIV. P. 90 (failure to specially except waives any defect of form or substance).

8 Mitigation of damages is an affirmative defense which the breaching party must plead and prove. *S & G Associated Developers, LLC v. Covington Oaks Condo. Owners Ass'n,* 361 S.W.3d 210, 217 (Tex.App.-El Paso 2012, no pet.).

9 The Fourteenth District Court of Appeals noted the Texas Legislature has exempted certain requirements from strict compliance including the zip code. We note that in 1997, the Texas Legislature amended the Election Code to provide that "[t]he omission of the zip code from the address does not invalidate a signature." *See* Act of May 23, 1997, 75th Leg., R.S., ch. 1349, § 52, 1997 Tex. Gen. Laws 5080, 5092 (amended 2005) (current version at TEX. ELEC.CODE ANN. § 141.063 (West 2010)). The Election Code in effect at the time *Reese* was decided did not include this exemption. *See* Act of May 9, 1985, 69th Leg., R.S., ch. 211, § 1, 1985 Tex. Gen. Laws 802, 956 (amended 1997) (current version at TEX. ELEC.CODE ANN. § 141.063).

10 Circle Ridge argues that the letter was sent to an "incorrect" zip code address. We note that several documents from Circle Ridge contain either the 76164 or the 76164–9234 zip code. For instance, the printed check Circle Ridge sent to Kittrell on September 29, 2011, has the address listed as 300 East Northside Dr., Fort Worth, TX 76164–9234. In addition, the 76164 zip code was used on an August 9, 2011, letter from Circle Ridge to Kittrell, including certain royalty check detail statements and billing statements from the law firm of Gillen & Anderson. While it is accurate to state that the demand from Kittrell was sent to a different zip code than listed in the assignment, these documents demonstrate that zip code number 76164–9234 is not an incorrect zip code for Circle Ridge.

11 The Texas Natural Resources Code permits, under certain circumstances, a payor to condition payment of royalty upon receipt of a signed division order. *See* TEX. NAT. RES.CODE ANN. § 91.402(c)(1) (West 2011).

12 Because Circle Ridge failed to timely request the division order, it is not necessary for us to decide Kittrell's alternative argument that an incorrect division order does not excuse nonpayment.

13 A party seeking to recover attorney's fees must segregate those fees attributable to different parties or causes, except "when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.' " *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991) (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 624–25 (Tex.App.-Dallas 1987, writ denied)).

14 Kittrell raised this issue at the summary judgment hearing, but Circle Ridge did not respond and no ruling was obtained.

Kittrell also filed a motion for leave to file the amended affidavit. In its reply brief, Circle Ridge argues that because there is no explicit granting of leave, we must ignore the amended affidavit. The amended affidavit was filed more than twenty-one days before the hearing, and, therefore, was not late under Rule 166a(c) of the Texas Rules of Civil Procedure. *See* TEX.R. CIV. P. 166a(c). Because the affidavit was not late, Kittrell did not need leave of the court to file it, and it is unnecessary for us to determine whether leave was implicitly granted by the award of attorney's fees consistent with the amended affidavit. *See Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex.1996) (presumption leave not granted when nothing in record indicates trial court considered late-filed evidence).

We recognize neither Kittrell nor Circle Ridge briefs the issue of the type of contract provision in dispute. Both parties, though, cite caselaw concerning covenants, special limitations, and conditions subsequent. Some of the differences between these cases depend on the type of contract provision in dispute. We are required to address this issue because it is necessary to reconcile the various cases cited by the parties. We further note both parties cited *Coastal Oil & Gas Corp. v. Roberts,* 28 S.W.3d 759, 763 (Tex.App.-Corpus Christi 2000, pet. granted, judgm't vacated w.r.m.), in their briefs, and *Coastal Oil* was extensively discussed during oral argument. *Coastal Oil* has been vacated and is merely persuasive authority. *See State ex rel. Dishman v. Gary,* 163 Tex. 565, 359 S.W.2d 456 (Tex.1962) (orig.proceeding) (vacated opinion lacks any precedential value). Because the parties have provided us with other precedents, it is not necessary for us to rely on *Coastal Oil* as persuasive authority.

*Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex.1987); *Vinson Minerals, Ltd.,* 335 S.W.3d at 354; *see Fox v. Thoreson,* 398 S.W.2d 88, 92 (Tex.1966) (special limitation must be "clear and precise and so unequivocal in nature that it can reasonably be given no other meaning").

Kittrell argues that *Blackmon* is distinguishable from this case because it involved the termination of a lease instead of the termination of an assignment. *See Blackmon,* 276 S.W.3d at 605. An assignment of an oil and gas lease is still a transfer of an interest in real property, and we do not believe *Blackmon* is distinguishable on this basis.

The parties have not argued the date of termination depends on when re-entry occurred. Both sides, though, have cited cases to this Court and to the trial court which explain the re-entry requirement. Both Circle Ridge and Kittrell cite *Rogers,* 772 S.W.2d at 79 on appeal. Circle Ridge also cites *Vinson Minerals,* 335 S.W.3d at 354, and *Blackmon,* 276 S.W.3d at 605. Further, Circle Ridge argued to both the trial court and this Court that the termination did not occur until November 21, 2011, and also cited *Vinson Minerals,* 335 S.W.3d at 353, to the trial court.

Kittrell argues Circle Ridge was a bad-faith trespasser as a matter of law because Circle Ridge continued to produce after receiving its August 30, 2011, letter announcing the lease was terminated. This Court and the San Antonio Court of Appeals have held that a producer who continues activities on the property after the filing of a lawsuit is a bad-faith trespasser as a matter of law. *See Moore v. Jet Stream Invs., Ltd.,* 261 S.W.3d 412, 428 (Tex.App.-Texarkana 2008, pet. denied); *Mayfield v. De Benavides,* 693 S.W.2d 500, 504 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.). There was no lawsuit pending at any time Circle Ridge conducted activities on the lease. Further, since our decision in *Moore,* the Texas Supreme Court has held that the ultimate issue is one of equity which should be decided by the trial court using a case-by-case equity analysis. *Wagner & Brown, Ltd. v. Sheppard,* 282 S.W.3d 419, 428 (Tex.2008) (noting examples of relevant considerations, including whether termination was intentional, whether there was offer to immediately reinstate lease, length of time lease in effect, and whether "denying reimbursement would work a substantial forfeiture").

Although we have deleted the $9,380.00 award for the 113 barrels of oil remaining at the well site as trespass damages, we note this oil was the personal property of Circle Ridge. Both parties agree these 113 barrels had been extracted by November 21, 2011, and, once removed from the ground, oil is personal property. Since Circle Ridge did not trespass, Circle Ridge is entitled to recover possession of the 113 barrels of oil or the value of the 113 barrels of oil. We further note Kittrell is entitled to an award of its overriding royalty interest on these barrels.

These issues have been fully litigated and determined on appeal. Consequently, the law of the case doctrine prohibits re-litigation of these issues on remand. *See Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex.2003).

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**El Apple I, Ltd. v. Olivas, 370 S.W.3d 757 (2012)**

115 Fair Empl.Prac.Cas. (BNA) 510, 55 Tex. Sup. Ct. J. 954

KeyCite Yellow Flag - Negative Treatment

**Declined to Extend by** Ferrant v. Graham Associates, Inc., Tex.App.-Fort Worth, May 8, 2014

370 S.W.3d 757
Supreme Court of Texas.

EL APPLE I, LTD., Petitioner,

v.

Myriam OLIVAS, Respondent.

No. 10–0490. | Argued Sept. 15, 2011. | Decided June 22, 2012.

**Synopsis**

**Background:** Employee brought action against employer under Texas Commission on Human Rights Act (TCHRA), alleging sex discrimination and retaliation. Following jury trial, the County Court at Law No. 3 of El Paso County, Javier Alvarez, J., entered judgment for employee and awarded attorney fees. Employer appealed. The El Paso Court of Appeals, 324 S.W.3d 181, affirmed as reformed. Review was granted.

**Holdings:** The Supreme Court, Medina, J., held that:

[1] affidavits of plaintiff's attorneys were insufficient to support lodestar determination of attorney fee award, and

[2] as a matter of first impression, application and record for attorney fee award under lodestar method must include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate.

Reversed and remanded.

Hecht, J., filed concurring opinion in which Wainwright, J., and Willett, J., joined.

West Headnotes (7)

**[1]** **Costs**
     Items and amount; hours; rate

The determination of what constitutes a reasonable attorney's fee under lodestar method of determining amount of fee award involves two steps: first, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work, and the court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar.

35 Cases that cite this headnote

**[2]** **Costs**
     Items and amount; hours; rate

When using lodestar method to determine reasonable attorney fee award, court may adjust the base lodestar figure up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

23 Cases that cite this headnote

**[3]** **Costs**
     Discretion of court

The award of attorney's fees generally rests in the sound discretion of the trial court.

7 Cases that cite this headnote

**[4]** **Costs**
     Evidence as to items

A party applying for an award of attorney's fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours.

31 Cases that cite this headnote

**[5]** **Civil Rights**

🔑 Employment practices

Affidavits of plaintiff employee's attorneys were insufficient to support lodestar determination of attorney fee award in sex discrimination and retaliation action under Texas Commission on Human Rights Act; affidavits did not indicate how many hours that attorneys spent on case were devoted to any particular task or category of tasks, and attorneys' time estimates were not based on time records or other documentary evidence that would allow for meaningful review of claim for fees. V.T.C.A., Labor Code § 21.259(a).

19 Cases that cite this headnote

**[6]    Costs**

🔑 Evidence as to items

When applying for a fee under the lodestar method, the applicant must provide sufficient details of the work performed before the court can make a meaningful review of the fee request; for the purposes of lodestar calculations, this evidence includes, at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required.

20 Cases that cite this headnote

**[7]    Costs**

🔑 Items and amount;  hours;  rate

**Courts**

🔑 Decisions of United States Courts as Authority in State Courts

Though not bound to adopt federal standards for lodestar determination of attorney fee award, state court may appropriately consider them when making lodestar determinations under state law.

3 Cases that cite this headnote

**Attorneys and Law Firms**

**\*758**   David R. Pierce, The Law Office of David Pierce, Joseph L. Hood Jr., Windle Hood Alley Norton Brittain & Jay LLP, El Paso, TX, for El Apple I, Ltd.

Francisco X. Dominguez, Dominguez & Coyle PLLC, Daniel Salvador Gonzalez, John P. Mobbs, Attorneys at Law, El Paso, TX, for Myriam Olivas.

Clara B. Burns, Kemp Smith LLP, El Paso, TX, for Amicus Curiae Texas Association of Business.

**Opinion**

Justice MEDINA delivered the opinion of the Court.

In this appeal, we consider the calculation of an attorney's fee award in an employment discrimination and retaliation suit brought pursuant to the Texas Commission on Human Rights Act (TCHRA). The TCHRA includes a fee-shifting provision that allows a prevailing party to recover reasonable attorney's fees as part of  **\*759**  the costs of pursuing the claim. To calculate attorney's fees under the TCHRA, Texas courts utilize the lodestar method, that is, the number of hours worked multiplied by the prevailing hourly rates. If the lodestar does not reflect a reasonable fee, a multiplier may be applied. In this case, the court of appeals affirmed an attorney's fee award, applying a multiplier that doubled the base lodestar amount. 324 S.W.3d 181 (Tex.App.-El Paso 2010).

The employer presents two issues. First, it claims that the affidavits used to support the fee application were not legally sufficient to support the trial court's determination of the hours expended or a reasonable hourly rate. Second, the employer argues that the trial court abused its discretion by enhancing the lodestar with a 2.0 multiplier. Because we agree that the evidence in the trial court was insufficient to make a lodestar calculation, we reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

**I**

Schultz, William 10/26/2015
For Educational Use Only

Myriam Olivas, an Applebee's restaurant manager in El Paso, filed suit against her employer, El Apple I, Ltd., alleging sex discrimination and retaliation under the TCHRA. TEX. LAB. CODE §§ 21.001–.55. A jury determined that Olivas was not the target of sex discrimination, but that her decision to file discrimination complaints against her employer was a motivating factor in El Apple's creation of a hostile work environment. Thus, Olivas prevailed on only the retaliation claim. The trial court rendered judgment awarding Olivas compensatory damages of $1,700 for back pay, $75,000 for past compensatory damages, and $28,000 for future compensatory losses.

As the prevailing party, Olivas also submitted an application for attorney's fees. In affidavits, her attorneys estimated that they collectively spent 850 hours on the case. Olivas's lead counsel, Daniel Gonzalez, averred that he spent approximately 700 hours on the case. Her other attorney, Francisco Dominguez, averred that he spent 150 hours in preparing and trying the case. At a hearing on the fee application, Dominguez subsequently testified that he spent 190 hours, but that he was not seeking compensation for some of that time because it was duplicative of work performed by his co-counsel.

Gonzalez testified that both attorneys' time was reasonable and necessary given the nature of the case and the results obtained. Counsel attributed the number of hours on the case to the number of discovery instruments and pleadings, the number of depositions and witness interviews, as well as the quality of representation. Both Dominguez and Gonzalez testified that they refrained from taking additional clients because of the case.

Following the fee-application hearing, the trial court used the lodestar method to calculate attorney's fees. The court determined that Gonzalez should be compensated at a rate of $250 per hour for 700 hours for a total of $175,000, and that his co-counsel Dominguez should be compensated at a rate of $300 per hour for 190 hours for a total of $57,000. The court then enhanced the lodestar by applying a 2.0 multiplier, resulting in $464,000 in attorney's fees for the trial of the case. Legal assistant fees for 100 hours were also added to the award at a rate of $65 per hour for a total of $6,500. The court further awarded $99,000 in conditional attorney's fees for defending post-judgment motions and appeals.

On appeal, El Apple argued that the attorney's fees awarded through trial was an abuse of discretion because the court did not have sufficient evidence on which **\*760** to make a reasonable assessment. The company also complained that no basis existed for the trial court's enhancement of the lodestar. The court of appeals vacated the award of Olivas's back-pay damages but otherwise affirmed Olivas's compensatory damages and attorney's fees. 324 S.W.3d at 195. The court held that the affidavits were legally sufficient to support the trial court's determination of hours spent and a reasonable hourly rate, and that more detailed billing records were unnecessary. Id. at 193. The court also determined that the trial court had not erred in enhancing the lodestar because it considered separate factors from those it used to determine the lodestar. Id. at 193–94.

## II

The remedies provided under the TCHRA mirror those available under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. *Compare* Tex. Lab.Code §§ 21.258, 21.2585, 21.259(a) *with* 42 U.S.C. §§ 1981a, 2000e–5(g), 2000e–5(k). One of the TCHRA's purposes is to harmonize state and federal employment discrimination law. TEX. LAB.CODE § 21.001(1). Although state procedural rules govern the determination of attorney's fees in a suit brought under state law, Texas courts have looked to federal law in applying our own statute, including section 21.259(a) of the TCHRA, which provides for an award of attorney's fees to the prevailing party as part of the costs. *See, e.g.,* Sw. Bell Mobile Sys., Inc. v. Franco, 971 S.W.2d 52, 55–56 (Tex.1998); *Burgmann Seals Am., Inc. v. Cadenhead,* 135 S.W.3d 854, 860–61 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *Elgaghil v. Tarrant Cnty. Junior Coll.,* 45 S.W.3d 133, 144–45 (Tex.App.-Fort Worth 2000, pet. denied). Because federal courts use the lodestar method in awarding attorney's fees in Title VII cases, Texas courts have likewise used lodestar in awarding fees under Section 21.259(a) of the TCHRA. *See, e.g.,* Dillard Dep't Stores, Inc. v. Gonzales, 72 S.W.3d 398, 412 (Tex.App.-El Paso 2002, pet. denied); *W. Telemarketing Corp. Outbound v. McClure,* 225 S.W.3d 658, 675–76 (Tex.App.-El Paso 2006, pet. granted, judgm't vacated w.r.m.).

115 Fair Empl.Prac.Cas. (BNA) 510, 55 Tex. Sup. Ct. J. 954

The lodestar method of calculating attorney's fees first "achieved dominance" in federal class actions. *Gisbrecht v. Barnhart,* 535 U.S. 789, 801, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). Texas courts similarly adopted lodestar initially for fee setting in class actions, and the Texas Legislature subsequently mandated the method's use in such cases. *See* TEX. CIV. PRAC. & REM.CODE § 26.003(a) (providing that "the trial court shall use the Lodestar method to calculate the amount of attorney's fees to be awarded class counsel").

**[1]** **[2]** Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. *Gonzales,* 72 S.W.3d at 412. The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 323–24 (5th Cir.1995). The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Gonzales,* 72 S.W.3d at 412.

Our class action rule identifies the relevant factors when making a lodestar determination by reference to Rule 1.04(b), Texas Disciplinary Rules of Professional Conduct. *See* TEX.R. CIV. P. 42(i)(1) (providing for attorney's fees award in class **\*761** actions). The disciplinary rule enumerates the following non-exclusive list of factors:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b); *see also Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997) (quoting the eight-factor test for determining attorney's fees).[1] Our class action rule further provides that any adjustment to the base lodestar "must be in the range of 25% to 400% of the lodestar figure." TEX.R. CIV. P. 42(i)(1).

### III

**[3]** **[4]** The award of attorney's fees generally rests in the sound discretion of the trial court. *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex.1990) (per curiam). But a party applying for an award of attorney's fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). El Apple submits that a court cannot calculate the base fee or lodestar without such information and that the trial court here abused its discretion by not requiring the plaintiff to provide these details. El Apple further submits that the prevailing party's documentation should preferably be in the form of contemporaneous time sheets, which evidence the performance of specific tasks, such that the trial court can make a reasoned determination of how much time was reasonably spent pursuing the litigation.

Olivas responds that Texas law has not required detailed billing records or other documentation as a predicate to an attorney's fees award. *See, e.g., Tex. Commerce Bank, Nat'l Ass'n v. New,* 3 S.W.3d 515, 517–18 (Tex.1999) (per curiam) (recognizing attorney's affidavit to be sufficient support for award of fees in default judgment); *Save Our Springs Alliance, Inc. v. City of Dripping Springs,* 304 S.W.3d 871, 892–93 (Tex.App.-Austin 2010, pet. denied) (accepting affidavit testimony detailing legal work and rates); *In re A.B.P.,* 291 S.W.3d 91, 99 (Tex.App.-Dallas 2009, no pet.) (noting that documentary evidence is not a prerequisite to

Schultz, William 10/26/2015
For Educational Use Only

El Apple I, Ltd. v. Olivas, 370 S.W.3d 757 (2012)
115 Fair Empl.Prac.Cas. (BNA) 510, 55 Tex. Sup. Ct. J. 954

an award of attorney's fees); _Schlager v. Clements,_ 939 S.W.2d 183, 191–93 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (holding that the failure to produce documentary evidence would affect the weight of an attorney's testimony regarding fees rather than its admissibility). Olivas submits that our recent decision in _Garcia v. Gomez_ is consistent **\*762** with this line of authority. 319 S.W.3d 638 (Tex.2010).

_Garcia,_ however, is not on point. It involved a statute that required a trial court to dismiss a health-care liability claim and award attorney's fees to the defendant health-care provider, on motion, if the claimant did not timely serve an expert report. The claimant did not provide the report, and the trial court dismissed the claim. The court, however, did not award attorney's fees as the statute required. The health-care provider appealed, but the court of appeals affirmed the judgment, concluding that there was no evidence of the reasonable attorney's fees incurred by the health-care provider. _Id._ at 641.

Although the provider's attorney testified in the trial court about attorney's fees, appeared on his client's behalf, and filed pleadings in the case, the court of appeals concluded no evidence showed that the health-care provider had actually incurred attorney's fees. _Id._ We disagreed. We concluded that the statute mandated the award of attorney's fees, on motion, and that the attorney's uncontested, albeit cursory, testimony about his fee, along with the other circumstances, was enough to present the issue to the court. _Id._

The present case, of course, involves a different statute and a different issue. Unlike _Garcia,_ the question is not whether the trial court erred in failing to make an award of fees required by statute, but rather whether the court properly applied the lodestar method in determining contested attorney's fees. As El Apple points out, this Court has not previously reviewed a lodestar award under these circumstances.

The lodestar method aims to provide a relatively objective measure of attorney's fees. _Gonzales,_ 72 S.W.3d at 412. It has been criticized, however, for providing a financial incentive for counsel to expend excessive time in unjustified work and for creating a disincentive to early settlement. _Gen. Motors Corp. v. Bloyed,_ 916 S.W.2d 949, 960 (Tex.1996) (citing _Court Awarded Attorney Fees,_ 108 F.R.D. 237, 246–49 (3d Cir. Task Force 1985)). To avoid these pitfalls, a trial court should obtain sufficient information to make a meaningful evaluation of the application for attorney's fees. Charges for duplicative, excessive, or inadequately documented work should be excluded. _Watkins v. Fordice,_ 7 F.3d 453, 457 (5th Cir.1993). A meaningful review of the hours claimed is particularly important because the usual incentive to charge only reasonable attorney's fees is absent when fees are paid by the opposing party. As the U.S. Supreme Court has observed:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's _client_ also are not properly billed to one's _adversary_ pursuant to statutory authority."

_Hensley,_ 461 U.S. at 434, 103 S.Ct. 1933 (quoting _Copeland v. Marshall,_ 641 F.2d 880, 891 (D.C.Cir.1980) (en banc)). While Texas courts have not routinely required billing records or other documentary evidence to substantiate a claim for attorney's fees, the requirement has merit in contested cases under the lodestar approach.

The starting point for determining a lodestar fee award is the number of hours "reasonably expended on the litigation." _Id._ at 433, 103 S.Ct. 1933. The party applying for the award bears the burden of **\*763** proof. _Id._ at 437, 103 S.Ct. 1933. That proof should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked. An attorney could, of course, testify to these details, but in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information. Thus, when there is an expectation that the lodestar method will be used to calculate fees, attorneys should document their time much as they would for their own clients, that is, contemporaneous billing records or other documentation recorded reasonably close to the time when the work is performed.

**[5]** In this case, neither attorney indicated how the 890 hours they spent in the aggregate were devoted to any particular task or category of tasks. Neither attorney presented time records or other documentary evidence. Nor did they testify based

**Schultz, William 10/26/2015**
**For Educational Use Only**

on their recollection of such records. The attorneys instead based their time estimates on generalities such as the amount of discovery in the case, the number of pleadings filed, the number of witnesses questioned, and the length of the trial. While all this is relevant, it provides none of the specificity needed for the trial court to make a meaningful lodestar determination. The court could not discern from the evidence how many hours each of the tasks required and whether that time was reasonable. Without at least some indication of the time spent on various parts of the case, a court has little basis upon which to conduct a meaningful review of the fee award.

Moreover, if multiple attorneys or other legal professionals are involved in a case, the fee application should indicate which attorney performed a particular task or category of tasks. The application here did not provide this information. For instance, the fee application details a list of thirty-seven pleadings and states that they were prepared or reviewed by either Gonzalez or Dominguez. The two attorneys, however, bill at different rates. Without specifying who performed a task, the information is incomplete. Such uncertainty diminishes the objectivity that the lodestar method aims to provide.

Olivas's attorneys also utilized legal assistants in this litigation and were awarded $6,500 for their services ($65 per hour for 100 hours of work). While both attorneys stated in their affidavits that "[l]egal assistant time was necessarily expended in the prosecution of [the] case," no evidence was offered to describe the tasks their legal assistants performed, who performed these services, or their qualifications. When obtaining payment for work done by paralegals or legal assistants, Texas courts have required more information, such as:

> (1) [T]he qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant.

*All Seasons Window and Door Mfg., Inc. v. Red Dot Corp.,* 181 S.W.3d 490, 504 (Tex.App.-Texarkana 2005, no pet.) (quoting *Multi–Moto Corp. v. ITT Commercial Fin. Corp.,* 806 S.W.2d 560, 570 (Tex.App.-Dallas 1990, writ denied)). Paralegal fees have been denied absent such proof. *Moody v. EMC Servs., Inc.,* 828 S.W.2d 237, 248 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

**[6]** We generally accord considerable deference to a trial court's findings regarding whether prevailing counsel's claimed **\*764** hours are excessive, redundant, or unreasonable. The trial court possesses a superior understanding of the case and the factual matters involved. But when applying for a fee under the lodestar method, the applicant must provide sufficient details of the work performed before the court can make a meaningful review of the fee request. For the purposes of lodestar calculations, this evidence includes, at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required.

Because the affidavits and other evidence in this case did not provide sufficient information for a lodestar calculation, we must reverse and remand. We are mindful, however, that the attorneys in this case may not have contemporaneous billing records that document their time as we have not heretofore explained the proof necessary to support a fee application under the lodestar method. Nevertheless, on remand, they should reconstruct their work in the case to provide the minimum information the trial court requires to perform a meaningful review of their fee application.

### IV

El Apple further complains that the trial court erred in doubling the lodestar to approximate a reasonable attorney's fee in the case. As previously noted, our class action rule expressly recognizes the multiplier, authorizing the trial court to make attorney fees awards "in the range of 25% to 400% of the lodestar figure." TEX.R. CIV. P. 42(i)(1). Although that rule does not apply here, the lodestar method should not vary from claim to claim, that is, the formula should be the same in TCHRA suits as in class actions. When appropriate under the particular circumstances of the case, a trial court may

Schultz, William 10/26/2015
For Educational Use Only

115 Fair Empl.Prac.Cas. (BNA) 510, 55 Tex. Sup. Ct. J. 954

therefore use a multiplier to increase or decrease the lodestar figure to approximate a reasonable fee.

El Apple argues, however, that the trial court abused its discretion in using a 2.0 multiplier in this case because no circumstances justify inflating the base figure. El Apple contends instead that a multiplier should have been used in this case to discount the lodestar because Olivas prevailed only on her retaliation claim, while her fee request presumably included the time spent on the discrimination claim as well. Thus, El Apple submits the time Olivas's attorneys spent preparing and trying the discrimination claim should be discounted or excluded from the lodestar figure unless she can show that the time spent pursuing the unsuccessful claim advanced her successful claim.

El Apple further asserts that the lodestar is presumptively a reasonable fee and that enhancements should be rare and reserved for exceptional cases. *Perdue v. Kenny A. ex rel. Winn,* ––– U.S. ––––, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010). El Apple contends that the trial court based its decision to enhance the lodestar solely on the contingent nature of the fee and not on any exceptional aspect of the case. Moreover, El Apple submits that federal law has expressly rejected the contingent nature of an attorney's representation as a basis for the lodestar's enhancement. *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

 **[7]** State procedural rules generally govern the determination of attorney's fees in a suit brought under a state statute permitting attorney's fees. Although the TCHRA was enacted to effectuate the policies of Title VII of the Civil Rights Act of 1964, no indication exists that the Legislature intended to incorporate federal procedure **\*765** for assessing attorney's fees. *See* TEX. LAB.CODE § 21.001; *Hoffmann–La Roche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 445–46 (Tex.2004). Nevertheless, in applying our state statute, we may draw on the far greater body of federal court experience with lodestar and fee shifting under the similar federal statute. Though not bound to adopt the federal standards, Texas courts may appropriately consider them. *Cf. Williams v. Lara,* 52 S.W.3d 171, 181 (Tex.2001); *Bloyed,* 916 S.W.2d at 954 n. 1.

We accordingly accept the premise that lodestar presumptively produces a reasonable fee, but that exceptional circumstances may justify enhancements to the base lodestar.

Whether a multiplier is needed, however, cannot be determined until the base lodestar is known. Because we do not as yet have a legitimate base lodestar in this case, any comment on the need for a multiplier here is premature.

\* \* \* \* \* \*

In summary, we hold that the fee application and proof in this case did not provide the trial court legally sufficient evidence to calculate a reasonable fee award using the lodestar method. To establish the number of hours reasonably spent on the case, the fee application and record must include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate. Because the record in this case does not provide these details, we reverse the court of appeals' judgment affirming the attorney's fee award and remand to the trial court for a redetermination of fees consistent with this opinion.

Justice HECHT filed a concurring opinion in which Justice WAINWRIGHT and Justice WILLETT joined.

Justice HECHT, joined by Justice WAINWRIGHT and Justice WILLETT, concurring.

I join fully in the Court's opinion with the additional observation that, besides lacking supporting records, Olivas's attorneys' request for fees and the trial court's award were patently unreasonable.

After an eight-day trial, the jury failed to find that El Apple discriminated against Olivas on the basis of gender but found that it created a hostile work environment for her because of her complaints of discrimination. The jury awarded Olivas $1,700 in back pay and $103,000 for past and future compensatory damages. The trial court awarded Olivas $464,000 attorney fees and $6,500 paralegal fees through the rendition of judgment, plus $99,000 conditionally for post-judgment proceedings and appeals. The court of appeals reversed the back-pay award and affirmed the other damages and attorney fees. [1] The court of appeals held that the award of attorney fees was reasonable. On its face, it could not have been.

**El Apple I, Ltd. v. Olivas, 370 S.W.3d 757 (2012)**

115 Fair Empl.Prac.Cas. (BNA) 510, 55 Tex. Sup. Ct. J. 954

Olivas's lead counsel, Daniel Gonzalez, engaged another lawyer, Francisco X. Dominguez, to help him try the case. Dominguez stated that he spent 150 hours total, but later raised the number to 190. Gonzalez stated that he spent 700 hours total and about 200 at trial, meaning that Gonzalez spent 500 hours for pretrial proceedings. Discovery was minimal. The parties exchanged requests for disclosure and a set of interrogatories. Olivas sent El Apple a request for admissions and two requests for production. Gonzalez estimated that 1,200–2,500 pages of documents were produced. Three depositions were taken. One motion to compel was heard and granted.

**\*766** I agree with the Court that Gonzalez and Dominguez's failure to produce any records supporting the hours they claimed to have spent on the case is fatal to their fee application. Even if they had, their request would not be reasonable. Even if the time they claimed to have spent for trial were considered reasonable, and it is not at all clear that it should be, 500 hours on the pretrial proceedings could not possibly be reasonable.

There are two other, surer indicators of a reasonable fee. One is that El Apple's lawyer, David Pierce, and his associate spent 266.7 hours at about $200 per hour. The trial court ordered El Apple to pay Olivas more than 7 times as much as it paid its own lawyers, for 890 hours of attorney time at an average of $521 per hour. The other is what contingent fee might be reasonable had this been, say, a products liability case. A 50% contingent fee, taking into account the difficulty of the case and the reality that many cases are lost, would have been $51,500. Instead, the trial court awarded Olivas's attorneys 450% of her recovery.

El Apple's counsel repeatedly stated to the trial court that Olivas's attorneys had represented her well and should be fully compensated, objecting only to their exorbitant request. Statutory fee-shifting is not a bonanza. It should take into account what the market should. Olivas's attorneys' request did not do so.

**All Citations**

370 S.W.3d 757, 115 Fair Empl.Prac.Cas. (BNA) 510, 55 Tex. Sup. Ct. J. 954

Footnotes

1    *Arthur Andersen* 's eight-factor test is similar to the test used by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), overruled on other grounds by *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

1    324 S.W.3d 181 (Tex.App.-El Paso 2010).

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Ex parte Lillard, 159 Tex. 18 (1958)

314 S.W.2d 800



KeyCite Yellow Flag - Negative Treatment

**Distinguished by** Clark v. Bres, Tex.App.-Hous. (14 Dist.), September 5, 2006

159 Tex. 18
Supreme Court of Texas.

Ex parte Lee LILLARD.

No. A-6835. | June 18, 1958.
| Rehearing Denied July 23, 1958.

Original proceedings respecting application for writ of habeas corpus by relator who had been held in contempt of court. The Supreme Court, Norvell, J., held that where former wife instituted action in Dallas County District Court for modification of divorce decree awarding custody of child to her so long as it remained in a certain home, and then instituted separate proceedings in Tarrant County District Court to obtain complete custody of child, Dallas County District Court acquired exclusive jurisdiction over matter of child's custody and order of Tarrant County District Court granting custody of child to wife was void and relator could not be held in contempt of court for violation of such order.

Relator discharged.

Calvert and Walker, JJ., dissented on motion for rehearing.

West Headnotes (5)

**[1]** **Child Custody**
    Pleading

Where divorce decree granted custody of child on certain conditions and subsequently ex-wife filed pleading designated as a motion for change of her residence of minor child and amendment of judgment under the same docket number as given original divorce suit, subsequent motion must be considered as the institution of a new suit which had for its purpose the changing of order relating to custody of minor.

3 Cases that cite this headnote

**[2]** **Contempt**
    Validity of Mandate, Order, or Judgment

Party could not be legally held in contempt of court for violating a void decree thereof.

9 Cases that cite this headnote

**[3]** **Courts**
    Suits for Divorce
**Child Custody**
    Jurisdiction

Where former wife instituted action in Dallas County District Court for modification of divorce decree rendered therein and which awarded custody of child to mother so long as it remained in a certain home, and then wife instituted separate proceedings in Tarrant County District Court to obtain custody of child, Dallas County District Court acquired exclusive jurisdiction over matter of child custody and order of Tarrant County District Court granting custody of child to wife was void and person failing to obey such order by refusing to give up child could not be held in contempt of court.

9 Cases that cite this headnote

**[4]** **Abatement and Revival**
    Ground of Abatement in General

Where suit is filed in a court of competent jurisdiction and that jurisdiction has attached, subsequent suit in a court of concurrent jurisdiction is abated by reason of the first suit, since when the first suit is brought it is thereby segregated from the general class to which it belonged and withdrawn from the authority and jurisdiction of all other courts of co-ordinate power.

11 Cases that cite this headnote

**[5]** **Courts**

Vacating or Annulling Decisions

Ordinarily, remedy for erroneous overruling of a plea of another suit pending is by appeal but this is not the exclusive remedy in all situations particularly when conflicting judgments are issued by courts of co-ordinate jurisdiction.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*18  \*\*801**  Harris & Reeves, Arlington, Ft. Worth, for relator.

Alfred M. Clyde and Eva Barnes, Ft. Worth, for respondent.

**Opinion**

NORVELL, Justice.

On the 25th of April, 1958, the Judge of the District Court of Tarrant County, 153rd Judicial District, entered an order in Cause No. 4965-C on the docket of said court, styled Imagene Lillard v. Lee Lillard and wife, Jean Lillard, in which he found that Lee Lillard had violated a prior order of said court dated June 7, 1957, relating to the custody of John S. Lillard, Jr., the five-year-old minor son of Imagene Lillard and a nephew of **\*19** Lee Lillard. It was accordingly ordered that said Lillard be held in contempt of court and committed to the county jail of Tarrant County for a period of three days and 'as long thereafter and until such time thereafter as the said Lee Lillard will fully and completely purge himself from contempt of court * * *.'

This Court granted the application for writ of habeas corpus, and admitted Lillard to bail pending a hearing of the cause.

The relator will be ordered discharged form the custody of the Sheriff of Tarrant County, Texas as we are of the opinion that the District Court of Tarrant County, Texas, was without jurisdiction to render the order of June 7, 1957, because of a prior attaching and exclusive jurisdiction of the Juvenile District Court of Dallas County, Texas, to fix and determine the custodial status of the minor John S. Lillard, Jr. Ex parte Eaton, 151 Tex. 581, 252 S.W.2d 557

The judicial history of the present controversy is somewhat complicated and may be best understood by setting forth the pertinent events in chronological order.

On February 15, 1956, plaintiff Imagene Lillard was granted a divorce from John S. Lillard in Cause No. 6304-G/J on the docket of the Juvenile District Court of Dallas County, Texas, hereafter referred to as the Dallas Court. That part of the decree relating to the custody of the minor son of the parties was as follows:

'It is further ordered, adjudged and decreed that Plaintiff be granted custody of the child, John S. Lillard, Jr., as long as the child is left in the home of Mr. and Mrs. Lee Lillard of Arlington, Texas. It is ordered by this Court that the said child remain in the home of Mr. and Mrs. Lee Lillard under their guidance until further orders from this Court.'

On June 3, 1956, the Dallas Court entered an order directing the Sheriff of Dallas County to take possession of the child and turn him over to Mr. and Mrs. Lee Lillard. Evidently at this time some controversy had developed between Imagene Lillard and Lee Lillard concerning the infant and Imagene Lillard had taken the child from the home of Mr. and Mrs. Lee Lillard.

**\*20  \*\*802  [1]**  On September 25, 1956, Imagene Lillard filed a pleading in the Dallas Court which she designated as a 'Motion for the change of residence of the minor child, John S. Lillard, Jr., and/or amendment of judgment.' While the pleading was filed under the same docket number as that given the original divorce suit, we think it must be considered as the institution of a new suit which had for its purpose the changing of the order relating to the custody of the minor, John S. Lillard, Jr. Lakey v. McCarroll, 134 Tex. 191, 134 S.W.2d 1016; Ex parte Webb, 153 Tex. 234, 266 S.W.2d 855; Black v. Black, Tex.Civ.App., 2 S.W.2d 331, no writ history. In this pleading Imagene Lillard alleged that a change of conditions affecting the custody of the child had taken place since the rendition of the original divorce decree and that she should be given 'full custody of said minor child without any qualifications or conditions whatsoever.' She prayed that John S. Lillard be cited to appear and show cause, if any there be, why such child should not be placed in her custody.

Schultz, William 10/26/2015
For Educational Use Only

(The motion mentioned was evidently an amended motion. The designation 'Amendment to Motion for Change of Residence' appears at the top of the first page thereof. A copy of the docket entries of the Judge of the Dallas Court filed among the papers of the case discloses the following:

9-11-56 File Motion change residence

9-19-56 File Plea of Privilege

9-20-56 Non-suit as to Lee Lillard

9-25-56 File Amended Motion

9-27-56 Plaintiff movant granted leave to amend and make new parties.

None of the pleadings or orders mentioned in the above docket entries are before us. It may be that Lee Lillard was a party to the original 'motion,' filed a plea of privilege to be sued in Tarrant County, the place of his residence and was thereafter dismissed from the suit. He was not a party to the 'motion' of September 25, 1956, although the purpose thereof was to abrogate the requirement of the original decree that the **\*21** minor child remain in the residence of Mr. and Mrs. Lee Lillard.)

On February 26, 1957,[1] Imagene Lillard, without dismissing her suit or motion filed in the Dallas Court on September 25, 1956,[2] filed suit against Lee Lillard and wife Jean Lillard, in the District Court of Tarrant County, 153rd Judicial District, hereinafter referred to as the Tarrant Court, wherein she sought full custodial rights in and to the minor child, John S. Lillard, Jr., as against the named defendants. Her husband, John S. Lillard, was not named as a defendant in this suit. This cause was docketed as Cause No. 4965-C.

In their answer[3] filed in Cause No. 4965-C, defendants Lee Lillard and wife pleaded in abatement that there was a suit pending in the Dallas Court 'for identically the same cause of action; the same subject matter is in dispute, the custody of John S. Lillard, Jr. That the case is still pending; that the plaintiff in that suit is the same plaintiff as in this suit and

the Court in Dallas County, Texas, gave leave to plaintiff to amend in that cause to bring in Mr. and Mrs. Lee Lillard.'

**\*\*803** On May 24, 1957, John S. Lillard, the defendant in the case pending in the Dallas Court (Cause No. 6304 G/J) filed an application for a temporary restraining order to prevent Imagene Lillard from taking the child from the home of Mr. and Mrs. Lee Lillard. This restraining order was issued as prayed for and the application for temporary injunction set for June 14, 1957.

On June 7, 1957, the Tarrant Court, after a hearing which took place on May 24, 1957 (according to the recitations of the judgment), rendered a decree in Cause No. 4965-C which awarded full and complete care, custody and control of the minor to Imagene Lillard and ordered Lee Lillard and wife to deliver possession of the child to Imagene Lillard forthwith. Notice of appeal from this judgment was given but no appeal was perfected.

**\*22** On June 10, 1957, the Tarrant Court issued an order to the Sheriff of Tarrant County in which it was recited that Lee Lillard and wife Jean Lillard were forcibly holding the minor child, John S. Lillard, Jr., despite the Court's order of June 7, 1957, that the child be forthwith delivered to Imagene Lillard. The sheriff was ordered to take physical custody of the child and turn him over to Imagene Lillard.

On June 14, 1957, an additional application for a restraining order against Imagene Lillard was filed in the Dallas Court by an attorney for John S. Lillard, alleging that she intended to take the child out of the state and thus defeat the jurisdiction of the court. This application, in addition to a prayer for injunctive relief, requested 'that on final hearing hereof, that the custody of said child be permanently placed with Mr. and Mrs. Lee Lillard or, in the alternative, that the legal custody of said child be placed with the Dallas County Juvenile authorities, and physical custody be placed with Mr. and Mrs. Lee Lillard, with specific and reasonable visitation privileges to plaintiff (Imagene Lillard) herein.' The restraining order was issued as prayed for and the hearing upon the application for a temporary injunction was set for June 28, 1957.

Also on June 14, 1957, John S. Lillard filed an amended original answer[4] in reply to the pleading filed by Imagene Lillard on September 25, 1956, in the Dallas Court wherein she sought a modification of the child custody provision contained in the original divorce decree. This amended

Schultz, William 10/26/2015
For Educational Use Only

answer alleged that the child was suffering from cerebral palsy and required constant medical attention. By way of cross-action, John S. Lillard sought to have the custodial rights in and to the child placed with Mr. and Mrs. Lee Lillard permanently or 'in the alternative, that the legal custody be placed with the Dallas County Juvenile authorities and that the physical custody of said child be placed with Mr. and Mrs. Lee Lillard.' This answer was signed by the same attorney who filed the application for injunctive relief above mentioned.

On June 28, 1957, the Dallas Court entered an order reciting the appearance of John S. Lillard in person and by attorney, service of notice of hearing upon Imagene Lillard and default on her part. The court found that Imagene Lillard had violated a previous order of the court by removing the child from the custody of Mr. and Mrs. Lee Lillard; that the child **\*23** was in need of immediate medical attention and decreed that Sam Davis, Dallas County Chief Probation Officer, have legal custody of the child until further order of the court.

On July 2, 1957, John S. Lillard filed a motion which resulted in the Dallas Court's issuing an order directing the sheriff of any county in the State of Texas, wherein the child may be found, to forthwith take the physical possession of such child and deliver him to 'the Chief Probation Officer, Dallas County, Texas, or whomever the Chief Probation Officer's Office designates should have custody of said child.'

**\*\*804** Sometime after the rendition of the Tarrant Court judgment on June 7, 1957, Imagene Lillard gained possession of the child and took him from Texas to the State of California. Sam Davis, the Chief Probation Officer of Dallas County, to whom custody of the child had been awarded by the Dallas Court, attempted without success to gain physical possession of the child by legal means through the California authorities.

On April 16, 1958, John S. Lillard and Lee Lillard, apparently acting under some supposed claim of right arising from the orders of the Dallas Court, gained possession of the child and took him from the residence of Imagene Lillard in Antioch, California and returned him to Texas. They then delivered the child to Sam Davis, the Chief Probation Officer of Dallas County. This action by Lee Lillard undoubtedly constituted a violation of the decree of the Tarrant Court of June 7, 1957, which awarded full and complete custody of the child to Imagene Lillard.

On April 24, 1958, the Tarrant Court rendered its contempt judgment as heretofore mentioned.

On May 5, 1958, the Dallas Court [5] refused an application for writ of habeas corpus filed by Imagene Lillard to change the custody award which had theretofore been made to Sam Davis, Chief Probation Officer of Dallas County. This order was entered by the Juvenile District Court of Dallas County in a proceeding styled Imagene Lillard v. John S. Lillard, but given a cause number (58720-Juv.) different from that of the original divorce case.

**\*24** **[2]** **[3]** The record presents a case of two district courts of coordinate power issuing conflicting orders as to an identical subject matter. The Dallas Court has awarded custody of the child to Sam Davis, Chief Probation Officer of Dallas County. The Tarrant Court has awarded custody to Imagene Lillard, the mother of the child. One or the other of these decrees is void for lack of jurisdiction of the subject matter. As the Dallas Court first acquired jurisdiction of the subject matter it follows that the Tarrant decree is void, Texas Trunk Ry. Co. v. Lewis, 81 Tex. 1, 16 S.W. 647; O'Neil v. Norton, Tex.Com.App., 29 S.W.2d 1060, and Lee Lillard cannot be legally held in contempt for violating a void decree. Ex parte Eaton, 151 Tex. 581, 252 S.W.2d 557. 'One cannot (as Imagene Lillard did in this case) invoke the jurisdiction of the court to deal with the personal status or the person of a child and at the same time deny the power of the court, in that proceeding, to do with the child's person or his status whatever appears to the court to be for the best interest of the child.' Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79, 82.

**[4]** Some quoting and paraphrasing of the language contained in this Court's opinion in the leading case of Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, 1071, will dispose of the case now before us. When Imagene Lillard filed her so-called 'motion for change of residence of minor child' in the Dallas Court, she invoked the jurisdiction of that court to change the status of the minor child from that fixed by the divorce decree. This occurred on September 25, 1956, long before any proceedings were had in the Tarrant Court. The filing of this motion must be considered as the institution of a new action which had for its purpose the modification of the custody provisions contained in the original judgment. Undoubtedly from and after the filing of this motion the Dallas Court was authorized to grant the prayer of the petition or motion or make such other disposition of the custody

Schultz, William 10/26/2015
For Educational Use Only

matter as might be justified under the pleadings and the facts disclosed upon a hearing. Imagene Lillard at no time sought a discontinuance **\*\*805** of the Dallas Court proceedings which she had instituted, although perhaps unfortunately she ignored the court action which she placed in motion and failed to appear at the time set for a hearing as to the custody of her minor child. Since jurisdiction attached upon her institution of the proceedings in Dallas County the rule is elementary that it could not be taken away or arrested by subsequent proceedings in another court. The Dallas Court having first acquired jurisdiction could exercise it to dispose of the whole subject matter of the litigation (the custodial status of the minor child) and adjust all **\*25** equities between the parties. The causes of action asserted in the Dallas Court and the Tarrant Court arise out of the same facts and involve the same subject matter. It follows that the proceedings in the Tarrant Court were abated by the Dallas Court suit. 'The reason of the abatement of the subsequent suit by the first, where the latter is filed in a court of competent jurisdiction and that jurisdiction has attached, is that when the suit is brought, it is thereby segregated as it were from the general class to which it belonged, and withdrawn from the authority and jurisdiction of all other courts of co-ordinate power.' Since the Tarrant Court 'had no jurisdiction of this particular case, what was done therein was necessarily void, for judicial action without jurisdiction is void.'

In Cleveland v. Ward the following excerpt from Freeman on Judgments (Vol. 1, s 335) was quoted with approval:

> 'It seems impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties. If either has authority to act, its action must necessarily be exclusive, and therefore it is our judgment that whenever either the state or the national courts acquire jurisdiction of an action and the parties thereto, this jurisdiction cannot be destroyed, diminished, or suspended by one of the parties bringing an action in another court, and that any judgment or order of the latter court is void so far as it conflicts with any judgment or order of the court first acquiring jurisdiction.'

That Court then continued:

'This extract from Freeman we believe states the sound rule, and the only rule which will prevent races from court to court by vigilant counsel, such as this record discloses, and that conflict in the exercise of judicial power in evidence here, which we believe was never contemplated under our judicial system. Courts are erected to settle controversies, not to multiply them. At any rate, the rule announced by Freeman is the one we adopt, and is consistent with that declared by Justice Lipscomb in 1852 in the Burdett case, cited above (Burdett v. State, 9 Tex. 43).

'What has been said is not in conflict with the doctrine of various cases that the pendency of a suit in another jurisdiction must be seasonably pleaded in abatement, that the plea may be waived, and that final judgment by default, or, in the **\*26** absence of pleading and proof of the pendency of a prior suit will be sustained. See the cases of Cook v. Burnley, 11 Wall. 659, 20 L.Ed. 29; Cook v. Burnley, 45 Tex. 97; Blassingame v. Cattlemen's Trust Co., Tex.Civ.App., 174 S.W. 900; Cattlemen's Trust Co. v. Blasingame, Tex.Civ.App., 184 S.W. 574; McCoy v. Bankers' Trust Co., Tex.Civ.App., 200 S.W. 1138. See, also, 1 Ruling Case Law, pp. 19, 20.

'These opinions are authority for the proposition that, since the pendency of a prior suit is predicated upon a state of facts, the facts must be seasonably alleged and proved, and, unless **\*\*806** this is done, the judgment of the subsequent court is conclusive on the fact of jurisdiction as upon any other fact. Freeman on Judgments (5th Ed.) vol. 2, ss 660, 662. This does not militate against our conclusion that, once the necessary facts are pleaded and admitted or proven, or shown by the undisputed record, as in this case, the subsequent suit is abated and its orders void for want of jurisdiction.'

 **[5]**    Ordinarily the remedy for the erroneous overruling of a plea of another suit pending is by appeal. But this is not the exclusive remedy in all situations, Wheeler v. Williams, Tex.Sup., 312 S.W.2d 221; 1 Tex.Jur. 125, Abatement and Revival, s 91, particularly when as here, conflicting judgments issued by courts of coordinate jurisdiction have resulted. In this situation it seems obvious that the judgment of the court lacking jurisdiction must be considered inoperative.

Schultz, William 10/26/2015
For Educational Use Only

The only possible distinction that can be suggested between the proceedings in the Dallas Court and those in the Tarrant Court rests upon the difference in parties. Here the documentary record made up of exhibits accompanying the application for the writ of habeas corpus and the answer thereto is not as clear as might be desired. Imagene Lillard's original pleading seeking a change in custody arrangements is not before us. It may be that Lee Lillard was made a party thereto and subsequently dismissed. There is some suggestion made in Lee Lillard's plea in abatement filed in the Tarrant Court that the Dallas Court granted Imagene Lillard leave to bring in new parties so that Lee Lillard could again be made a party to the Dallas proceeding. There is also an entry on the docket indicating that a plea of privilege was filed by someone, presumably Lee Lillard. However that may be, Lee Lillard was not a party to the original divorce suit in which the custody of the child as between the parties, Imagene Lillard and John S. Lillard, **\*27** was originally fixed. This decree gave no custodial rights to Lee Lillard and his wife, but simply provided as a condition to the award of custody to Imagene Lillard that the child should remain in the residence of Mr. and Mrs. Lee Lillard. It was a condition of custody much the same as the more usual provision that the child shall remain within the State or within the jurisdiction of the court. It could be changed in a proper proceeding in a court of competent jurisdiction in a suit between the parties to the original court decree. The Dallas Court's jurisdiction was invoked to change the custody order and such jurisdiction could not be defeated by leaving the Dallas proceeding pending and filing a suit in Tarrant County against Lee Lillard and wife only. The Dallas Court was the tribunal possessing prior and exclusive jurisdiction of the custody controversy, and it follows that the decree of the Tarrant Court rendered on June 7, 1957, is void for want of jurisdiction. Findings of contempt cannot be predicated upon such judgment. Accordingly relator is ordered discharged.

**Motion for Rehearing**

We have considered the motion for rehearing but adhere to the holdings expressed in our original opinion. Certified copies of various pleadings filed in the Dallas Court were submitted with the motion but these do not disclose a substantially different factual basis from that presented by the record before us at the time of the original submission. Further writing is deemed unnecessary.

The motion for rehearing is overruled.

CALVERT, Justice (dissenting).

The record now before us shows that Imagene Lillard had dismissed her suit against Lee Lillard in Dallas County before filing her suit against Mr. and Mrs. **\*\*807** Lee Lillard in Tarrant County on February 26, 1957. It therefore appears that at the time of the hearing in the District Court of Tarrant County on May 24, 1957, and at the time of the entry of judgment therein on June 7, 1957, there was no suit then pending in Dallas County between the same parties involving the same subject matter.

**\*28** Mr. and Mrs. Lee Lillard had physical possession of the minor in Tarrant County. The suit filed by Imagene Lillard in Tarrant County was the proper method and the Tarrant County District Court was the proper forum for adjudicating all issues of custody and possession of the minor as between Imagene Lillard and Mr. and Mrs. Lee Lillard. Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79.

The fact that there was then pending in Dallas County a suit between Imagene Lillard and her former husband, John S. Lillard, in which the District Court of Dallas County had jurisdiction to determine rights of custody as between those parties, in no way militated against the jurisdiction of the Tarrant County District Court to determine similar questions between Imagene Lillard and Mr. and Mrs. Lee Lillard.

It is my opinion that the judgment of the District Court of Tarrant County awarding custody of the minor child to Imagene Lillard as against any claim of right to possession or custody of such child by Lee Lillard was a valid judgment and that in violating that judgment by removing the child from the custody and possession of Imagene Lillard, Lee Lillard was in contempt of the judgment of the court. He should be remanded to the custody of the sheriff of Tarrant County for his contempt.

Inasmuch as the majority have ordered the release of Lee Lillard, I express no opinion as to whether his punishment could exceed a fine of $100 and confinement in the county jail for a period of three days.

**Ex parte Lillard, 159 Tex. 18 (1958)**

314 S.W.2d 800

WALKER, J., joins in this dissent.

**All Citations**

159 Tex. 18, 314 S.W.2d 800

Footnotes

1     The date of filing is not shown by the exhibit attached to the answer of respondent Harlon Wright, Sheriff of Tarrant County, Texas. The date given is that appearing upon an affidavit attached to the petition which we assume was the same as the date of filing.

2     Sometime between the dates mentioned, that is September 25, 1956 and February 26, 1957, Imagene Lillard changed attorneys and secured new counsel to represent her.

3     The date of the filing of this answer is not disclosed by the certified copy thereof.

4     The original answer of John S. Lillard is not before us.

5     Although all judicial proceedings in Dallas County were had in the Juvenile District Court, it appears that at least three judges signed orders in the cause under a system of rotation of judges in handling the county's juvenile docket.

**End of Document**                                                     © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Oliver v. Carter and Company Irr., Inc., Not Reported in S.W.3d (2002)

2002 WL 1301568
Only the Westlaw citation is currently available.

NOTICE: NOT DESIGNATED FOR PUBLICATION.
UNDER TX R RAP RULE 47.7, UNPUBLISHED
OPINIONS HAVE NO PRECEDENTIAL
VALUE BUT MAY BE CITED WITH THE
NOTATION "(not designated for publication)."

Court of Appeals of Texas,
El Paso.

Floyd OLIVER and Layton Oliver, Appellants,
v.
CARTER AND COMPANY IRR., INC., Appellee.

No. 08-01-00446-CV.   |   June 13, 2002.

Seller brought action on a sworn account against purchasers, alleging they defaulted in making payment on their account. The County Court, Gaines County, granted seller's motion for summary judgment. Purchasers appealed. The Court of Appeals, McClure, J., held that: (1) verified pleading attached to original answer sufficiently denied the account; (2) verification attached to pleading did not constitute required affidavit; (3) amended answer was sufficient to controvert seller's claim; and (4) purchasers had leave to file amended answer.

Reversed and remanded.

West Headnotes (4)

**[1]** **Account Stated**
 Vacating and Setting Aside
Verified pleading attached to purchasers' original answer to seller's complaint on sworn account, in which purchasers denied the amount due and "whether such charges were usual, customary and/or reasonable prices for said merchandise and/or services," sufficiently denied the account on which the claim was stated, although seller alleged it was nothing more than a

verified general denial. Vernon's Ann.Texas Rules Civ.Proc., Rules 93(10), 185.

Cases that cite this headnote

**[2]** **Account Stated**
 Vacating and Setting Aside
Verification attached to purchasers' original answer to seller's complaint for sworn account did not contain an oath that the facts alleged in the answer were true, and thus verification did not satisfy requirement of a supporting affidavit, although it was signed by purchasers and sworn to before two notaries. Vernon's Ann.Texas Rules Civ.Proc., Rules 93(10), 185.

Cases that cite this headnote

**[3]** **Pleading**
 Sufficiency of Verification
Purchasers' first amended answer was sufficient to controvert seller's sworn account claim, where answer contained more than a broad denial of the allegations and specifically referred to the account, answer denied that the amount alleged due and owing was not in accordance with any agreement, and supporting affidavit affirmed under oath that the statements in the answer were "true and correct" and contained all other recitations required in an affidavit. Vernon's Ann.Texas Rules Civ.Proc., Rules 93(10), 185.

Cases that cite this headnote

**[4]** **Appeal and Error**
 Amendments
Purchasers had presumed leave to file amended answer to seller's complaint regarding alleged failure to pay account, although there was no express trial court order granting them leave, where purchasers filed amended answer prior to hearing on seller's motion for summary judgment, there was no evidence that seller objected to it or suffered unfair prejudice or surprise, and there was no indication that trial

**Schultz, William 10/26/2015
For Educational Use Only**

court did not consider the amended answer when ruling on seller's summary judgment motion or denied leave. Vernon's Ann.Texas Rules Civ.Proc., Rule 63.

Cases that cite this headnote

Appeal from County Court of Gaines County, Texas, (TC # 1765).

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

*OPINION*

ANN CRAWFORD McCLURE, Justice.

 **\*1** Carter and Company Irr., Inc. (Carter & Co.) filed suit on a sworn account against Floyd and Layton Oliver (the Olivers). Alleging a defect in the Olivers' answer, Carter & Co. successfully sought summary judgment. We reverse and remand.

**FACTUAL SUMMARY**

Carter & Co. filed an original petition in the Gaines County Court alleging that the Olivers defaulted in making payment on their account with the company. Carter & Co. claimed that they sold services and/or merchandise to the Olivers which they accepted and became bound to pay at the designated price, "which is a reasonable, usual, and customary price for such merchandise." The total balance claimed to be due to Carter & Co. was $6,796.01, "exclusive of interest after all just and lawful offsets, credits, and payments have been allowed." Attached to the petition was a statement of account, which included a copy of a calculator tape and copies of six invoices.

The Olivers' original answer contains the following recitation:

COMES NOW, FLOYD OLIVER and LAYTON OLIVER, Defendants in the above-entitled and numbered

cause, and files this their verified Original Answer and would show the Court:

**I. GENERAL DENIAL**

Defendants deny each and every, all and singular, the allegations of Plaintiff's Original Petition and demand strict proof thereof as required by the Texas Rules of Civil Procedure. Said Defendants *deny the charges as reasonable and customary and the amount asserted and/ or claimed.*

**II. PRAYER**

Defendants pray the Court, after notice and hearing or trial, enter judgment in favor of Defendants, award Defendants their costs of court, attorney's fees, and such other and further relief as Defendants may be entitled to in law or in equity. [Emphasis added].

The Olivers verified their original answer by "verification" that reads as follows:

*VERIFICATION*

...

We the undersigned, FLOYD OLIVER and LAYTON OLIVER, Defendants in the above-numbered and entitled cause do hereby enter this verification of denial of the said sworn account. We hereby enter said denial, denying each and every allegation contained therein and specifically denying an amount due, the specifics of said amount being due, and the debt and/or account. A denial is hereby entered as to the amount charged and as to whether such charges were usual, customary, and/or reasonable prices for said merchandise and/or services and denying the amount asserted.

Signed this the *15th* day of *June,* 2001.

*/s/ Floyd Oliver*

*/s/ Layton Oliver*

SWORN TO AND SUBSCRIBED BEFORE ME, by the said FLOYD OLIVER, this *15th* day of *June,* 2001.

*/s/ Scarlett Eastteam*

Notary Public, State of Texas

SWORN TO AND SUBSCRIBED BEFORE ME, by the said LAYTON OLIVER, this *15th* day of *June,* 2001.

*/s/ Rhonda Marion Trent*

Notary Public, State of Texas

Four days later, Carter & Co. moved for summary judgment pursuant to Rule 166a of the Texas Rules of Civil Procedure on the grounds that the Olivers' answer was

**\*2** *[D]efective and insufficient in law* to constitute or raise a defense to Plaintiff's cause of action on the account referred to in Plaintiff's Original Petition. The pleadings, exhibits, and affidavits filed in this cause show that there is no genuine issue as to any material fact between the parties and accordingly plaintiff is entitled to judgment against Defendant as a matter of law as requested in the Plaintiff's original Petition. [Emphasis added].

The Olivers failed to file their objections and response to the motion within the required time period and asked for leave of court to file the response. The trial court denied the request. The Olivers then filed a motion to reconsider which was also denied.

The day before the trial court denied the motion to reconsider, the Olivers filed an amended original answer. It included two paragraphs, one setting forth a "general denial" and the other a "specific denial." The general denial was a reassertion of the general denial made in the original answer:

> Defendants deny each and every, all and singular, the allegations of Plaintiff's Original Petition and demand strict proof thereof as required by the Texas Rules of Civil Procedure. Said Defendants deny the charges as reasonable and customary and the amount asserted and/or claimed.

The specific denial provided:

> Defendants enters [sic] a verified denial pursuant to TEX.R.CIV.P. 93(10), and for proof thereof,

incorporates the attached verification and Exhibit 'A' herein. Further, Defendants would show that in connection with the account in question, there was no sale or delivery of goods and/or services, the amount alleged due and owing by the Plaintiff was not in accordance with an agreement, if any, and the amount is not unpaid.

The amended answer was supported by an affidavit by Floyd Oliver. In its summary judgment, the trial court stated:

> *Having considered the Plaintiff's Motion, the Pleadings and Affidavits on file herein* as well as the argument of counsel, the Court finds that Plaintiff's suit is founded upon a sworn account, but that the Defendant *has failed to file a Response in compliance with the Texas Rules of Civil Procedure,* and that no such Response has been timely tendered; it is, therefore, ORDERED that such Response not be filed in the record of this cause. [Emphasis added].

The court also ordered that Carter & Co. recover from the Olivers the sum of $6,796.01 together with pre-judgment and post-judgment interest, and attorney's fees and costs. The Olivers timely filed this appeal. In their sole point of error, the Olivers claim that the trial court erred in granting summary judgment because Carter & Co. failed to prove the requisite elements of a suit on a sworn account as a matter of law with sufficient summary judgment evidence. The Olivers claim they filed a proper verified denial of Carter & Co.'s claims and amended the verified denial prior to the summary judgment hearing so as to raise a material fact issue. Consequently, Carter & Co.'s *prima facie* case was rebutted and Carter & Co. was required to prove each element of its claim on the account, but failed to do so.

**STANDARD OF REVIEW**

**\*3** The standard of review on appeal is whether the successful movant at the trial level demonstrated that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548 (Tex.1985). In resolving the issue of whether the movant has carried this burden, all

**Schultz, William 10/26/2015**
**For Educational Use Only**

evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Id.* at 548-49. When a trial court's order granting summary judgment does not articulate the grounds relied on for its ruling, an appellate court will affirm a summary judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

## SUIT ON A SWORN ACCOUNT

Texas Rules of Civil Procedure 185 and 93(10) govern suits for debt on a sworn account. Rule 185 provides:

> When any action or defense is founded upon an open account or other claim for goods, wares and merchandise, including any claim for a liquidated money demand based upon written contract or founded on business dealings between the parties, or is for personal service rendered, or labor done or labor or materials furnished, on which a systematic record has been kept, and is supported by the affidavit of the party, his agent, or attorney taken before some officer and authorized to administer oaths, to the effect that such claim is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed, the same shall be taken as prima facie evidence thereof, *unless the party resisting such claim shall file a written denial, under oath. A party resisting such a sworn claim shall comply with the rules of pleading as are required in any other kind of suit,* provided, however, that if he does not timely file a written denial, under oath, he shall not be permitted to deny the claim, or any item therein, as the case may be. No particularization or description of the nature of the component parts of the account or

claim is necessary unless the trial court sustains special exceptions to the pleadings. [Emphasis added].

TEX.R.CIV.P. 185. Rule 93 provides:

> A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be *verified by affidavit.*
>
> ...
>
> 10. A denial of an account which is the foundation of the plaintiff's action, and supported by affidavit. [Emphasis added].

TEX.R.CIV.P. 93(10).

In order to establish sufficient evidence to support a *prima facie* case in a suit on a sworn account and sufficient evidence to support a summary judgment disposition, the movant must strictly adhere to the provisions of the Texas Rules of Civil Procedure. TEX.R.CIV.P. 185, 93(10), 166a. *Andrews v. East Texas Med. Ctr.-Athens,* 885 S.W.2d 264, 267 (Tex.App.-Tyler 1994, no writ); *Cooper v. Scott Irrigation Constr. Inc.,* 838 S.W.2d 743, 746 (Tex.App.-El Paso 1992, no writ). If there is a deficiency in the plaintiff's sworn account, the account will not constitute *prima facie* evidence of the debt. *See Enernational Corp. v. Exploitation Eng'rs, Inc.,* 705 S.W.2d 749, 750 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). At the same time, the defendant's denial must be written and supported by an affidavit denying the account. TEX.R.CIV.P. 93(10); *Andrews,* 885 S.W.2d at 267. A sworn general denial is insufficient. *Huddleston v. Case Power & Equipment Co.,* 748 S.W.2d 102, 103 (Tex.App.-Dallas 1988, no writ); *Cooper,* 838 S.W.2d at 746. A proper denial will destroy the *prima facie* effect of the verified claim and will force the plaintiff to prove his claim. *Cooper,* 838 S.W.2d at 746. A party who fails to file a sworn denial as required by Rules 185 and 93(10) may not dispute the receipt of items or services or the correctness of the stated charges. *Canter v. Easley,* 787 S.W.2d 72, 73 (Tex.App-Houston [1st Dist.] 1990, writ denied), *citing Vance v. Holloway,* 689 S.W.2d 403 (Tex.1985); *Cooper,* 838 S.W.2d at 745-46. Should the defendant's answer not satisfy the requirements of Rule 93(10), the plaintiff's affidavit attached to its petition will be considered *prima facie* evidence to support a summary judgment and additional proof of the accuracy of the account

is unnecessary. *Rizk v. Financial Guardian Ins. Agency, Inc.* 584 S.W.2d 860, 862 (Tex.1979). Consequently, the plaintiff may dispose of the case on the pleadings alone. *Andrews,* 885 S.W.2d at 268.

**\*4** The issue before us is the sufficiency of the Olivers' sworn denial in their original answer. Carter & Co.'s motion for summary judgment alleged that the Olivers' answer was "defective and insufficient in law to constitute or raise a defense" to their cause of action. It is unclear from the language of the motion or the trial court's order granting summary judgment whether the summary judgment was granted because of an insufficiency of the language used in the answer to deny Carter & Co.'s claim or because of a defect in the form of the purported affidavit supporting the answer. In either case, we find that the Olivers' original answer did not satisfy the requirements of Rules 185 and 93(10) to destroy the *prima facie* effect of Carter & Co.'s sworn account claim.

### *Sufficiency of the Olivers' Original Answer*

**[1]** Carter & Co.'s original petition and supporting affidavit complied with Rule 185 and established a *prima facie* case on the sworn account claim. At this point, Carter & Co. was entitled to summary judgment on the pleadings without additional proof unless the Olivers properly controverted the claim with a written denial. Rule 185 requires that the party resisting a sworn account "file a written denial, under oath" and comply with Rule 93(10) requiring a special verified denial of the account supported by an affidavit in order to put the plaintiff's claim at issue. *Huddleston,* 748 S.W.2d at 103. Neither Rule 185 nor Rule 93(10) specifies a particular form or mandate magic words to be used in a defendant's sworn denial. *Andrews,* 885 S.W.2d at 267. Rule 185 was amended in 1984 to eliminate the technical pleading requirements of the former version and to make suits on account subject to ordinary rules of pleading and practice. *Canter,* 787 S.W.2d at 74. While no specific form or words are required, the answer must "sufficiently deny" the account upon which the plaintiff's claim is founded. *Id.; Cooper,* 838 S.W.2d at 746. A defendant need not deny each and every item of a sworn account claim, but must deny the account upon which the plaintiff's case is based. *Huddleston,* 748 S.W.2d at 103-04. Carter & Co. argues that the verified pleading attached to the Olivers' answer is no more than a verified general denial and

fails to satisfy the requirements of Rules 185 and 93(10). We disagree.

The Olivers denied the account upon which Carter & Co.'s claim is based with specific facts. They denied the amount due and "whether such charges were usual, customary and/ or reasonable prices for said merchandise and/or services...." This denial directly controverts the claim made by Carter & Co. in their original petition regarding the reasonableness of the prices for the merchandise at issue. While no specific form or words are required, the denial must be directed at the particular account in question.

In *Canter,* the court held that a defendant's sworn answer met the requirements of Rules 185 and 93(10) and that it sufficiently denied the account upon which the plaintiff's claim was based when it denied "the allegations contained in Paragraphs II and III and IV of the Plaintiff's Original Petition" and where Paragraph II of the plaintiff's original petition contained the sworn account allegations. *Canter,* 787 S.W.2d at 73-74. The Olivers' answer is more specific. *See Worley v. Butler,* 809 S.W.2d 242, 245 (Tex.App.-Corpus Christi 1990, no writ)(where plaintiff would have to show that the prices charged in the absence of an agreement are the usual, customary, and reasonable prices for that merchandise or services). The Olivers' answer included a denial that the charges were reasonable and customary. This was sufficient to raise a fact issue to overcome the plaintiff's *prima facie* case. However, whether or not the language in the Olivers' answer sufficiently denies the sworn account claim, the attached "verification" renders the answer fatally defective.

### *The "Verification" as Affidavit*

**\*5** **[2]** Carter & Co. argues that the Olivers' answer was insufficient because it failed to have an affidavit in support of the answer as required by Rules 185 and 93(10). We agree. The "verification" attached by the Olivers did not constitute an affidavit. "Affidavit" is defined as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX.GOV'T CODE ANN. § 312.011(1)(Vernon 1998). No particular terminology is required by Section 312.011 to render a document an affidavit. *Norcross v. Conoco, Inc.,*

720 S.W.2d 627, 630 (Tex.App.-San Antonio 1986, no writ). It is the substance and not the form of an affidavit that is important. *Id., citing Taylor v. Fred Clark Felt Company,* 567 S.W.2d 863 (Tex.Civ.App.-Houston [14th Dist.] 1978, writ ref'd n.r.e .). However, the form of a statement is important for purposes of determining whether such statement qualifies as an affidavit that must accompany a written denial under Rules 185 and 93(10).

In order for the "verification" to satisfy the requirements of an affidavit under Rules 185 and 93, it must recite under oath that the factual statements contained in the defendant's answer are *true. See Brown Foundation Repair and Consulting, Inc., v. Friendly Chevrolet* Co., 715 S.W.2d 115, 117 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). *Brown* involved a sworn account where the defendant's trial pleading read in relevant part, "SUBSCRIBED AND SWORN TO before me, the undersigned authority, by Robert L. Brown, known to me to be the Vice-President of Brown Foundation Repair and Consulting, Inc., to certify which witness my hand and seal of office this *28* day of June, 1985." *Id.* The court held that the affidavit did not constitute a verified denial because "[n]owhere does it appear that Robert L. Brown has sworn or affirmed under oath that the facts stated are true." *Id.* at 118. While the verification here was signed by both of the Olivers and was sworn to before two notaries, it does not contain an oath that the facts alleged in the answer are *true* and thus does not satisfy the requirements for an affidavit under Rules 185 and 93(10).

### *Sufficiency of the Olivers' First Amended Original Answer*

 **[3]**    Having determined that the Olivers' original answer failed to satisfy the requirements of Rules 185 and 93(10) so as to properly controvert Carter & Co.'s sworn account claim, we now turn to the Olivers' claim that their first amended answer sufficed. The day before the trial court denied the motion to reconsider the request for the late filing of a response to the motion for summary judgment, the Olivers filed an amended original answer containing both a "general" denial reasserting the denials made in the original answer and a "specific" denial that provided additional facts controverting the sworn account claim. The answer was supported by an "affidavit" signed by Floyd Oliver.

 **\*6**   The amended answer and supporting affidavit easily satisfy the requirements of Rules 185 and 93(10). It contained more than a broad denial of the allegations against the Olivers and specific reference was made to the account which is the basis of the plaintiff's petition, stating, "in connection with the account in question, there was no sale or delivery of goods and/or services...." The Olivers also denied that "the amount alleged due and owing by the Plaintiff was not in accordance with any agreement, if any...." The affidavit contained the essential affirmation under oath that the statements contained in the Olivers' amended answer were "true and correct" as well as all other recitations required in an affidavit.

### *Was the First Amended Answer Considered by the Trial Court?*

 **[4]**    The Olivers argue that because they filed the amended answer prior to the hearing on the motion for summary judgment, because there was no evidence in the record that Carter & Co. objected to it or suffered unfair prejudice or surprise, and because there was no indication that the trial court did not consider it, leave to file the amended answer should be presumed. We agree. Rule 63 of the Texas Rules of Civil Procedure provides:

> Parties may amend their pleadings ... provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX.R.CIV.P. 63. Rule 63 has been given a liberal interpretation. *Goswami v. Metropolitan Savings and Loan Association,* 751 S.W.2d 487 (Tex.1988). In *Goswami,* the Texas Supreme Court held that since the record in the case was silent of any basis to conclude that the amended petition was *not* considered by the trial court and that the opposite party did not show surprise or prejudice, leave of court was presumed. *Goswami,* 751 S.W.2d at 490. Here, the amended answer was filed within seven days of the summary judgment

**Oliver v. Carter and Company Irr., Inc., Not Reported in S.W.3d (2002)**

hearing. The *Goswami* court determined that a summary judgment proceeding is a "trial" within the meaning of Rule 63. *Id.* The trial court's order granting summary judgment states that it "considered the Plaintiff's Motion, the Pleadings and Affidavits on file herein." The record does not indicate that the trial court refused leave to file the amended answer; it indicates only that the trial court denied leave to file an untimely response to the motion for summary judgment. Nor does the record contain any indication that Carter & Co. would suffer surprise or prejudice. Thus, we presume that the trial court granted leave to amend and that the amended answer was properly before the trial court when it entered its order on the motion for summary judgment. The amended answer and supporting affidavit satisfied the requirements of Rules 185 and 93(10). Consequently, Carter & Co.'s petition cannot be considered *prima facie* evidence to support summary judgment in their favor. We overrule Appellants' sole issue and reverse and remand for further proceedings.

**All Citations**

Not Reported in S.W.3d, 2002 WL 1301568

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**Phillips v. Herndon, 78 Tex. 378 (1890)**

14 S.W. 857, 22 Am.St.Rep. 59

78 Tex. 378
Supreme Court of Texas.

PHILLIPS

v.

HERNDON *et al.*

Nov. 11, 1890.

Commissioner's decision. Appeal from district court, Smith county; FELIX J. McCORD, Judge.

West Headnotes (6)

**[1]** **Appeal and Error**

👉 Contents and Interpretation in General

In a suit for specific performance brought by the vendee, the bond for a deed, as shown in the bill of exceptions, described a note for the purchase money as maturing January 1, 1879, instead of January 1, 1876, as alleged in the petition. A receipt for the cash payment recited that the note matured January 1, 1876, and the vendor testified that it was due at that time. Held, that it would be presumed that "1879" was written in the bill of exceptions by a clerical error, and that it was error to exclude the bond for variance.

Cases that cite this headnote

**[2]** **Evidence**

👉 Trustee or Beneficiary

When the vendee has died, and suit for specific performance is brought on behalf of his infant children by their grandfather, as guardian, his acts and declarations prior to his appointment as guardian cannot affect their rights, and are irrelevant.

1 Cases that cite this headnote

**[3]** **Payment**

👉 Manner of Application in General

A vendee purchased two tracts of land, establishing his home on the first purchase. A general payment was made by him, and money was collected by the vendor on the order of the vendee after his death. It did not appear that the vendor made any applications of the payments, which were sufficient to complete the first purchase, but not the second. Held that, the vendee being dead, and unable to make the application when the last payment was received, the law will so apply it for him as will be most to his interest, and such payment should be applied to the first purchase.

9 Cases that cite this headnote

**[4]** **Specific Performance**

👉 Averments as to Contract

In a suit for specific performance of a bond to make "a good and valid deed in common form" the bond is properly declared on in accordance with its legal effect as an obligation to convey "in fee-simple by warranty deed."

5 Cases that cite this headnote

**[5]** **Specific Performance**

👉 Items, Measure, and Amount of Damages

In a suit by the vendee for specific performance, or for compensation, if that cannot be had on account of the land having been conveyed to a bona fide purchaser, where it appears that the vendor conveyed the land to another after the vendee had fully complied with the terms of his contract, the latter may recover the value of the land at the time of the conveyance, and is not confined to the purchase money paid, with interest.

10 Cases that cite this headnote

**[6]** **Vendor and Purchaser**

👉 Election to Rescind, and Notice

Where a vendee takes possession of the land, and pays part of the purchase money, the vendor

Schultz, William 10/26/2015
For Educational Use Only

**Phillips v. Herndon, 78 Tex. 378 (1890)**

14 S.W. 857, 22 Am.St.Rep. 59

cannot rescind without notice of his intention to do so; and, on the vendee's dying, leaving infant children as his sole heirs, who are without a guardian, there is no one to whom notice can be given, and there can be no rescission.

8 Cases that cite this headnote

**Attorneys and Law Firms**

**\*378** **\*\*857** *White & Edwards*, for appellant.

**\*379** *George H. Gould* and *W. S. Herndon*, for appellees.

**Opinion**

ACKER, J.

On the 15th day of September, 1875, W. S. Herndon sold to James Moseley five acres of land, for the consideration of $100 in gold, for which Moseley executed his promissory note, bearing interest from that date at 10 per cent. per annum, and payable on the 1st day of January, 1876; and also paid to Herndon $30 in currency, for which Herndon executed his receipt, to be credited on Moseley's note at its value in gold. Herndon executed and delivered to Moseley a bond for title in the usual form, and Moseley went into possession, built a house **\*380** upon the land, and resided there with his family until his death, in November, 1881. In addition to the $30, currency paid by Moseley at the time of his purchase, he made the following payments to Herndon: On the 21st day of November, 1877, Herndon receipted him for 'twenty dollars to be credited on his land note.' On the 1st day of December, 1877, $30 in currency, which was receipted for to be credited on the note. On December 17, 1878, Herndon made a statement showing balance of $46.90 due him by Moseley, and on that day he credited the statement with the sum of $30, then paid by Moseley, reducing the balance due to $16.90. On the 14th day of January, 1879, Herndon sold to Moseley another tract of 5.8 acres of land for the consideration of $100 in gold, for which Moseley executed his promissory note, due at one day after date, with interest from date at 10 per cent. per annum, and Herndon executed and delivered his bond for title to Moseley, and Moseley took possession of this tract, also. On the 4th day of October, 1881, Moseley paid Herndon $18, and on the 1st day of December,

1882, Herndon collected $35 due to Moseley for a pony he had sold in 1881. When Moseley died, in November, 1881, he left a wife and four minor children living on the land. His wife died in June, 1882, and her parents, Perry and Polly Phillips, took charge of the children, and moved them from the land to their home, to care for them, and took possession of the land. On October 15, 1883, Herndon made a statement to Phillips and wife, showing balance of $173.75 due him on the two sales made to Moseley, and on that day Herndon indorsed on each of the bonds for title that the sales made to Moseley were canceled and that he had that day sold the lands to Perry Phillips for the consideration of $173.75, upon which Phillips then paid him $3.75. On the 10th day of December, 1887, Herndon sold the lands to F. R. Allen, who took possession thereof. Perry Phillips qualified as guardian of the minor children of James Moseley, and, as such, brought this suit on the 27th day of April, 1888, against Herndon and Allen for specific performance of the contracts made by Herndon with Moseley, alleging payment of the purchase money by Moseley, or to recover the value of the land from Herndon, if it was found **\*\*858** that Allen was a good-faith purchaser from Herndon, and alleged that the value of the land was $150 per acre at the time Herndon sold to Allen. Plaintiff also prayed for general relief. The defendants answered, pleading a general denial and limitation, and also pleaded cancellation of the sales to Moseley for failure to pay purchase money. Allen pleaded that he was an innocent purchaser. The trial without a jury resulted in judgment for the defendants, and plaintiff appealed.

**\*381** The plaintiff offered in evidence the bonds for title, to which the defendants objected 'for the reason that the same varied from, and did not correspond with, the allegations of the petition.' The objections were sustained, and the first and second assignments of error relate to these rulings. The allegations of the petition descriptive of the bonds are as follows: 'That on said 15th day of September, 1875, said W. S. Herndon, being desirous of disposing of said above-described land, entered into an agreement with James Moseley, the ancestor of plaintiff's said wards, for the sale of said lands to him, the said James Moseley, which agreement was reduced to writing, and signed by said W. S. Herndon, and delivered on the day it bears date, to-wit, on September 15, 1875, wherein said Herndon stipulated and agreed with said Moseley to convey to him said above-described tract of land in fee-simple, by warranty deed, upon payment of a promissory note, executed on said September 15, 1875,

**Phillips v. Herndon, 78 Tex. 378 (1890)**

14 S.W. 857, 22 Am.St.Rep. 59

by said James Moseley, for one hundred gold dollars, with 10% interest from date, due at Tyler, Texas, on January 1, 1876.' The bond, of date January 14, 1879, was described in substantially the same way. The objection does not designate in what the alleged variance consists, and we are unable to discover it. It is alleged that Herndon obligated himself to convey the land 'in fee-simple, by warranty deed,' while the bonds, offered in evidence, are conditioned that he would convey the lands 'by a good and valid deed or deeds in common form;' but this constitutes no variance, for an obligation to make 'a good and valid deed in common form,' binds the obligor to execute a warranty deed, and the petition correctly declared the legal effect of Herndon's obligations. Vardeman v. Lawson, 17 Tex. 11. It is true that it appears from the bill of exceptions that the bond of September 15, 1875, described the note, given by Moseley of that date, as maturing January 1, 1879, instead of January 1, 1876, as alleged in the petition; but the receipt given by Herndon for the $30, paid by Moseley on the day of the date of both the bond and the note, recites that the note matured on the 1st day of January, 1876. Herndon testified that it became due on that date, and indeed, all of the evidence upon that point went to show that the note of September 15, 1875, matured January 1, 1876, as alleged in the petition. We therefore conclude that '1879,' written in the bill of exceptions, is a clerical error, and that there is no variance between the allegations and evidence offered. We think the first and second assignments of error are well taken, and that the court erred in excluding the bonds.

The third assignment of error is: 'The court erred in excluding the evidence offered by plaintiff to prove the value of the land at the time defendant Allen took possession of it; said evidence being pertinent, and **\*382** plaintiff having alleged the value of said land, and prayed for judgment for said value in case he should fail to recover the specific land itself.' There were two separate and entirely distinct contracts entered into between Herndon and Moseley, either of which Moseley had the right to enforce the specific performance of, as against Herndon, upon proof of performance by Moseley of his part of the contract. If, after performance by Moseley, Herndon, by his voluntary act, placed it beyond his power to make title to the land, as stipulated in his bond, he thereby became liable to Moseley for such damages as were the direct and natural result of his failure to comply with his obligation. There has been much contrariety in the decisions of the courts as to the correct measure of damages in such case, but we believe that equity, and the weight of authority, sustain the view

that, in executory contracts of the character involved in this case, adequate compensation for the injury done should be recoverable, when the vendor, by his voluntary act, deprives himself of the ability to perform his contract. We are aware that the case of Hall v. York, 22 Tex. 643, following Sutton v. Page, 4 Tex. 142, seems to hold the contrary doctrine, for it is there said 'that where the vendor of land is not able to make title the vendee's measure of damages is the purchase money, and interest, and nothing more.' But that case, like the case of Sutton v. Page, was not a suit for specific performance, or to recover damages for breach of trust by the vendor. Hall v. York was a suit to recover the penalty fixed by the bond for title, which was a much larger sum than the money paid, and, like the case of Sutton v. Page, was simply an action on the personal covenant in the bond. In both of those cases it was held that the measure of damages was the money paid, with interest, unless other damages are specially alleged and proved. We do not think those cases are analogous to this. In the case of Hopkins v. Lee, 6 Wheat. 109, the court said: 'The rule is settled in this court that, in an action by the vendee for a breach of contract on the part of the vendor for not delivering the article, the measure of damages is its price at the time of the breach. The price, being settled by the contract, which is generally the case, makes no difference, nor ought it to make any; otherwise, the vendor, if the article has risen in value, would always have it in his power to discharge himself from his contract and put the enhanced value in his own pocket. Nor can it make any difference in principle whether the contract be for real or personal property, if the lands, as is the case here, have not been improved or built on. In both cases the vendee is entitled to have the thing agreed for at the contract price, and to sell it himself at its increased value.' See, also, **\*\*859** Kirkpatrick v. Downing, 58 Mo. 32. In this case, plaintiff did not seek to recover anything for improvements put upon the land, but only the value of it at the time of its appropriation **\*383** by Herndon, in the event specific performance could not be had. The land was sold by Herndon to Moseley at $20 per acre, and the petition alleged it to be of the value of $150 per acre at the time it was sold by Herndon to Allen. If Moseley fully performed his part of either of the contracts by paying the purchase money, the superior equitable title vested in him, and Herndon held the legal title in trust for him; and, upon breach of that trust, by voluntary conveyance of the legal title to another, Herndon became liable to Moseley for such damages as resulted directly therefrom, we think, certainly to the extent of the value of the land at the time it was so

Schultz, William 10/26/2015
For Educational Use Only

14 S.W. 857, 22 Am.St.Rep. 59

appropriated, and we think the court erred in excluding the evidence offered to prove such value.

The fourth assignment of error is: 'The court erred in admitting, over objection of plaintiff, the evidence offered by defendants as to transactions and conversations had by defendant Herndon with Perry Phillips and Polly Phillips in the year 1883, as shown by plaintiff's bill of exception No. 4.' The objections to this evidence was upon the ground that 'it was immaterial, and could not affect the rights of plaintiff's wards.' We think the objection was good, and should have been sustained. When Moseley died, whatever rights and interest he had in the land descended to and vested absolutely in his widow and minor children. At the time of the transactions between Herndon and Perry Phillips and his wife, in 1883, Moseley's widow was also dead, and the minor children alone owned whatever interest their parents had acquired in the land. There was no one authorized to bind them, or affect their interest by any agreement, and their rights were not affected by the transactions between Herndon and their grandparents, Perry and Polly Phillips.

The fifth assignment of error is: 'The court erred in rendering judgment for defendants, and in not rendering judgment for plaintiff, it being shown that at least the five acres of land bargained for by James Moseley on September 15, 1875, had been fully paid for, and that F. R. Allen was not a purchaser in good faith.' The court found, as a conclusion of law, that 'the plaintiff has mistaken his remedy. The land having been sold to Allen by Herndon without notice, plaintiff cannot recover the land, or its value, but his recovery would be the penalty on the bond, to-wit, one hundred dollars, with interest.' From what we have already said it will be seen that we understand this suit to be upon the bonds for specific performance only, in the first instance, and, secondarily, against Herndon to recover damages for breach of trust in voluntarily transferring the legal title to Allen, and thus placing it beyond his power to perform his contract, after the superior equitable title had vested in Moseley by payment of the purchase money. We see no reason why the plaintiff cannot maintain the suit in this way. If Allen **\*384** was an innocent purchaser, then specific performance could not be decreed against Herndon; and, if the superior title had vested in Moseley, the plaintiff could either sue upon the bond for purchase money paid, and interest, or bring his suit, as we understand him to have done, to recover damages against Herndon for breach of trust. Herndon, having received from Moseley at least a part of the purchase money for the lands, and Moseley having taken possession under his contracts of purchase, Herndon could not rescind the sales to him without notice of his intention to do so; and Herndon having received payments on the purchase money after default by Moseley in failing to pay the purchase money at maturity, he thereby waived his right of rescission. Kennedy v. Embry, 72 Tex. 390, 10 S. W. Rep. 88; Moore v. Giesecke, 76 Tex. 548, 13 S. W. Rep. 290; Tom v. Wollhoefer. 61 Tex. 281. At the time Herndon attempted to rescind the sales to Moseley after the death of both Moseley and his wife, there was no one to whom notice of his intention to rescind could be given, and there was therefore no rescission effected. Herndon testified, without objection, that 'about July 23, 1881, Moseley and myself had a settlement of all matters between us. He had done work for me, and I had advanced considerable money to pay his hands, and for supplies, and he fell in my debt $183. This was then treated by Moseley and myself as balance due me.' In regard to the $18 paid by Moseley to Herndon on October 4th, 1881, Herndon testified 'that, in the fall of 1881, I think I let him have some money, but how much I cannot say. He was to settle it out of his service upon the railroad, but died, and failed to pay anything except the $18, October 4, 1881; this may or may not have settled the small amounts I let him have, after July 23, 1881, but I cannot say.' Herndon also testified that; 'Some time before Moseley died, he sent me a note that he had sold the pony to Schoof for $35, and to please collect the amount, and give him credit on the debts he owed me.' There was no other evidence bearing upon the question of appropriation of the money received by Herndon from Moseley after the second bond for title was executed, at which time, according to the statement made by Herndon on the 17th of December, 1878, Moseley owed him a balance of $16.90 on the first purchase, after having paid him $110, $30 of which was paid at the time of the purchase. In respect to the appropriation of payments made by a debtor to a creditor who holds more than one debt against him, the general rule is that a debtor has the right to appropriate payments, and, if he does not, the creditor may do so, and, where neither appropriates them, the law will make the application according to the justice of the case. Matossy v. Frosh, 9 Tex. 612. In Stanley v. Westrop, 16 Tex. 200, it is said: 'It is admitted on **\*385** all hands that the debtor has the absolute right to make the application if he sees proper to exercise it. If he omits to do so, and it is left to the law to make it for him, it ought, it would seem, to be made in accordance **\*\*860** with the presumed intention of the debtor.' And we think it must be presumed

**Phillips v. Herndon, 78 Tex. 378 (1890)**

14 S.W. 857, 22 Am.St.Rep. 59

that the debtor intended to apply it to the debt that would be most beneficial to him. In Taylor v. Coleman, 20 Tex. 776, it is said: 'The debtor having, at the time of the sales, made no specific designation of the proceeds, the plaintiffs were left to their election to apply the payment; but this did not vest them with the power to act capriciously, or to make such designation as would unreasonably operate to the prejudice of the defendant. At the civil law, the creditor must regard himself as standing in the shoes of the debtor, and apply the payment to such debts as the debtor himself would have first discharged; but, without affirming the principle to this extent, it is the rule of the common law that the creditor cannot make such application as would, under the circumstances, be inequitable and unjust to the debtor.' See, also, Bray v. Crain, 59 Tex. 649. Applying the rules and principles announced in the foregoing decisions to this case, we think the $18 paid by Moseley on the 4th day of October, 1881, should have been applied to the payment of the balance of $16.90, claimed by Herndon to be due on the first contract, especially so as it does not appear from the evidence what application Herndon made of it, and thereby perfect Moseley's title to the five acres first purchased. If the $18 was insufficient to pay the balance of $16.90, then so much of the $35, received by Herndon after Moseley's death, as was necessary to pay off the balance of the $16.90 should be so applied. At the time Herndon received the $35, Moseley was dead, and could not direct its application. The law applied it for him to the liquidation of any balance that might be due on the purchase money for the five acres first purchased, and upon which he had established the home for himself and family. We are of opinion that the judgment of the court below should be reversed, and the cause remanded.

STAYTON, C. J.

Report of the commission of appeals examined, their opinion adopted, and the judgment is reversed, and cause remanded.

**All Citations**

78 Tex. 378, 14 S.W. 857, 22 Am.St.Rep. 59

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**Vance v. Holloway, 689 S.W.2d 403 (1985)**

689 S.W.2d 403
Supreme Court of Texas.

Newton C. VANCE, d/b/a
Vanguard Production, Petitioner,
v.
Jim R. HOLLOWAY, Respondent.

No. C–3922.  |  April 3, 1985.
|  Rehearing Denied May 8, 1985.

Suit on sworn account was brought against owner of working interest in oil well. The District Court No. 106, Garza County, Hansard, J., held that plaintiff was entitled to recover operating costs on lease in which defendant owned working interest, and defendant appealed. The Amarillo Court of Civil Appeals, Seventh Supreme Judicial District, Reynolds, J., reversed and remanded, holding that plaintiff had failed to establish his ownership of account, and plaintiff filed application for writ of error. The Supreme Court held that defendant who was sued on sworn account and had failed to file sworn denial waived his right to dispute amount and ownership of account.

Judgment of Court of Appeals reversed and judgment of trial court affirmed.

West Headnotes (1)

**[1]**  **Account, Action On**
 Pleading

Defendant who was sued on sworn account and failed to file sworn denial waived his right to dispute amount and ownership of account. Vernon's Ann.Texas Rules Civ.Proc., Rules 93, subd. 10, 185.

33 Cases that cite this headnote

**Attorneys and Law Firms**

**\*403** Mitchell Williams, Post, for petitioner.

Curry, Curry & Robinson, Donald L. Curry, Lubbock, for respondent.

**Opinion**

PER CURIAM.

This is an appeal from a suit on a sworn account. The trial court held that Petitioner, Newton C. Vance, d/b/a Vanguard Production, was entitled to recover operating costs on the "Dawn" lease in which Respondent, Jim R. Holloway, owned a $^1/_{32}$ working interest. In an unpublished opinion, the court of appeals reversed and remanded, holding that Vance had failed to establish his ownership of the account. Pursuant to TEX.R.CIV.P. 483, we grant Newton C. Vance, d/b/a Vanguard Production's application for writ of error and, without hearing oral argument, reverse the judgment of the court of appeals and affirm the judgment of the trial court.

The record established that Vance originally acquired an interest in the "Dawn" lease in 1981. The well was developed by and operating costs paid to M.F.B. Oil Company. In 1982, Vance acquired M.F.B. Oil Company's interest in the "Dawn" lease. Holloway owns a $^1/_{32}$ working interest in one of Vance's wells on this lease. Vance sued Holloway on a sworn account to recover the portion of operating expenses that Holloway owed to Vance as owner of M.F.B. Oil Company's interest in the "Dawn" lease.

The petition and affidavit filed by Vance clearly met the requirements of TEX.R. **\*404** CIV.P. 185. Holloway answered by way of an unverified general denial only. He failed to meet the requirements of TEX.R.CIV.P. 185 and 93(10) which state that a written denial of the plaintiff's action must be verified. The language of the rules is clear. TEX.R.CIV.P. 185 states:

> ... A party resisting such a sworn claim shall comply with the rules of pleading as are required in any other kind of suit, provided however, that if he does not timely file a written denial, *under oath,* he shall not be permitted to deny the claim, or any item therein, as the case may be.... (Emphasis added).

Similarly, TEX.R.CIV.P. 93 provides:

A pleading setting up one of the following matters ... shall be verified by affidavit.

_____

10. A denial of an account which is the foundation of the plaintiff's action, and is supported by affidavit.

"In the absence of a sworn denial meeting the requirements of the rule, an account is received as prima facie evidence as against a defendant sued thereon, and the defendant may not dispute the receipt of the items or services, or the correctness of the stated charges...." *Rizk v. Financial Guardian Insurance Agency, Inc.*, 584 S.W.2d 860, 862 (Tex.1979). Holloway failed to file a sworn denial and he has, therefore, waived his right to dispute the amount and ownership of the account. These facts, having been accepted by the trial court as prima facie evidence of the sworn account, entitle Vance to recovery.

Accordingly, we conclude that the decision of the court of appeals conflicts with the applicable rules of procedure and law of this court, hereinabove set forth. Without hearing oral argument, we grant Newton C. Vance, d/b/a Vanguard Production's application for writ of error, reverse the judgment of the court of appeals and affirm the judgment of the trial court. TEX.R.CIV.P. 483.

**All Citations**

689 S.W.2d 403

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

rendered in connection with construction of house was compulsory counterclaim in house builder's suit against plumbing company, arising out of same instance, in which builder alleged fraud and violation of Deceptive Trade Practices Act. Vernon's Ann.Texas Rules Civ.Proc., Rule 97(a).

38 Cases that cite this headnote

KeyCite Yellow Flag - Negative Treatment
**Called into Doubt by** Commint Technical Services, Inc. v. Quickel, Tex.App.-Hous. (14 Dist.), June 3, 2010

760 S.W.2d 245
Supreme Court of Texas.

Oscar S. WYATT, Jr., Petitioner,

v.

SHAW PLUMBING COMPANY, Respondent.

No. C–6801. | Oct. 26, 1988.
| Rehearing Denied Dec. 14, 1988.

House builder filed an action against plumbing contractor for fraud and violation of the Deceptive Trade Practices Act. Contractor subsequently sued builder and his agent in another county for breach of contract in regard to the construction of the home. Builder's plea in abatement to contractor's suit was denied by the 214th District Court, Nueces County, Mike Westergren, J., as was builder's second plea in abatement. Judgment was rendered against builder following a jury trial in Nueces County, and builder appealed. The Corpus Christi Court of Appeals, Thirteenth Supreme Judicial District, Seerden, J., 736 S.W.2d 763, affirmed, and builder brought error. The Supreme Court, Ray, J., held that: (1) contractor's suit against builder was a compulsory counterclaim, and (2) the court had no discretion to deny builder's plea in abatement.

Reversed and remanded with instructions.

Kilgarlin, J., issued a concurring opinion.

Gonzalez, J., issued a dissenting opinion in which Phillips, C.J., and Mauzy, J., joined.

West Headnotes (3)

[1] **Set–Off and Counterclaim**
**Effect of Failure to Assert or Claim; Compulsory Counterclaim**

Plumbing company's claim against house builder for breach of contract to recover for services

[2] **Pleading**
**Plea of Other Action Pending**

If inherent interrelationship of subject matter exists in two pending lawsuits, plea in abatement in second action must be granted; it is not required that exact issues and all parties be included in first action before second is filed, provided that claim in first suit may be amended to bring in all necessary and proper parties in issues.

102 Cases that cite this headnote

[3] **Pleading**
**Plea of Other Action Pending**

Court had no discretion to deny house builder's plea of abatement in breach of contract action by plumbing contractor due to fact that house builder had earlier filed suit in another county against plumbing contractor for fraud and violation of Deceptive Trade Practices Act, even though house builder's agent was named party in plumbing contractor's action but not in house builder's action, as agent could have been joined in builder's action, both law suits involved same issues as to construction of a home, and venue was proper in either county, and, thus, court where suit was first filed acquired dominant jurisdiction.

128 Cases that cite this headnote

Schultz, William 10/26/2015
For Educational Use Only

**Attorneys and Law Firms**

**\*246** Ken Dahlbert, Wood & Burney, Corpus Christi, Tracy DuBose, DuBose & Short, Montgomery, Joe R. Greenhill and Larry F. York, Baker & Botts, Austin, for petitioner.

Richard J. Hatch, Prichard, Peeler, Hatch, Cartwright, Hall & Kratzig, Corpus Christi, for respondent.

**OPINION**

RAY, Justice.

This case arises out of a dispute over the services provided by a plumbing contractor in the construction of a house in Duval County. The issue presented by this appeal involves a plea in abatement filed in a second suit in Nueces County when a prior suit was pending in Duval County. The court of appeals affirmed the Nueces County district court, holding that the decision to grant a plea in abatement was within the discretion of the Nueces County court and there was no abuse of that discretion. 736 S.W.2d 763. We hold that the Nueces County district court was required to grant the plea in abatement because a previously filed suit between the parties was pending. We, therefore, reverse the judgment of the court of appeals and remand the cause to the Nueces County district court with instructions to vacate its judgment and abate all proceedings pending final disposition of the Duval County lawsuit, which was previously filed.

This controversy involves a suit between the parties in the district court of Duval County and another suit subsequently filed in the district court of Nueces County. Oscar Wyatt was building a house in Duval County. On Wyatt's behalf, Morgan Spear entered into an oral agreement with Shaw Plumbing Company for Shaw to perform work on the house. When Wyatt did not pay Shaw Plumbing for its services, Shaw made a written demand for payment. Following Shaw Plumbing's demand letter, Wyatt filed suit against Shaw in Duval County on February 7, 1983, alleging fraud and violation of the Deceptive Trade Practices Act.

On April 4, 1983, Shaw Plumbing filed a breach of contract suit against Wyatt and Spear in Nueces County to recover for its services. Wyatt filed a plea in abatement in the Nueces County suit based upon the pendency of the previously filed

Duval County suit. The Nueces County district court signed an order denying Wyatt's plea in abatement on June 15, 1984. On February 13, 1986, Wyatt filed a second plea in abatement in Nueces County after he agreed to indemnify Spear for any claims against Spear by Shaw Plumbing. The Nueces County district court again denied the plea. Prior to the trial in Nueces County, the trial judge struck Wyatt's pleadings as a sanction for alleged discovery abuse. Judgment was rendered against Wyatt following a jury trial in Nueces County.

**[1]** It has long been the policy of the courts and the legislature of this state to avoid a multiplicity of lawsuits. The need for judicial economy has recently become more acute because the dockets of our trial **\*247** courts are overburdened, and litigants must wait far too long for their cases to be heard. In keeping with the policy to avoid multiple lawsuits, Texas Rule of Civil Procedure 97(a) was promulgated. This rule regarding compulsory counterclaims dictates that a pleading shall assert a counterclaim if it meets six elements. A counterclaim is compulsory if: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the action is mature and owned by the pleader at the time of filing the answer; (4) it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. *See* Tex.R.Civ.P. 97(a), (d); *see also* 2 R. McDonald, *Texas Civil Practice in District and County Courts* § 7.49, at 253–54 (rev.1982). If a claim meets these elements, it must be asserted in the initial action. A defendant's failure to assert a compulsory counterclaim precludes its assertion in later actions. *Gray v. Kirkland,* 550 S.W.2d 410, 411 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *see* 2 R. McDonald, *supra,* § 7.49, at 254. Shaw Plumbing's suit against Wyatt was a compulsory counterclaim under the requirements of Rule 97(a).

In the case in which Wyatt as plaintiff sued Shaw Plumbing as defendant on tort and DTPA theories, the counties in which venue was proper were: (1) Nueces County, where the defendant had its principal office situated; (2) Duval County, where the construction and plumbing was done, and thus the cause of action arose; or (3) Harris County, where the plaintiff resided at the time the cause of action arose. Act of Apr. 29, 1943, ch. 228, 48th Leg., 1943 Tex.Gen.Laws

350, *revised by* Act of May 28, 1983, ch. 385, sec. 1, § 3(f), 68th Leg., 1983 Tex.Gen.Laws 2119, 2122, *repealed by* Civil Practice and Remedies Code, ch. 959, sec. 9, 69th Leg., 1985 Tex.Gen.Laws 3242, 3322 (current venue law codified at Tex.Civ.Prac. & Rem.Code Ann. § 15.036 (Vernon Supp.1988)). Wyatt's agent, Morgan Spear, was not a party to the suit brought by Wyatt. Spear was a party, however, to Shaw Plumbing's suit in Nueces County, which was based solely on breach of contract. Because there was a difference in both issues and parties, Shaw argues that the Nueces County district court was not obliged to grant the plea in abatement. We disagree.

 **[2]**     When an inherent interrelation of the subject matter exists in two pending lawsuits, a plea in abatement in the second action must be granted. It is not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues. *See* 2 R. McDonald, *supra,* § 7.10, at 165. In determining whether an inherent interrelationship exists, courts should be guided by the rule governing persons to be joined if feasible and the compulsory counterclaim rule. *See* Tex.R.Civ.P. 39, 97(a)*.*

 **[3]**     Shaw Plumbing should have brought its compulsory counterclaim on the contract in Wyatt's tort and DTPA suit in Duval County. If Shaw Plumbing had joined Morgan Spear, venue would have been proper in the Duval County suit filed by Wyatt, where the cause of action arose. [1]  ***248** If Wyatt had sued Shaw Plumbing in Nueces County, venue would have also been proper because Shaw's principal office was situated in Nueces County. However, since Wyatt filed suit first, he chose Duval County.

It is well settled that when suit would be proper in more than one county, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other courts. *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974); *V.D. Anderson Co. v. Young,* 128 Tex. 631, 636, 101 S.W.2d 798, 800 (1937); *Cleveland v. Ward,* 116 Tex. 1, 19, 285 S.W. 1063, 1070 (1926). As long as the forum is a proper one, it is the plaintiff's privilege to choose the forum. *Mutual Sav. & Loan Ass'n v. Earnest,* 582 S.W.2d 534, 535 (Tex.Civ.App.— Texarkana 1979, no writ). Defendants are simply not at liberty

to decline to do battle in the forum chosen by the plaintiff. 2 R. McDonald, *supra*, § 7.49, at 254.

Abatement of a lawsuit due to the pendency of a prior suit is based on the principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues. *See McCurdy v. Gage,* 123 Tex. 558, 565–66, 69 S.W.2d 56, 59, *reh'g overruled per curiam and opinion adopted,* 75 S.W.2d 1107 (Tex.Comm'n App.1934). The plea in abatement must be raised in a timely manner, however, or it is waived. *Cleveland,* 116 Tex. at 21, 285 S.W.2d at 1071– 72. There has been no waiver in the present case.

There are three exceptions to the rule of *Cleveland v. Ward* that the court where suit is first filed acquires dominant jurisdiction: (1) Conduct by a party that estops him from asserting prior active jurisdiction; (2) lack of persons to be joined if feasible, [2]  or the power to bring them before the court; and (3) lack of intent to prosecute the first lawsuit. *Young,* 128 Tex. at 636–37, 101 S.W.2d at 800–01; *see also Curtis,* 511 S.W.2d at 267. None of these exceptions applies in this case.

Shaw Plumbing relies on our opinion in *Dolenz v. Continental National Bank* to support its argument that the trial court's decision to grant the plea in abatement was discretionary. *Dolenz,* 620 S.W.2d 572 (Tex.1981). In that case we held that the trial court did not abuse its discretion in denying a plea in abatement. *Dolenz* must be distinguished, however, for two reasons. First, the second lawsuit in *Dolenz* came into being as a result of Continental Bank's plea of privilege. The court in the second suit properly denied the bank's plea in abatement because a party may not request that a suit against it be severed and transferred to another court, and subsequently seek to abate the second suit. Second, we held that a judgment in the first suit would not foreclose all issues between Continental Bank and Dolenz. *Dolenz,* 620 S.W.2d at 575.

We reaffirm that the rule of *Cleveland v. Ward* is the law regarding conflicts of jurisdiction between Texas courts of coordinate jurisdiction. In the case at bar, both lawsuits involve the same issues. Moreover, the parties in the second suit were either present in the first suit, or parties who should have been joined in the first suit. Since venue was proper in either Duval, Harris, or Nueces County, the court where suit

was first filed, Duval County, acquired dominant jurisdiction. The Nueces County district court, therefore, had no discretion to deny Wyatt's plea in abatement.

Accordingly, we reverse the judgment of the court of appeals and remand the cause to the Nueces County district court with instructions to vacate its judgment and abate all proceedings pending final disposition of the Duval County lawsuit.

KILGARLIN, J., files a concurring opinion.

GONZALEZ, J., files a dissenting opinion in which PHILLIPS, C.J., and MAUZY, J., join.

KILGARLIN, Justice, concurring.
While I concur with the court's judgment, I find myself favorably disposed to a concern expressed by Justice Gonzalez. I **\*249** do not favor races to the courthouse, as arguably existed in this case, so as to fix venue. I would not, for example, wish to see one claiming a Deceptive Trade Practices Act violation give notice as required by law only to find the seller or provider of services preempting venue by first suing in another county for a small amount still owing on account.

However, Shaw Plumbing Company has failed to brief this matter either in this court or the court of appeals. Whether a notice letter for purposes of entitlement to attorney's fees or a DTPA-mandated notice letter should be sufficient to establish venue prior to filing suit requires considerable consideration by this court, preceded by adequate briefs and oral argument, before we undertake to decide such a significant issue.

Accordingly, I concur.

GONZALEZ, Justice, dissenting.
I agree wholeheartedly with the court's articulation of the rule of dominant jurisdiction. We do not disagree on the law; we disagree on its application to this cause.

Unquestionably, the general rule is that the court in which suit is first filed acquires dominant jurisdiction and that any subsequent suit involving the same parties and the same controversy must be dismissed if, by a plea in abatement, a party calls the court's attention to the pendency of the prior suit. _Curtis v. Gibbs,_ 511 S.W.2d 263 (Tex.1974), _Cleveland v. Ward,_ 116 Tex. 1, 285 S.W. 1063 (1926). I would not in any way abandon this general rule.

However, an exception to this general rule has long been recognized. If the court in which suit is first filed cannot properly dispose of the whole subject matter of the litigation as to all necessary parties and issues, then the second court's ruling on any plea in abatement asserted there is a discretionary matter. _See Cleveland v. Ward,_ 285 S.W. at 1070; _see also Dolenz v. Continental National Bank of Fort Worth,_ 620 S.W.2d 572 (Tex.1981); _First State Bank of Bishop, Texas v. Norris,_ 611 S.W.2d 680 (Tex.Civ.App.— Tyler 1980, writ ref'd n.r.e.). The court's opinion today still pays lip service to this exception when it states:

> It is not required that the exact issues and all the parties be included in the first action before the second is filed, _provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues._

760 S.W.2d at 247 (emphasis added). The problem is that the court ignores its own "provided that" language and refuses to recognize that Shaw Plumbing could not have joined Spear in the Duval County suit.

The venue laws effective at the time of this suit protected a party from being brought into a suit as a third-party defendant if venue was not proper as to that party independent of the main action.[1] _See Union Bus Lines v. Byrd,_ 142 Tex. 257, 177 S.W.2d 774, 776 (1944). Shaw Plumbing's claim against Spear is based on an oral contract. As such, the only proper place of venue for Shaw Plumbing's cause of action against Spear was Spear's county of residence, Nueces County. _See_ former Tex.Rev.Civ.Stat. art. 1995 [3 West's Tex.Stats. and Codes (1974 and 1977 Supp.) ]. Therefore, because venue in Duval County was not proper as to Spear independent of the main action, Spear could not have been brought in as a third-party defendant, and thus the Duval County court would not have been able to dispose of all necessary parties and issues in the case.

The court offers two reasons for its conclusion that Spear could have been joined in Duval County. First, it assumes that Spear was Wyatt's agent and suggests that somehow this fact resolves the venue problem. However, the question of whether Spear was Wyatt's agent or an independent contractor was hotly contested. The jury in the Nueces County suit did find that Spear was Wyatt's agent, but this court's decision will result in the lawsuit being tried again in Duval County where the legal **\*250** relationship between Spear and Wyatt will be determined anew. To this date, even in his briefs before this court, Wyatt has never conceded that Spear is his agent. Thus, in order to conclude that venue as to Spear would be proper in Duval County, the court affords Wyatt the benefit of a fact that Wyatt himself is still refuting.

Second, as if to hedge its bets, the court cites in a footnote to the continuance provision of the 1983 Act amending article 1955 and asserts that, because the Nueces County lawsuit "was not on appeal on the effective date of the new venue law," the old venue laws are not effective as to the question of whether Spear could have been joined in Duval County. The continuance provision of the 1983 Act stated:

> This Act takes effect September 1, 1983, and shall not apply to pending appeals on venue questions. For the purpose of appeals on venue questions pending prior to September 1, 1983, the former law is continued in effect.

There have been prior disputes concerning the meaning of this provision. However, the questions at least arose in the context of pleas of privilege and interlocutory appeals from them, the statutory language, "appeals on venue questions," has never been construed to mean anything other than interlocutory appeals from pleas of privilege. *See, e.g., Gonzalez v. H.E. Butt Grocery Co.,* 667 S.W.2d 188 (Tex.App.—Corpus Christi 1983, writ dism'd w.o.j.); *Grubbs v. Mercantile Texas Corp.,* 668 S.W.2d 429 (Tex.App.—Eastland 1984, no writ); *Graue–Haws, Inc. v. Fuller,* 666 S.W.2d 238 (Tex.App.— El Paso 1984, orig. proceeding); *Boyd v. Raymondville State Bank,* 668 S.W.2d 466 (Tex.App.—Corpus Christi 1984, no writ). This continuance provision has never previously been applied to or even discussed in any scenario such as this one involving an appeal from a final judgment raising a plea in abatement question.

Moreover, the court also assumes that the trial judge, on his own, should have figured out the applicability of the continuance provision. Wyatt never mentioned anything at all about the new venue laws, much less about this continuance provision, in either his first or second plea in abatement. His position has always been that venue as to Spear was immaterial.

The court strains too hard and thereby betrays the inherent weakness of its position. Under the old venue laws, if Shaw Plumbing had attempted to join Spear in Duval County, Spear could have asserted a plea of privilege which would have been proper. In order to avoid this reality, the court is forced to rely on an attenuated construction of a continuance provision that was never argued either at trial or on appeal. [2]

There is still another reason for why the Nueces County trial judge acted properly in refusing to abate the second suit. *Curtis v. Gibbs,* 511 S.W.2d at 267, stated the following exception to the general rule of dominant jurisdiction:

> [T]he plaintiff in the first suit may be guilty of such inequitable conduct as will estop him from relying on that suit to abate a subsequent proceeding brought by his adversary.

In this case, Wyatt filed his DTPA suit against Shaw Plumbing after having already received Shaw Plumbing's thirty day demand letter, and he did so without giving the thirty day notice required of him under the Deceptive Trade Practices—Consumer Protection Act. Tex.Bus. & Com.Code Ann. § 17.505 (Vernon 1987).

Wyatt's failure to give the required statutory notice enabled him to beat Shaw Plumbing to the courthouse and fix venue in Duval County. The proper remedy for a party's failure to give the required DTPA **\*251** notice is ordinarily abatement rather than dismissal. *The Moving Company v. Whitten,* 717 S.W.2d 117 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *see also Schepps v. Presbyterian Hospital,* 652 S.W.2d 934 (Tex.1983). Under the circumstances of this case, I would hold that although a party's failure to comply with the statutory notice requirement will not result in dismissal, it is nevertheless a type of "inequitable conduct" that cannot be used as a vehicle for fixing venue. Thus, I would further hold that Wyatt's failure to give the required DTPA notice estops

**Schultz, William 10/26/2015**
**For Educational Use Only**

him from relying on his first-filed suit to abate the subsequent suit. [3]

Although the court's opinion acknowledges the exceptions to the general rule of dominant jurisdiction, it summarily states that none apply. Upon analysis, I am unable to reach the same conclusion. Therefore, I dissent from the court's opinion and would affirm the judgment of the court of appeals.

PHILLIPS, C.J., and MAUZY, J., join.

**All Citations**

760 S.W.2d 245

Footnotes

[1]    Shaw Plumbing claims that Spear could not have been joined to the Duval County lawsuit under the old venue laws in effect at the time. This contention is without merit because the old venue laws were continued in effect only for questions pending on appeal. Act of May 28, 1983, ch. 385, sec. 3, 68th Leg., 1983 Tex.Gen.Laws 2119, 2124; *e.g., Graue–Haws, Inc. v. Fuller,* 666 S.W.2d 238, 239 (Tex.App.—El Paso 1984) (orig. proceeding); *see Tullos v. Eaton Corp.,* 695 S.W.2d 568, 568 (Tex.1985) (per curiam). The Nueces County lawsuit was not on appeal on the effective date of the new venue law, September 1, 1983. *See* Act of May 28, 1983, ch. 385, sec. 3, 68th Leg., 1983 Tex.Gen.Laws 2119, 2124. There is no question that venue was proper for Spear in Duval County under the 1983 revision to the venue laws. *See* Act of May 28, 1983, ch. 385, sec. 1, § 4(b), 68th Leg., 1983 Tex.Gen.Laws 2119, 2124, *repealed by* Civil Practice and Remedies Code, ch. 959, Sec. 9, 69th Leg., 1985 Tex.Gen.Laws 3242, 3322 (current venue law codified at Tex.Civ.Prac. & Rem.Code Ann. § 15.062 (Vernon 1986)).

[2]    Original text refers to necessary parties, which is the pre–1971 Rule 39 language.

[1]    Contrast this with the currently effective law which expressly states that "venue of the main action shall establish venue of a counterclaim, cross claim, or third party claim...." Tex.Civ.Prac. & Rem.Code Ann. § 15.062 (Vernon 1986).

[2]    Furthermore, Wyatt did not raise this argument in either of his attempts to obtain mandamus relief against the Nueces County trial judge. In seeking to compel the trial judge to grant the plea in abatement, Wyatt filed in the Corpus Christi Court of Appeals a petition for writ of mandamus. That court denied the writ. *Wyatt v. Westergren,* 704 S.W.2d 148 (Tex.App.—Corpus Christi 1986, orig. proceeding). Wyatt then submitted a petition for writ of mandamus to this court and we overruled his motion for leave to file. *Wyatt v. Westergren,* No. C–5008 (Feb. 19, 1986).

[3]    In a concurring opinion, Justice Kilgarlin also voices his concern about the manner in which Wyatt effectively fixed venue by failing to give the required DTPA notice. However, he refuses to address the matter because Shaw Plumbing did not brief it. Of course, Shaw Plumbing had no reason to complain about this matter on appeal because it won at the trial court and won in the court of appeals. *See Boyce Iron Works, Inc. v. Southwestern Bell Telephone Co.,* 747 S.W.2d 785 (Tex.1988). By contrast, Wyatt as the petitioner here did have the burden of preserving his arguments. Tex.R.App.P. 131. Wyatt never raised any argument concerning the venue laws, new or old, and certainly never mentioned the continuance provision to the 1983 amendments; yet the court does not hesitate to reach that matter.

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Texas Civil Practice & Remedies Code

## Chapter 38. Attorney's Fees

---

**Chapter 38. Attorney's Fees**

**CPRC §38.001. Recovery of attorney's fees**

A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

**(1)** rendered services;

**(2)** performed labor;

**(3)** furnished material;

**(4)** freight or express overcharges;

**(5)** lost or damaged freight or express;

**(6)** killed or injured stock;

**(7)** a sworn account; or

**(8)** an oral or written contract.

History of CPRC §38.001: Acts 1985, 69th Leg., ch. 959, §1, eff. Sept. 1, 1985.

**Annotations**

**Generally**

*½ Price Checks Cashed v. United Auto. Ins.*, 344 S.W.3d 378, 381 (Tex.2011). "We must determine whether a suit by a check's holder against its drawer under [B&CC] §3.414 is a claim on a contract to which [CPRC] §38.001(8) applies [so that the holder may recover attorney fees]. We conclude that it is."

*Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex.2009). "If attorney's fees are proper under §38.001(8), the trial court has no discretion to deny them. *At 548:* We see no

reason why [the *Arthur Andersen* factors] would not apply … to an appellate court's assessment of whether fees were established as a matter of law. [¶] The jury, however, awarded nothing. Although it could have rationally concluded that, in light of the amount involved and the results obtained, a reasonable fee award was less than the full amount sought, no evidence supported the jury's refusal to award any attorney's fees (as the court of appeals correctly noted). The trial court could have directed the jury to reform its verdict, … but the court was not free to set a reasonable fee on its own. Accordingly, [Ds] are entitled to a new trial on attorney's fees."

*Medical City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 63 (Tex.2008). "[S]ection 38.001(8) permits an award of attorney's fees for a suit based on a written or oral contract, and … we conclude that breach of an express warranty is such a claim…." See also *Howard Indus. v. Crown Cork & Seal Co.*, 403 S.W.3d 347, 353 (Tex.App.—Houston [1st Dist.] 2013, no pet.) (P could recover attorney fees for breach of implied warranty of merchantability).

*Crisp Analytical Lab, L.L.C. v. Jakalam Props., Ltd.*, 422 S.W.3d 85, 92 (Tex.App.—Dallas 2014, pet. denied). "Because [D] sent an amount [of expenses] less than that requested by [P], it was not an effective tender. But more importantly, [D] sent a conditional offer in the form of a release. [T]he very definition of 'tender' does not allow for the possibility of conditional offers. Therefore, [D's] argument that it 'tendered' an amount in excess of the damages awarded by the jury and could therefore not be found to have breached the contract is without merit. *At 93:* [D] did not timely tender payment to [P]; therefore, [P] had not recovered its full amount of damages from [D] prior to trial. [¶] [B]ecause the jury awarded [P] some damages [but not all damages requested] on its breach of contract claim, [P] was a prevailing party under §38.001(8) and entitled to … attorney's fees."

*Peterson Grp. v. PLTQ Lotus Grp.*, 417 S.W.3d 46, 60-61 (Tex.App.—Houston [1st Dist.] 2013, pet. denied) . "'[P]arties are free to contract for a fee-recovery standard either looser or stricter than ch. 38's.' When parties include such a provision in a contract, the language of the contract controls, rather than the language of the statute. … In light of this difference in application of statutory and contractual attorney's fees, and because a court's judgment must conform to the pleadings, … a party who pleads for attorney's fees only

under ch. 38 waives its claim for attorney's fees under a contractual provision."

*Lee v. Daniels & Daniels*, 264 S.W.3d 273, 282 (Tex.App.—San Antonio 2008, pet. denied). "[T]he engagement letter [between attorney and client] does not expressly provide for the recovery of attorney's fees in an arbitration proceeding. However, because [attorney] sued [clients] for breach of the written engagement letter, [attorney] was entitled to recover his attorney's fees incurred on that claim under … §38.001, which provides for recovery of 'reasonable attorney's fees' 'if the claim is for … an oral or written contract.' Thus, [§38.001(8)] provided a basis for an award of attorney's fees to [attorney] in an arbitration proceeding."

### No Recovery of Attorney Fees

*Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex.1997). "To recover attorney's fees under §38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages. … Because [P] failed to recover damages on its breach of contract claim, [P] was not entitled to recover attorney's fees under §38.001." See also *Ashford Partners v. Eco Res.*, 401 S.W.3d 35, 40-41 (Tex.2012).

*Fleming & Assocs. v. Barton*, 425 S.W.3d 560, 576 (Tex.App.—Houston [14th Dist.] 2014, pet. denied) . "[U]nder the plain language of §38.001(8), a person may not recover attorney's fees against a partnership."

*City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 370 (Tex.App.—Fort Worth 2009, no pet.). "In light of the definition the legislature has given the word 'person' in [Gov't Code §311.005(2)], the fact that the legislature chose to use the word 'individual' in [CPRC] §38.001, instead of the word 'person,' indicates a clear legislative intent to exclude government entities from those against whom attorney's fees may be recovered under the statute. Moreover, the legislature expressly exempted municipalities from being a 'corporation' under §38.001. It would be incongruous to conclude that the legislature, nonetheless, meant to implicitly include municipalities under the term 'individual.'" See also *Base-Seal, Inc. v. Jefferson Cty.*, 901 S.W.2d 783, 786-87 (Tex.App.—Beaumont 1995, writ denied).

*Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784, 787 (Tex.App.—Houston [14th Dist.] 2002, no pet.). "[A] zero award for attorney's fees would have been proper if

the evidence: (1) failed to prove (a) that any attorney's services were provided; or (b) the value of the services provided; or (2) affirmatively showed that no attorney's services were needed or that any services provided were of no value."

*Energen Res. MAQ, Inc. v. Dalbosco*, 23 S.W.3d 551, 558 (Tex.App.—Houston [1st Dist.] 2000, pet. denied). "Chapter 38 does not provide for the recovery of attorney's fees by a defendant who only defends against a plaintiff's contract claim and presents no contract claim of its own."

*Gorman v. Gorman*, 966 S.W.2d 858, 866 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). "Chapter 38 … permits the court to take judicial notice of reasonable and necessary attorney's fees only in claims described in … §38.001. Declaratory judgment actions do not fall under ch. 38."

*American Apparel Prods. v. Brabs, Inc.*, 880 S.W.2d 267, 270 (Tex.App.—Houston [14th Dist.] 1994, no writ). "When … a contract is rescinded, 'it is annulled and abrogated and the rights of the parties under it are extinguished.' Thus, a suit involving rescission cannot be one 'for' the contract because a contract no longer exists."

*Henry v. Insurance Co. of N. Am.*, 879 S.W.2d 366, 369 (Tex.App.—Houston [14th Dist.] 1994, no writ). "[G]arnishment actions are not among the claims for which attorneys' fees may be awarded pursuant to §38.001."

### Proof & Recovery of Fees

*Long v. Griffin*, 442 S.W.3d 253, 253-54 (Tex.2014). "This appeal involves the evidence required to prove the reasonableness and necessity of attorney's fees under the lodestar method. … This Court has made clear that a party choosing the lodestar method of proving attorney's fees must provide evidence of the time expended on specific tasks to enable the fact finder to meaningfully review the fee application. Here, the affidavit supporting the fee application generally stated the categories of tasks performed, but the application failed to include any evidence containing the requisite specificity. Accordingly, we … remand to the trial court for a redetermination of attorney's fees."

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997). "Factors that a factfinder should consider when determining the reasonableness of a fee include: (1)

the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood … that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered."

*Great Am. Ins. v. North Austin MUD*, 908 S.W.2d 415, 427-28 (Tex.1995). "The intended beneficiary of a contract can bring suit to enforce the contract. [P] has a right to sue on the surety bond issued by [D] and is entitled under §38.001 … to recover attorneys' fees as a result of [D's] own default on the terms of its bond."

*Gill Sav. Ass'n v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex.1990). Even though P's "trial attorney … did not testify as to appellate attorney's fees[, the] record of the trial court proceedings reflected the complexity of the case. The trial court's own proceedings together with the fact that it may take judicial notice of usual and customary fees constitute some evidence to support the award of appellate attorney's fees."

*Sewing v. Bowman*, 371 S.W.3d 321, 339 (Tex.App.—Houston [1st Dist.] 2012, pet. dism'd) . "Although [P] did not recover on his breach-of-contract claim, his partnership-redemption claim was still based on an oral agreement. Accordingly, we hold that the trial court did not abuse its discretion in awarding him attorney's fees."

*Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex.App.—Dallas 2009, pet. denied). "[A] trial court is not required to receive evidence on each of [the *Arthur Andersen*] factors. The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties."

*Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894 (Tex.App.—Texarkana 2009, pet. denied). "Production of a time record is not essential when requesting attorney's fees. While reasonableness of an attorney's fee award often presents a question of fact, an

'affidavit filed by the movant's attorney that sets forth his qualifications, his opinion regarding reasonable attorney's fees, and the basis for his opinion will be sufficient to support summary judgment, if uncontroverted.'"

*AMX Enters. v. Master Realty Corp.*, 283 S.W.3d 506, 519 (Tex.App.—Fort Worth 2009, no pet.). "We … hold that the appropriate method by which to calculate in-house counsel's attorney's fees is the market value method."

*Rasmusson v. LBC Petrounited Inc.*, 124 S.W.3d 283, 287 (Tex.App.—Houston [14th Dist.] 2003, pet. denied). "Because [P] sought attorney's fees in addition to its claim for specific performance of the arbitration provision of the agreement, its failure to recover other money damages did not preclude the award of attorney's fees."

*Grace v. Duke*, 54 S.W.3d 338, 344 (Tex.App.—Austin 2001, pet. denied). "What constitutes reasonable attorney's fees is a question of fact, but clear, direct, and uncontroverted evidence of attorney's fees is taken as true as a matter of law, especially when the opposing party has not rebutted the evidence."

*PPG Indus. v. JMB/Houston Ctrs. Partners*, 41 S.W.3d 270, 285 (Tex.App.—Houston [14th Dist.] 2001), *rev'd on other grounds*, 146 S.W.3d 79 (Tex.2004). "[A] fee based, even in part, upon the outcome of the case is a contingent fee that may not be transferred to the opposing party." But see *Union Gas Corp. v. Gisler*, 129 S.W.3d 145, 157-58 (Tex.App.—Corpus Christi 2003, no pet.).

*Woollett v. Matyastik*, 23 S.W.3d 48, 53 (Tex. App.—Austin 2000, pet. denied). "[A] layman's unsupported assertion regarding reasonableness and necessity for attorney's fees does not support the payment of attorney's fees from the estate."

**Segregating Fees**

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex.2006). "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated."

*C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 801 (Tex.App.—Houston [1st Dist.] 2004, no pet.). "[T]he party seeking segregation waives error when that party does

not object to the attorney's fees question in the jury charge on the ground that it does not provide for segregation of any fees the jury might award among recoverable and non-recoverable claims."

# Texas Civil Practice & Remedies Code

## Chapter 38. Attorney's Fees

**CPRC §38.004. Judicial notice**

The court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in:

**(1)** a proceeding before the court; or

**(2)** a jury case in which the amount of attorney's fees is submitted to the court by agreement.

History of CPRC §38.004: Acts 1985, 69th Leg., ch. 959, §1, eff. Sept. 1, 1985.

### Annotations

*Coward v. Gateway Nat'l Bank*, 525 S.W.2d 857, 859 (Tex.1975). Under TRCS art. 2226, now CPRC §38.004, "the court may examine the case file and is to make a determination of the amount of attorney's fees even if no other evidence is offered. This responsibility may be discharged by the trial judge in his role of trier of fact in the conventional trial of a non-jury case but not in passing on a motion for summary judgment."

*Charette v. Fitzgerald*, 213 S.W.3d 505, 514-15 (Tex.App.—Houston [14th Dist.] 2006, no pet.). CPRC §38.004 "does not allow courts to take judicial notice of reasonableness [of attorney fees]. Because [CPRC] §38.003 is limited to claims described in [CPRC] §38.001, and because §38.004 does not speak to judicial notice of reasonableness, this court has held that trial courts may not use §38.004 to take judicial notice of the reasonableness of attorney's fees awarded under a statute other than §38.001. [T]here is currently a split on this issue among the courts of appeals…. [¶] Because [Ps] did not seek or obtain attorney's fees under §38.001, they cannot rely on §§[38.003] and 38.004 to bridge the gap left by the lack of evidence of the reasonableness of their attorney's fees." See also *Dilston House Condo. Ass'n v. White*, 230 S.W.3d 714, 719 (Tex.App.—Houston [14th Dist.] 2007, no pet.). But

see *Matelski v. Matelski*, 840 S.W.2d 124, 130 (Tex.App.—Fort Worth 1992, no writ) (§38.004 can be used to take judicial notice of reasonableness).

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part II. Rules of Practice in District and County Courts
      Section 4. Pleading
        C. Pleadings of Defendant

TX Rules of Civil Procedure, Rule 93

Rule 93. Certain Pleas to Be Verified

Currentness

A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit.

1. That the plaintiff has not legal capacity to sue or that the defendant has not legal capacity to be sued.

2. That the plaintiff is not entitled to recover in the capacity in which he sues, or that the defendant is not liable in the capacity in which he is sued.

3. That there is another suit pending in this State between the same parties involving the same claim.

4. That there is a defect of parties, plaintiff or defendant.

5. A denial of partnership as alleged in any pleading as to any party to the suit.

6. That any party alleged in any pleading to be a corporation is not incorporated as alleged.

7. Denial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed. Where such instrument in writing is charged to have been executed by a person then deceased, the affidavit shall be sufficient if it states that the affiant has reason to believe and does believe that such instrument was not executed by the decedent or by his authority. In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved.

8. A denial of the genuineness of the indorsement or assignment of a written instrument upon which suit is brought by an indorsee or assignee and in the absence of such a sworn plea, the indorsement or assignment thereof shall be held as fully proved. The denial required by this subdivision of the rule may be made upon information and belief.

9. That a written instrument upon which a pleading is founded is without consideration, or that the consideration of the same has failed in whole or in part.

10. A denial of an account which is the foundation of the plaintiff's action, and supported by affidavit.

11. That a contract sued upon is usurious. Unless such plea is filed, no evidence of usurious interest as a defense shall be received.

12. That notice and proof of loss or claim for damage has not been given as alleged. Unless such plea is filed such notice and proof shall be presumed and no evidence to the contrary shall be admitted. A denial of such notice or such proof shall be made specifically and with particularity.

13. In the trial of any case appealed to the court from the Industrial Accident Board [1] the following, if pleaded, shall be presumed to be true as pleaded and have been done and filed in legal time and manner, unless denied by verified pleadings:

    (a) Notice of injury.

    (b) Claim for compensation.

    (c) Award of the Board.

    (d) Notice of intention not to abide by the award of the Board.

    (e) Filing of suit to set aside the award.

    (f) That the insurance company alleged to have been the carrier of the workers' compensation insurance at the time of the alleged injury was in fact the carrier thereof.

    (g) That there was good cause for not filing claim with the Industrial Accident Board [1] within the one year period provided by statute.

    (h) Wage rate.

A denial of any of the matters set forth in subdivisions (a) or (g) of paragraph 13 may be made on information and belief.

Any such denial may be made in original or amended pleadings; but if in amended pleadings the same must be filed not less than seven days before the case proceeds to trial. In case of such denial the things so denied shall not be presumed to be true, and if essential to the case of the party alleging them, must be proved.

14. That a party plaintiff or defendant is not doing business under an assumed name or trade name as alleged.

15. In the trial of any case brought against an automobile insurance company by an insured under the provisions of an insurance policy in force providing protection against uninsured motorists, an allegation that the insured has complied with all the terms of the policy as a condition precedent to bringing the suit shall be presumed to be true unless denied by verified pleadings which may be upon information and belief.

16. Any other matter required by statute to be pleaded under oath.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of March 31, 1941, eff. Sept. 1, 1941; Sept. 20, 1941, eff. Dec. 31, 1941; June 16, 1943, eff. Dec. 31, 1943; Oct. 12, 1949, eff. March 1, 1950; July 21, 1970, eff. Jan. 1, 1971; July 22, 1975, eff. Jan. 1, 1976; June 15, 1983, eff. Sept. 1, 1983; Dec. 5, 1983, eff. April 1, 1984.

Notes of Decisions (798)

Footnotes

1    The name of the Industrial Accident Board was changed to the Texas Workers' Compensation Commission pursuant to Acts 1989, 71st Leg., 2nd C.S., ch. 1, § 17.01. The Texas Workers' Compensation Commission was abolished and the Workers' Compensation Division of the Texas Department of Insurance was established pursuant to Acts 2005, 79th Leg., ch. 265, § 1.003.

Vernon's Ann. Texas Rules Civ. Proc., Rule 93, TX R RCP Rule 93

Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.    3

---

Vernon's Texas Rules Annotated
   Texas Rules of Civil Procedure
      Part II. Rules of Practice in District and County Courts
         Section 9. Evidence and Discovery (Refs & Annos)
            A. Evidence

TX Rules of Civil Procedure, Rule 185

Rule 185. Suit on Account

Currentness

When any action or defense is founded upon an open account or other claim for goods, wares and merchandise, including any claim for a liquidated money demand based upon written contract or founded on business dealings between the parties, or is for personal service rendered, or labor done or labor or materials furnished, on which a systematic record has been kept, and is supported by the affidavit of the party, his agent or attorney taken before some officer authorized to administer oaths, to the effect that such claim is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed, the same shall be taken as prima facie evidence thereof, unless the party resisting such claim shall file a written denial, under oath. A party resisting such a sworn claim shall comply with the rules of pleading as are required in any other kind of suit, provided, however, that if he does not timely file a written denial, under oath, he shall not be permitted to deny the claim, or any item therein, as the case may be. No particularization or description of the nature of the component parts of the account or claim is necessary unless the trial court sustains special exceptions to the pleadings.

**Credits**
Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of Oct. 12, 1949, eff. March 1, 1950; July 21, 1970, eff. Jan. 1, 1971; Dec. 5, 1983, eff. April 1, 1984.

Notes of Decisions (922)

Vernon's Ann. Texas Rules Civ. Proc., Rule 185, TX R RCP Rule 185
Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure are current with amendments received through September 1, 2015. Bar Rules, Rules of Disciplinary Procedure, Code of Judicial Conduct, and Rules of Judicial Administration are current with amendments received through September 1, 2015. Other state court rules and selected county rules are current with rules verified through June 1, 2015.

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.